## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APELDYN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-568-SLR |
| | ) | |
| AU OPTRONICS CORPORATION; AU | ) | **JURY TRIAL DEMANDED** |
| OPTRONICS CORPORATION AMERICA; CHI | ) | |
| MEI OPTOELECTRONICS CORPORATION; | ) | |
| CHI MEI OPTOELECTRONICS USA, INC.; | ) | |
| SAMSUNG ELECTRONICS CO., LTD.; | ) | |
| SAMSUNG ELECTRONICS AMERICA, INC.; | ) | |
| SHARP CORPORATION; SHARP | ) | |
| ELECTRONICS CORPORATION; SONY | ) | |
| CORPORATION; AND SONY ELECTRONICS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

### SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR DISQUALIFICATION OF R. TYLER GOODWYN, IV AND MCKENNA LONG & ALDRIDGE L.L.P. AS COUNSEL FOR APELDYN CORPORATION

OF COUNSEL:
Neil P. Sirota
Chang Sik Kim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Tel. 212-408-2500

Michael J. Barta
William S. Foster, Jr.
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700

Dated: February 25, 2009
904716 / 33642

Richard L. Horwitz (#2246)
David E. Moore (#3983)
D. Fon Muttamara-Walker (#4646)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd. and*
*Samsung Electronics America, Inc.*

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 1

II.     SUMMARY OF ARGUMENT ................................................................................. 1

III.    STATEMENT OF FACTS ..................................................................................... 3

        A.      Goodwyn's Prior Representation of Samsung .......................................... 3

        B.      Goodwyn's Current Representation Adverse to Samsung ........................ 6

IV.     APPLICABLE LEGAL STANDARDS ..................................................................... 8

        A.      Disqualification of an Attorney Based on Past Representation ............... 8

        B.      Disqualification of a Firm Arising from the Conflict of an Attorney ................... 12

V.      ARGUMENT ................................................................................................... 12

        A.      Goodwyn Is Violating Rule 1.9(a) and Should be Disqualified ........................... 12

        B.      McKenna Long Is Violating Rule 1.10(a) and Should be Disqualified ................ 17

VI.     CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*,
  808 F. Supp. 1200 (E.D. Penn. 1992) ...............................................................10

*Conley v. Chaffinch*,
  431 F. Supp. 2d 494 (D. Del. 2006) ...................................................................10

*Haagen-Dazs Company, Inc. v. Perche No! Gelato, Inc.*,
  639 F. Supp. 282 (N.D. Cal. 1986) ....................................................................11

*In re American Airlines, Inc.*,
  972 F.2d 605 (5th Cir. 1992) .............................................................................14

*In re Congoleum Corp.*,
  426 F.3d 675 (3rd Cir. 2005) ...............................................................................8

*In re Corn Derivatives Antitrust Litigation*,
  748 F.2d, 157 (3rd Cir. 1984) .................................................................9, 11, 18

*In re Riles*,
  243 F.3d 553, 2000 WL 1062086 (Fed. Cir. July 20, 2000) ......................*passim*

*Kabi Pharmacia AB v. Alcon Surgical, Inc.*,
  803 F. Supp. 957 (D. Del. 1992) ..........................................................................9

*Madukwe v. Delaware State University*,
  552 F. Supp. 2d 452 (D. Del. 2008) ........................................................*passim*

*Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*,
  632 F. Supp. 418 (D. Del. 1986) ..............................................................*passim*

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) .............................................................................11

*Webb v. E.I. DuPont de Nemours & Co., Inc.*,
  811 F. Supp. 158 (D. Del. 1992) ..........................................................................9

# I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Apeldyn Corporation (hereinafter "Apeldyn") against ten defendants, including Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung"). Apeldyn initiated the case by filing a complaint on September 8, 2008, alleging infringement of United States Patent No. 5,347,382 ("the '382 Patent") by, among other defendants, Samsung. D.I. 1. Samsung filed its answer to the complaint on December 1, 2008. D.I. 27. The scheduling conference is set for February 26, 2009. D.I. 43.

# II.    SUMMARY OF ARGUMENT

1.    Samsung moves to disqualify attorney R. Tyler Goodwyn, IV ("Goodwyn") and his current law firm, McKenna Long & Aldridge LLP ("McKenna Long"), from representing plaintiff Apeldyn against Samsung. The motion is based on Goodwyn's prior representation of Samsung, which, pursuant to Model Rules of Professional Conduct of the American Bar Association ("Model Rules" or "M.R.P.C.") 1.9(a) and 1.10(a), precludes both Goodwyn and McKenna Long from this adverse representation.

2.    For more than three years from late 2001 through January 2005, Goodwyn, as a partner at Morgan Lewis & Bockius, LLP ("Morgan Lewis"), served as patent litigation counsel for Samsung. Goodwyn defended Samsung in an action for infringement brought by Mosaid Technologies Inc. ("Mosaid"). Goodwyn was the responsible attorney at Morgan Lewis for almost every aspect of the case. He billed Samsung for over 4,100 hours for those services. The total amount billed to Samsung for Goodwyn's services was over $1.3 million.

3.    During the *Mosaid* case, Goodwyn had extensive personal contact with Samsung's Intellectual Property (IP) Legal Group, which handles all patent litigations for

Samsung. As a result of his work as Samsung's patent counsel, Goodwyn had constant exposure to Samsung's confidential patent litigation defense strategies; learned the day-to-day operations of Samsung's IP Legal Group; observed the decision-making tendencies and personal pressure points of some of the same in-house attorneys and legal personnel who are responsible for defending the *Apeldyn* case; and was privy to the case-valuation and settlement processes at Samsung. Goodwyn was also deeply involved in the substantive issues and discovery process in the *Mosaid* case, and therefore became intimately familiar with the structure of; the key positions and personnel within; and the types, location, and content of documents generated by, Samsung's Semiconductor Division.

4.     On September 9, 2008, Apeldyn filed a Complaint for patent infringement against, *inter alia*, Samsung. Goodwyn, now a partner at McKenna Long, is identified as "of counsel" for Apeldyn on the Complaint, along with several other partners at the McKenna Long firm. Apeldyn's infringement allegations are directed primarily to the operation of certain integrated circuits manufactured by Samsung's Semiconductor Division that are components of Samsung's liquid crystal displays (LCDs).

5.     The defense of this patent litigation is being run by the same in-house legal department and decision-makers at Samsung and is directed to the same business division as the *Mosaid* case. On this closely related matter, Samsung finds itself staring at one of its most trusted former legal advisors from the opposite side of the courtroom. This is precisely the sort of side-shifting that Rule 1.9 was designed to prevent. *In re Riles*, 243 F.3d 553, 2000 WL 1062086 (Fed. Cir. July 20, 2000) (declining to reverse decision disqualifying patent counsel that was based on "the length of the prior relationship as well as the specific knowledge gained from

the prior relationship, which the district court noted to include information regarding [defendant's] litigation and settlement strategies in infringement actions.")

6.    To obtain the relief requested, it is not necessary for Samsung to establish that Goodwyn has actually shared Samsung's confidential information with other attorneys at McKenna Long. However, Goodwyn has almost certainly done so. During several weeks of correspondence on the conflict issue leading up to the filing of this motion, Apeldyn never asserted otherwise. To ensure that Samsung was not misinterpreting Apeldyn's silence, Samsung made the following request in a February 10, 2009 letter: "If, despite Apeldyn's complete silence to date, it is Apeldyn's position that Mr. Goodwyn has never discussed with either Apeldyn or any of his McKenna Long colleagues any information he learned as a result of his years representing Samsung, we ask that you in no uncertain terms advise us." Apeldyn responded to other issues raised in the February 10 letter, but did not respond to this request.

## III.    STATEMENT OF FACTS

### A.    Goodwyn's Prior Representation of Samsung

In September 2001, Mosaid sued Samsung in the District of New Jersey, alleging infringement of seven patents relating to dynamic random access memory (DRAM) chips. The DRAM chips at issue in the *Mosaid* case were semiconductor chips that were designed and manufactured by Samsung's Semiconductor Division. (Ex. 1, J.S. Park Decl., ¶ 4).[1] Samsung was represented in the *Mosaid* litigation by Morgan Lewis. (*Id.* at ¶ 8). Morgan Lewis' involvement in the *Mosaid* case began shortly after the Complaint was filed, and, in January 2002, Morgan Lewis filed an Answer on behalf of Samsung. (Ex. 2, *Mosaid* Answer). Morgan

---

[1] Citations herein to "Ex. __" refer to exhibits to the concurrently-filed Declaration of Richard L. Horwitz in Support of Samsung's Motion for Disqualification of R. Tyler Goodwyn, IV and McKenna Long & Aldridge L.L.P. as counsel for Apeldyn Corporation. Citations to Ex. 1 or "J.S. Park Decl." refer to the Declaration of Jun Sung Park, Senior Legal Counsel at Samsung.

Lewis represented Samsung for the entirety of the *Mosaid* case, which was dismissed upon settlement three years later, in January 2005. (Ex. 1, ¶ 8).

At all times during Morgan Lewis' representation of Samsung in the *Mosaid* case, Goodwyn was a partner at Morgan Lewis and was actively involved in all aspects of the suit. (*Id.* at ¶ 11). Goodwyn's role in the *Mosaid* case was as the point person, or hub, of the Morgan Lewis litigation team (hereinafter the "Morgan Lewis Team"), through which the entire case flowed. (*Id.* at ¶¶ 11-13). Goodwyn was in charge of running the day-to-day operations of the litigation and was also the primary interface between Samsung's IP Legal Group and the Morgan Lewis Team. (*Id.* at ¶ 11). In his role as the principal partner running the Morgan Lewis Team, Goodwyn personally billed more than *4,100 hours* over the course of the litigation, with over 3,300 hours of that time billed for work performed from April 2003 to November 2004. (*Id.* at ¶ 14). Morgan Lewis invoiced Samsung for over *$1.3 million* for Goodwyn's work on the *Mosaid* case. (*Id.*).

Goodwyn had a significant role in the substantive defense of the case. He and his team provided Samsung with recommendations on what positions to take and the relative strengths and weaknesses of those positions. (*Id.* at ¶ 16). Samsung responded to those recommendations, and, based on Samsung's decisions, Goodwyn's team and Samsung built their defense to Mosaid's case for patent infringement. (*Id.*). Among other insights, Goodwyn thus knows how the relative strength or weakness of each of the positions considered by Samsung factors into Samsung's litigation strategies.

Goodwyn also devoted a substantial amount of time to discovery. (*Id.* at ¶ 18). He spent many hours learning how, and what types of, documents are created at Samsung; who creates them; and Samsung's electronic and hard copy document storage systems and procedures. (*Id.*).

Goodwyn also learned Samsung's business structure, and in particular the structure of the Semiconductor Division. (*Id.*). He knows who reports to whom, by position, if not name, and the relative importance of particular positions within Samsung. (*Id.*). As the attorney in charge of discovery issues, Goodwyn was also able to observe Samsung's internal response to Mosaid's discovery strategies. (*Id.*; *see also id.* at ¶ 15).

As a result of his work on the *Mosaid* case, Goodwyn was privy to every aspect of Samsung's fundamental strategies for defending against Mosaid's suit, many of which apply to the defense of patent infringement suits generally. For example, Goodwyn saw first-hand the level of aggressiveness with which Samsung will pursue certain defenses and motions; he observed whether Samsung tends to fight hard on issues when in the right or instead pursues a more targeted, cost-effective approach to litigation; he knows Samsung's sensitivities to certain types of discovery requests; and he knows how well Samsung tolerates the burdens on business that are associated with patent litigation. In sum, Goodwyn's 4,100+ hours of partner-level work in close concert with Samsung's IP Legal Group and business personnel defending Samsung in a patent infringement suit provided Goodwyn with an unobstructed view into the inner workings of Samsung's IP Legal Group, its Semiconductor Division, and the factors and circumstances that weigh most heavily in Samsung's decision-making.

Finally, perhaps the most critical aspect of what Goodwyn learned as counsel to Samsung, as it relates to this case, is Samsung's approach to settlement. Although, in the end, he did not personally participate in direct settlement talks with Mosaid,[2] Goodwyn and others at Morgan Lewis provided advice to Samsung at various points in the case regarding settlement,

---

[2] In August 2004, another firm was brought in as lead counsel to Samsung. However, because Goodwyn's in-depth knowledge of the case was so valuable, Goodwyn remained as part of Samsung's defense team until the conclusion of the case. (*See* J.S. Park Decl., ¶ 19).

and Goodwyn participated, either in person or by telephone, in many of the settlement strategy meetings leading up to settlement. (Ex. 1, J.S. Park Decl., ¶ 17). The advice rendered by Morgan Lewis was based on, *inter alia*, the assessment by Goodwyn's team of the likelihood of success on the merits. (*Id.*). Goodwyn knows what advice was provided and the weight it was given in the overall calculus of the settlement. (*Id.*). Thus, Goodwyn is intimately familiar with Samsung's risk tolerance in patent litigation.

On the Samsung side, the individual with primary responsibility within Samsung's legal department for the *Mosaid* case was Injung Lee. (*Id.* at ¶ 5). At the time of *Mosaid*, Mr. Lee was the overall head of Samsung's IP Legal Group and, as such, was charged with overseeing the global strategic positions of Samsung for that case. (*Id.*). Throughout the course of the *Mosaid* litigation, all major strategy decisions were ultimately made by Mr. Lee. (*Id.* at ¶ 10). Day-to-day decision-making was delegated largely to Jun Sung Park, currently Senior Legal Counsel in the IP Legal Department, who reported to Mr. Lee and was well-aware of his litigation strategy preferences. (*Id.* at ¶ 6). In connection with his duties, Mr. Park conveyed, either personally or through his in-house legal team members, including U.S.-based attorney Patrick Muir, much of the confidential information to Goodwyn and the Morgan Lewis Team regarding the defense of the *Mosaid* case. (*Id.* at ¶¶ 11-13, 15).

## B. Goodwyn's Current Representation Adverse to Samsung

Goodwyn left Morgan Lewis and joined McKenna Long as a partner in December 2006. (Ex. 3, www.patentbuddy.com webpage). The Complaint in this action was filed on behalf of Apeldyn less than two years later, on September 8, 2008, by Mr. Richard D. Kirk of Bayard P.A. Complaint, D.I. 1. Also identified on the Complaint as counsel to Apeldyn are several attorneys from McKenna Long, including Goodwyn. *Id.* Thus, assuming that Goodwyn was involved in McKenna Long's investigation leading up to the filing of the Complaint, little more than three

years had passed from the time Goodwyn ceased representing Samsung before Goodwyn took his experience as Samsung's patent litigation counsel and went to work as patent litigation counsel adverse to Samsung representing Apeldyn.

The Complaint filed by Apeldyn alleges that certain of Samsung's liquid crystal display ("LCD") products infringe U.S. Pat. No. 5,347,382 ("the '382 Patent"). *See* D.I. 1, ¶ 44. The LCD products at issue here, indeed the very feature at issue, were developed by Samsung's Semiconductor Division, the same business unit with which Goodwyn worked closely during his representation of Samsung. (Ex. 4, D.W. Park Decl., at ¶¶ 4, 6).[3] LCDs were developed in the Semiconductor Division, because of the very close technological relationship between semiconductors and LCDs.[4]

Here, the specific feature of Samsung's LCDs alleged to infringe Apeldyn's patent is called "overdrive." *See* Complaint, ¶ 3 ("By applying an overdrive voltage across the liquid crystal material, the liquid crystal molecules can be made to change orientation faster, which improves the quality of moving images on a liquid crystal display.") . Samsung developed its "overdrive" feature in or about 1999. (Ex. 4, ¶ 6; *see also* Ex. 5, SID '01 Digest publication). At that time, the LCD business was part of the Semiconductor Division. (Ex. 4, ¶ 4). The overdrive

---

[3] Citations to Ex. 4 or "D.W. Park Decl." refer to the Declaration of Dong Won Park, a Principal Engineer involved in LCD development at Samsung, submitted herewith.

[4] From the inception of its LCD products in 1991 until December 2003, Samsung's LCD business was a part of its Semiconductor Division. (Ex. 4, ¶ 4). In January 2004, Samsung spun off the LCD business as a separate Division. (*Id.*). Recently, in January 2009, Samsung's LCD Division and Semiconductor Division were merged back together into the Digital Solutions ("DS") Division. (*Id.*). The close technological relationship between semiconductor devices and LCDs arises, in part, from the millions of semiconductor devices known as TFTs, or thin film transistors, that are used to independently switch on or off the pixels in an LCD, either allowing light to pass through associated color filters or blocking the light entirely. (Ex. 4, ¶ 5). This switching occurs by using electric fields to change the orientation of liquid crystal molecules within each pixel in a coordinated fashion, which, in turn, creates the pictures visible on a LCD. (*Id.*).

feature is executed by a timing controller integrated circuit (IC), known at Samsung as the "T-CON" IC, and gate and source Driver ICs. (Ex. 4, ¶ 7). The T-CON IC includes DRAM memory which is accessed as part of the overdrive functionality. (*Id.*). A significant percentage of the T-CON and Driver ICs used in Samsung's LCDs have been made by Samsung's Semiconductor Division since 1995, and continue to be made by the successor DS Division. (*Id.* at ¶¶ 8, 9).

As in *Mosaid*, Injung Lee and his legal team will manage this case. Mr. Lee currently oversees all patent litigation matters relating to Samsung's semiconductor and LCD products. (Ex. 1, ¶ 20). Mr. Youngjo Lim, an attorney who was involved in the *Mosaid* case, is working on the present litigation as the primary case manager for Mr. Lee. (*Id.* at ¶ 21).

No representative of Samsung, was ever asked for, or has ever given, consent, in writing or otherwise, to Goodwyn's representation of Apeldyn. (*Id.* at ¶ 23).

## IV.   **APPLICABLE LEGAL STANDARDS**

### A.   **Disqualification of an Attorney Based on Past Representation**

The conduct of an attorney is governed by the standards of the court before which the attorney is appearing. *See In re Congoleum Corp.*, 426 F.3d 675, 686 (3rd Cir. 2005) (noting "one of the inherent powers of any federal court is the admission and discipline of attorneys practicing before it"); *accord Madukwe v. Delaware State University*, 552 F. Supp. 2d 452, 458 (D. Del. 2008). The District Court for the District of Delaware has adopted the Model Rules of Professional Conduct of the American Bar Association; thus, those Rules apply to the attorneys appearing before this Court. District of Delaware Local Rule 83.6(d)(2); *see also Madukwe*, 552 F. Supp. 2d at 458. Model Rule 1.9(a) provides that

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that

person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

M.R.P.C., Rule 9.1(a).

In carrying out its supervisory function, "a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992). It is important that counsel avoid even the appearance of impropriety, because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is" important. *Id.*; *see also Webb v. E.I. DuPont de Nemours & Co., Inc.*, 811 F. Supp. 158, 160 (D. Del. 1992). "As the Third Circuit has explained, M.R.P.C. Rule 1.9 exists for the purpose of preventing 'even the potential that a former client's confidences and secrets may be used against him,' to maintain 'public confidence in the integrity of the bar,' and to fulfill a client's rightful expectation of 'the loyalty of his attorney in the matter for which he is retained.'" *Madukwe*, 552 F. Supp. 2d at 458 (quoting *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3rd Cir. 1984)).

This Court has found that Rule 1.9(a) contains four requirements: 1) "the lawyer must have had an attorney-client relationship with the former client," 2) "the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter," 3) "the interests of the second client must be materially adverse to the interests of the former client," and 4) "the former client must not have consented to the representation after consultation." *Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*, 632 F. Supp. 418, 422 (D. Del. 1986).[5]

---

[5] Although *Nemours* was decided under an earlier version of Rule 1.9(a), the only difference in the language is that, under the new Rule 1.9(a), the client must give "informed consent, confirmed in writing." *Compare* M.R.P.C. Rule 1.9(a) (2008 version) *with* M.R.P.C. Rule 1.9(a) (1983 version) (stating that only "consent after consultation" is required).

Thus, as an initial matter it must be determined whether the attorney in question actually represented the former client in some past matter. *See id.*; M.R.P.C. Rule 1.9(a); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 497 n.2 (D. Del. 2006) (noting that this issue was not in dispute). If so, the key question under Rule 1.9(a) is whether the representations at issue involve a "substantially related matter." *See Madukwe*, 552 F. Supp. 2d at 458.

Generally stated, a substantial relationship exists, if the similarity between "the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Madukwe*, 552 F. Supp. 2d at 458 (internal quotations and citations omitted). This Court has set forth a three-part inquiry to determine whether a "substantial relationship" exists:

> [the] Court must "undertake a painstaking analysis of the facts" and answer . . . "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?"

*Madukwe*, 552 F. Supp. 2d at 458 (quoting *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987)).

In analyzing the nature and scope of the prior representation, the court should focus on the tasks the attorney was retained to perform and the reasons for that retention. *Conley*, 431 F. Supp. 2d at 497. In analyzing the nature and scope of the present lawsuit, "the court should evaluate the issues raised . . . and the underlying facts." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Penn. 1992); *accord Conley*, 431 F. Supp. 2d at 497.

In making the third determination, a court must determine whether the client might have disclosed confidences to the attorney "which could be relevant and detrimental to the [client] in

the present action." *Madukwe*, 552 F. Supp. 2d at 461. The Comments to the Model Rules similarly state that "[m]atters are 'substantially related' for the purposes of this Rule, if they involve the same transaction or legal dispute <u>or if there otherwise is a substantial risk that</u> <u>confidential factual information as would normally have been obtained in the prior representation</u> <u>would materially advance the client's position in the subsequent matter</u>." M.R.P.C. Rule 1.9, cmt. 3 (emphasis added); *see also Haagen-Dazs Company, Inc. v. Perche No! Gelato, Inc.*, 639 F. Supp. 282, 285 (N.D. Cal. 1986) ("'[i]f there is a <u>reasonable probability</u> that confidences were disclosed which could be used against the client in a later, adverse representation, a substantial relation between the two cases is presumed.'" (quoting *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) (emphasis by the *Haagen-Dasz* court)).

When determining whether a substantial relationship exists, courts in the Third Circuit have erred on the side of protecting clients confidences. *See Corn Derivatives*, 748 F.2d at 162 (3rd Cir. 1984) (Model Rule of Professional Conduct 1.9 "is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him."). Indeed, "[w]hile a party seeking disqualification bears the burden of establishing the existence of a 'substantial relationship,' any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences." *Madukwe*, 552 F. Supp. 2d at 458. This precautionary stance arises from the underlying ethics principle that "the interests of the clients are primary, and the interests of the lawyers are secondary." *Haagen-Dazs*, 639 F. Supp. at 286.

Once it is established that the two matters in question, *i.e.*, the current and former representations, are substantially related, it then must be established that the current representation is "materially adverse" to the former client's interests. M.R.P.C. Rule 1.9(a); *see*

*also Nemours*, 632 F. Supp. at 422. Finally, Rule 1.9 will not apply if the "former client gives informed consent, confirmed in writing." M.R.P.C. Rule 1.9(a).

## B. Disqualification of a Firm Arising from the Conflict of an Attorney

Model Rule 1.10(a) addresses the situation where the conflict of an attorney currently employed by a firm can result in the disqualification of the entire firm from representation of the client with whom the conflict exists. Specifically, Rule 1.10(a) provides

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

M.R.P.C. Rule 1.10(a).

The clear application of this Rule is to disqualify an attorney's entire firm where that attorney "would be prohibited from [representation] by Rules 1.7 or 1.9." *See, e.g.*, *Madukwe*, 552 F. Supp. 2d at 463 (applying Rule 1.10(a) without exception or discussion). Moreover, the Model Rules adopted by the Delaware District Court do not provide for any screening processes for attorneys that have moved from one law firm to another and bring with them a Rule 1.9 or 1.7 conflict. *See generally* M.R.P.C. Rule 1.10 and comments thereto; *see also Madukwe*, 552 F. Supp. 2d at 463; *cf. Nemours*, 632 F. Supp. at 428 ("an appropriate screening mechanism, in the proper circumstances, may rebut the presumption of shared confidences that arises under Rule 1.10 in cases where the disqualified attorney's conflict of interest originated in private practice.")

## V. ARGUMENT

### A. Goodwyn Is Violating Rule 1.9(a) and Should be Disqualified

Under the present facts, the application of Rule 1.9(a) is straightforward. No dispute exists that Goodwyn was engaged in an attorney-client relationship with Samsung that lasted

nearly three years, during which time Goodwyn billed over 4,100 hours. (*See* Ex. 1, ¶¶ 11-18). The nature of that relationship, as explained in detail *supra*, was that Goodwyn was the principal attorney on the Morgan Lewis Team, running virtually every aspect of the *Mosaid* case.

Like the *Mosaid* case, the *Apeldyn* case is a patent infringement action in which Samsung is an accused infringer. Complaint, D.I. 1. Like the *Mosaid* case, the *Apeldyn* case is being run by the Semiconductor and LCD Team of Samsung's IP Legal Group, now known as Legal Group 2. (Ex. 1, ¶ 20). Like the *Mosaid* case, the IP Legal Group leader in the *Apeldyn* case is Injung Lee. (*Id.*). Like the *Mosaid* case, the infringement allegations are directed to semiconductor devices made by Samsung's Semiconductor Division. (Ex. 4, ¶ 8). The specific semiconductor devices at issue in each case – DRAMs in *Mosaid* and LCD controller and driver ICs in *Apeldyn*[6] – are different. But this difference does not mean that Goodwyn's knowledge of Samsung's confidential patent litigation defense strategies; the day-to-day operations of Samsung's IP Legal Group; Samsung's Semiconductor Division's structure, personnel and documents; Samsung's settlement strategies; or Goodwyn's knowledge of any of the countless other aspects of Samsung's legal defenses and business operations that he learned over the course of three years can be ignored. Indeed, this type of confidential information is far more valuable to opposing counsel than the technical details of any particular accused product. *See In re Riles*, 243 F.3d 553, 2000 WL 1062086 (Fed. Cir. July 20, 2000).

The facts of this case are strikingly similar to those considered by the Federal Circuit in *Riles*, although this case presents a far more compelling basis for disqualification. *In Riles*, the district court granted a motion brought by Shell Exploration and Production Co. ("Shell") to disqualify plaintiff Riles' patent litigation counsel. *Id.* at *1. While at their prior firm, Riles'

---

[6]Samsung's LCD technology, more generally, was also developed in the Semiconductor Division. (Ex. 4, ¶ 4).

three attorneys had represented Shell and collectively billed Shell for over 1,200 hours of work on a variety of patent matters. *Id.* As here, none of the prior matters involved the patent in suit, and the technology was not precisely the same. Nevertheless, the district court found that the prior and current representations were "substantially related"[7] based on the number of hours billed and because the attorneys "obtained knowledge of Shell's settlement and litigation strategy in patent litigation" and had "consulted with Shell's in-house patent attorneys and executives to discuss confidential subject matters, including Shell's prelitigation, settlement, and litigation practices in patent disputes." *Id.* at *1. In denying Riles' petition for a writ of mandamus, the Federal Circuit rejected the notion that the district court ruled based "solely on the determination that the prior and current representations involve patent law," finding that "[t]he district court also supported its determination with findings regarding the length of the prior relationship as well as the specific knowledge gained from the prior relationship, which the district court noted to include information regarding Shell's litigation and settlement strategies in infringement actions." *Id.* at *3.

Here, Goodwyn billed over 4,100 hours to Samsung, more than *three times* the total number of hours collectively billed by the three *Riles* attorneys; the breadth and depth of Goodwyn's knowledge about the very same issues that led to the disqualification of the *Riles* attorneys is beyond dispute. In addition, aside from his extensive interactions with Samsung's in-house legal team in the *Mosaid* case, Goodwyn was defending the very same Division to which Goodwyn's current client, Apeldyn, has directed its infringement contentions: the Semiconductor Division. Goodwyn will therefore be formulating discovery requests directed to

---

[7] The *Riles* case was decided under Texas Rule 1.09. According to the Fifth Circuit, "ABA [Model] Rule 1.9 is identical to Texas Rule 1.09 in all important respects." *In re American Airlines, Inc.*, 972 F.2d 605, 614 n. 2 (5th Cir. 1992).

the same business unit about which, just a few years ago, he devoted many hundreds of hours to learn its organization and documents. Given this situation, Goodwyn clearly has in his possession specific, confidential facts concerning the Semiconductor Division that are highly relevant to the present matter, and provide Apeldyn with an unfair advantage. (*See* Ex. 1, ¶ 22)

The key inquiry under the controlling law in Delaware is whether "'[i]n the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Madukwe*, 552 F. Supp. 2d at 458 (quoting *Satellite Fin.*, 652 F. Supp. at 1283); *see also* M.R.P.C. § 1.9 cmt. 3 (stating that "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation."). Looking at the strategic and factual information at Goodwyn's disposal during the *Mosaid* case and looking at the present case, the answer to these questions must be an unequivocal "yes," particularly given Goodwyn's specific knowledge of Samsung's tolerance for risk in patent litigation. *See Madukwe*, 552 F. Supp. 2d at 462 (finding that a university's "risk management strategies are specific facts gained in a prior representation that are relevant to the instant matter which [comment 3 to Rule 1.9(a)] indicates supports disqualification." (internal quotations omitted)).

Goodwyn spent the better part of three years working on the Mosaid case, and roughly three years later he effectively switched sides. In his new role as Apeldyn's counsel, he is, first and foremost, in a position to use his knowledge of Samsung's patent litigation risk tolerance to Apeldyn's benefit. Goodwyn's knowledge of how Samsung assesses risk for patent litigations, particularly how the relative strength or weakness of invalidity, noninfringement, inequitable conduct, and damages defenses factor into its decisions, is clearly relevant to the present action.

Goodwyn has knowledge of confidential strategic information that he gained as Samsung's counsel, regarding when and under what circumstances Samsung may seek a settlement of this action. *See Madukwe*, 552 F. Supp. 2d at 462; *see also Riles*, 2000 WL 1062086 at *1. Thus, from his work on the *Mosaid* case, Goodwyn is in a unique position, as only a former confidant would be, of being able to formulate and implement a counter-strategy specifically tailored to apply pressure on Samsung to settle. *See Madukwe*, 552 F. Supp. 2d at 462 (stating that knowledge of "playbook information" such as "what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject is a basis for disqualification" (internal quotations and citations omitted)).

Goodwyn is also in a position to put Samsung's confidential strategies regarding depositions and discovery to use for the benefit of Apeldyn. For example, his knowledge of Samsung's preferences and sensitivities regarding witness selection can be used to apply pressure in a way that someone without his knowledge could not. Similarly, Goodwyn's knowledge of Samsung's documents and document systems will allow him to direct document discovery in a way that someone without his knowledge could not. Goodwyn's knowledge of the strategies employed by Samsung in the *Mosaid* case also puts Samsung in a position of having to alter those strategies that it otherwise might use, solely because its former counsel is now on the other side. It was just this sort of situation that Rule 1.9(a) was drafted to prevent. *See Madukwe*, 552 F. Supp. at 458 ("Rule 1.9 exists for the purpose of preventing even the potential that a former client's confidences and secrets may be used against him, to maintain public confidence in the integrity of the bar, and to fulfill a client's rightful expectation of the loyalty of his attorney in the matter for which he is retained." (internal quotations omitted)). Thus, the final question presented in the *Madukwe* "substantial relationship" inquiry – "could

any such confidences be detrimental to the former client in the current litigation" – must also be answered here with a resounding "yes." *Id.*

As was the case in *Riles*, Goodwyn's in-depth knowledge of Samsung's strategies for defending against patent infringement claims, his knowledge of the Semiconductor Division, his knowledge of Samsung's settlement strategies, and the potential to make use of such knowledge to the detriment of Samsung makes his continued representation in the present action a clear violation of Rule 1.9(a), requiring his disqualification as Apeldyn's counsel. Rule 1.9(a) simply does not allow an attorney who spent over 4,100 hours learning all there is to know about Samsung's patent litigation defense strategies, at a cost to Samsung of over $1.3 million, to switch sides only a few years later and use that experience and knowledge against Samsung.

## B.    McKenna Long Is Violating Rule 1.10(a) and Should be Disqualified

Rule 1.10(a) plainly applies to this case: Goodwyn's conflict of interest arising under Rule 1.9(a) is imputed to the entire McKenna Long law firm. *See* M.R.P.C. 1.10(a).[8] Although the District of Delaware has allowed for screening procedures in past cases (*see Nemours*, 632 F. Supp. at 428), McKenna Long has not represented that such a screen was ever put in place, despite numerous opportunities to provide assurances regarding Samsung's confidences. *See* Ex. 6, 01/16/09 Letter from R. Kirk to N. Sirota (stating that Goodwyn and the other McKenna Long attorney's were simply too busy to address the conflict); Ex. 7, 01/21/09 E-mail from R. Kirk to N. Sirota (again refusing to even address the substance of the conflict); Ex. 8, 01/29/09 Letter

---

[8] The "personal interest" exception of Rule 1.10(a) does not apply here. Rule 1.10(a), cmt. 3 ("The rule in paragraph (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented. Where one lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified." (emphasis added))

from R. Kirk to N. Sirota (simply asserting that, because of technical differences in the accused products, the litigations in question are not "substantially related" and, again, providing no assurances with respect to Samsung's confidences). Rather, it appears that McKenna Long purposely chose to avail itself of Goodwyn's unique talents and knowledge.

To ensure that Samsung was not misinterpreting Apeldyn's silence, Samsung posed the question directly to Apeldyn in a February 10, 2009 letter, as follows: "If, despite Apeldyn's complete silence to date, it is Apeldyn's position that Mr. Goodwyn has never discussed with either Apeldyn or any of his McKenna Long colleagues any information he learned as a result of his years representing Samsung, we ask that you in no uncertain terms advise us." Ex. 9, 02/10/09 Letter from N. Sirota to R. Kirk. Apeldyn responded to other issues raised in the February 10 letter, but did not respond to this request. Ex. 10, 02/19/09 Letter from R. Kirk to N. Sirota; *see also* Ex. 11, Remaining Pre-Motion Correspondence re Conflict Issue.

Even giving both Goodwyn and McKenna Long the benefit of the doubt and assuming that there was no *intention* on their part to make use of Goodwyn's knowledge of Samsung's confidential information entrusted to him – as such use would constitute a clear violation of Rules 1.6 and 1.9(c) – the Model Rules exist to protect *clients* not attorneys. *See Corn Derivatives*, 748 F.2d at 162 (Model Rule of Professional Conduct 1.9 "is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him."). The District of Delaware has provided for reasonable screening mechanisms as a convenience to attorneys, in light of the modern realities of the legal profession, not as a means of changing underlying ethical obligations. *See Nemours*, 632 F. Supp. at 428 (stating that it is the "responsibility of the *individual* attorney to guard the secrets of his former client." (emphasis original)). In any event, Goodwyn's name on the Complaint precludes any attempt by McKenna

Long to screen Goodwyn. *See id.* at 429 (noting among the factors contributing to an effective screen was that the attorney in question "immediately sealed himself in a 'cone of silence', resolving not to say anything concerning the substance of any communication, documents, or information to which he may have had access.").

## VI.   **CONCLUSION**

Goodwyn's prior representation of Samsung, and the extensive confidential knowledge he gained during that representation, is relevant and detrimental to Samsung in this present action. Accordingly, Goodwyn is in violation of Model Rule 1.9 and as such must be disqualified from representing Apeldyn in the present litigation. Model Rule 1.10 also mandates the disqualification of McKenna Long from representation of Apeldyn in the present litigation, particularly in view of McKenna Long's naming Goodwyn as counsel on the Complaint.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:
Neil P. Sirota
Chang Sik Kim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Tel. 212-408-2500

Michael J. Barta
William S. Foster, Jr.
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
Tel. 202-639-7700

Dated: February 25, 2009
904716 / 33642

By: */s/ Richard L. Horwitz*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      D. Fon Muttamara-Walker (#4646)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      P.O. Box 951
      Wilmington, DE 19899
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      fmuttamara-walker@potteranderson.com

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd. and*
*Samsung Electronics America, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on February 25, 2009, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

to the registered attorney(s) of record that the document has been filed and is available for

viewing and downloading.

I further certify that on February 25, 2009, the attached document was Electronically

Mailed to the following person(s):

Richard D. Kirk
BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com

Gaspare J. Bono
Song K. Jung
R. Tyler Goodwyn, IV
Lora A. Brzezynski
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
sjung@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

*/s/ Richard L. Horwitz*
Richard L. Horwitz
David E. Moore
D. Fon Muttamara-Walker
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
fmuttamara-walker@potteranderson.com

893184 / 33624