## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

APELDYN CORPORATION,

                Plaintiff,

v.

AU OPTRONICS CORPORATION, et al.,

                Defendants.

Civil Action No. 08-568-SLR

**PLAINTIFF APELDYN CORPORATION'S ANSWERING BRIEF
IN OPPOSITION TO SAMSUNG ELECTRONICS CO. LTD.'S AND
SAMSUNG ELECTRONICS AMERICA, INC.'S  MOTION
FOR DISQUALIFICATION OF R. TYLER GOODWYN, IV AND
MCKENNA LONG & ALDRIDGE LLP AS COUNSEL FOR
<u>APELDYN CORPORATION AGAINST SAMSUNG</u>**

OF COUNSEL:

Gaspare J. Bono
Matthew T. Bailey
Shari L. Klevens
Christina M. Carroll
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006


Dated: March 17, 2009

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000


Attorneys for Plaintiff Apeldyn Corporation

# TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF ARGUMENT ................................................................................. 1

III.  STATEMENT OF FACTS ...................................................................................... 2

   A.  Mr. Goodwyn's Prior Representation of Samsung ................................................. 2

   B.  The Intervening Years ............................................................................................ 3

   C.  McKenna's Representation of Apeldyn .................................................................. 4

   D.  Correspondence Related to Alleged Conflict ........................................................ 5

IV.  ARGUMENT .......................................................................................................... 8

   A.  Motions to Disqualify Are Not Favored And Should Not Be Used For
       Tactical Purposes ................................................................................................... 8

   B.  Delaware's Balancing Test Weighs Against Disqualification ............................. 11

   C.  The Motion Should Be Denied Because the Confidences of the Mosaid
       Defendants Are Not At Risk ................................................................................ 12

       1.  Because the Technologies and Patents at Issue in the Two Cases
           are Different, the Matters are Not Substantially Related ........................ 13

       2.  Mr. Goodwyn Should Not Be Disqualified Based on a General
           Knowledge Of Samsung's Litigation and Settlement Strategies ............. 17

       3.  Information About The Day-To-Day Operations Of Samsung's IP
           Legal Group, Personnel, Location Of Documents, And Other
           Business Operations Is Not Confidential ................................................. 19

       4.  The Passage of Time Has Rendered Obsolete Any Alleged
           Confidential Information Mr. Goodwyn May Still Recall ....................... 21

   D.  McKenna Is Not Violating Rule 1.10(a) and Should Not Be Disqualified ......... 22

V.  CONCLUSION ...................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bayou Pumps & Prods., Inc. v. Discflo Corp.*,
    Civil Action No. 06-0962, 2006 WL 3702120 (W.D. La., Dec. 13, 2006) .............................20

*Civco Med. Instruments Co., Inc. v. Protek Med. Prods., Inc.*,
    No. 4:03-CV-40722, 2004 WL 1326474 (S.D. Iowa 2004) ....................................................14

*Commonwealth Ins. Co. v. Graphic Hot Line, Inc.*,
    808 F. Supp. 1200 (E.D. Pa. 1992) ...................................................................................8, 12

*Conley v. Chaffinch*,
    431 F. Supp. 2d. 494 (D. Del. 2006) ................................................................................8, 11

*Cramer v. Pepper*,
    No. 83C-JN-10, 1985 WL 635619 (Del. Super. Ct. June 24, 1985) .......................................11

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*,
    142 F. Supp. 2d 579 (D. Del. 2001) ..........................................................................8, 14, 17

*Express Scripts, Inc. v. Crawford*,
    Civil Action No. 2663-N, 2007 WL 417193 (Del. Ch. Jan. 25, 2007).............................11, 12

*Freeman v. Chicago Musical Instrument Co.*,
    689 F.2d 715 (7th Cir. 1982) ...............................................................................................9

*GM v. ETW*,
    No. CN01-08714, 2006 WL 3197352 (Del. Fam. Ct. Sept. 12, 2006) ...................................21

*Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.*,
    639 F. Supp. 282 (N.D. Cal. 1986) ......................................................................................16

*Hendry v. Hendry*,
    No. Civ. A. 18625-NC, 2005 WL 3359078 (Del. Ch. Dec. 1, 2005) .......................................8

*In re American Airlines, Inc.*,
    972 F.2d 605 (5th Cir. 1992) ........................................................................................16, 17

*In re Riles*,
    243 F.3d 553, 2000 WL 1062086 (Fed. Cir. July 20, 2000).............................................16, 17

*Javorski v. Nationwide Mut. Ins. Co.*,
    No. Civ. A. 3:06-CV-1071, 2006 WL 3242112 (M.D. Pa. Nov. 6, 2006) .............................13

*Kaminski Bros. v. Detroit Diesel Allison*,
  638 F. Supp. 414 (M.D. Pa. 1985) ................................................................18, 19

*Madukwe v. Del. State Univ.*,
  552 F. Supp. 2d 452 (D. Del. 2008) ...................................................................15

*Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd, et al.*,
  Case No. 01-4340 (JWB) .......................................................................... passim

*Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*,
  632 F. Supp. 418 (D. Del. 1986) ......................................................8, 10, 22, 23

*Richardson-Merrell, Inc. v. Koller*,
  472 U.S. 424, 105 S. Ct. 2757 (1985) ..................................................................8

*Sanchez-Caza v. Estate of Whetstone*,
  No. Civ. A. 02C-08-002, 2004 WL 2087922 (Del. Super. Ct. Sept. 16, 2004) .............. passim

*Schaefer v. Gen. Elec. Co.*,
  No. 3:07-CV-0858, 2008 WL 649189 (D. Conn. Jan. 22, 2008) ...........................................14

*Starlight Sugar, Inc. v. Soto*,
  903 F. Supp. 261 (D.P.R. 1995) ..........................................................................23

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,
  491 F. Supp. 2d 510 (D. Del. 2007) ........................................................14, 17, 20

*Unanue v. Unanue*,
  No. Civ. A. 204-N, 2004 WL 602096 (Del. Ch. Mar. 25, 2004) ......................................13, 17

*Vestron, Inc. v. Nat'l Geographic Soc'y*,
  750 F. Supp. 586 (S.D.N.Y. 1990) ........................................................................18

*Webb v. E.I. Dupont de Nemours & Co., Inc.*,
  811 F. Supp. 158 (D. Del. 1992) ....................................................................15, 16

*Wieme v. Eastman Kodak Co.*,
  No. 02-CV-6021L, 02-CV-6212L, 2004 WL 2271402 (W.D.N.Y. Sept. 7, 2004) .....17, 21, 22

## RULES

Rule 1.9 ................................................................................................ passim

Rule 1.10 .........................................................................................8, 22

Rule 1.10(a) ...............................................................................................22

Rule 16 ....................................................................................................5, 10

Rule 26(a)....................................................................................................................1, 20

## I.   **NATURE AND STAGE OF THE PROCEEDINGS**

This is a patent infringement action filed by Plaintiff Apeldyn Corporation ("Apeldyn") on September 8, 2008 against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. (collectively "Samsung"), and eight other defendants.  The complaint alleges infringement of United States Patent No. 5,347,382 ("the '382 Patent").  On February 26, 2009, the Court held a scheduling conference and on March 9, 2009 the Court issued a scheduling order.  (D.I. 59.)  On the same day, the parties exchanged their Rule 26(a) Initial Disclosures.  (*See* D.I. 60-65.)

Samsung has filed a motion (D.I. 45) to disqualify R. Tyler Goodwyn, IV ("Mr. Goodwyn"), a partner in McKenna Long & Aldridge LLP ("McKenna") because years ago and while he was with another law firm, Mr. Goodwyn represented Samsung in another matter.  This is Apeldyn's answering brief in opposition to Apeldyn's motion to disqualify.

## II.   **SUMMARY OF ARGUMENT**

Samsung's motion to disqualify Mr. Goodwyn and McKenna should be denied because it appears to have been filed to harass Apeldyn and its counsel, and motions filed for such tactical purposes should be denied.  Moreover, in considering a motion to disqualify an attorney, Delaware courts balance the need to protect confidential information against the current client's choice of counsel.  Here, Apeldyn would be greatly prejudiced if Mr. Goodwyn and McKenna were disqualified.  On the other hand, Samsung's confidential information is not at risk because: (1) the technologies and patents at issue in the two cases are very different and thus the matters are not substantially related; (2) any general knowledge of Samsung's settlement strategies that Mr. Goodwyn may possess from his former representation does not form a basis for disqualification here; (3) information Mr. Goodwyn may have learned about the day-to-day operations of Samsung's IP Legal Group, personnel, location of documents, and other business operations is not confidential; and (4) the passage of time has rendered obsolete any confidential

information about Samsung Mr. Goodwyn may still recall.  In addition, McKenna should not be disqualified because Mr. Goodwyn has not discussed any confidential information regarding his work for Samsung in the prior representation at his former firm or any other information he may have learned as part of that representation with any McKenna attorneys.  For these reasons, Mr. Goodwyn should not be disqualified; and even if the Court were to find Mr. Goodwyn disqualified, McKenna should not be disqualified.

### III.   STATEMENT OF FACTS

#### A.   Mr. Goodwyn's Prior Representation of Samsung

In September 2001, Mosaid Technologies, Inc. ("Mosaid") filed an action against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc. ("the *Mosaid* Defendants") in *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd, et al.*, Case No. 01-4340 (JWB), in the United States District Court for the District of New Jersey.  (Exhibit 1 (Complaint in *Mosaid* case).)  The law firm of Morgan Lewis & Bockius, LLP ("Morgan Lewis") was counsel for the *Mosaid* Defendants.  (Declaration of R. Tyler Goodwyn, Esq. ("Goodwyn Decl.") at ¶ 4.)  Lead counsel at Morgan Lewis for the *Mosaid* Defendants was Thomas Kenworthy.  (*Id.* at ¶ 4.)

The technology at issue in the *Mosaid* case concerned specific configurations of word-line drivers and voltage pump circuits for dynamic random access memory ("DRAMs").  (*See* Exhibit 1 at ¶ 9; *see also* Exhibit 2.)  The work that Morgan Lewis did in the *Mosaid* case related to DRAMs and to the specific patents at issue in the *Mosaid* case ("the *Mosaid* patents").  (Goodwyn Decl. at ¶ 4.)  During Morgan Lewis' representation of the *Mosaid* Defendants, Mr. Goodwyn, then a partner in Morgan Lewis' D.C. office, worked on the *Mosaid* case.  During Mr. Goodwyn's tenure at Morgan Lewis, the single matter on which he worked for any Samsung entity was the *Mosaid* case related to DRAMs and the *Mosaid* patents.  (*Id.* at ¶ 5.)

In approximately August 2004, Weil Gotshal & Manges ("Weil Gotshal") was retained to represent the *Mosaid* Defendants in the litigation.  (*Id.* at ¶ 4.)  David Healey, a partner in Weil Gotshal, became lead counsel for the defendants in the *Mosaid* case.  (*Id.* at ¶ 4.)  Other Weil Gotshal attorneys also worked on the case.  After Weil Gotshal was retained as lead counsel, Mr. Goodwyn continued to work on defense issues, including those related to expert reports and summary judgment.  (*Id.* at ¶ 4.)  Sometime later, the parties entered into a settlement of the *Mosaid* case and dismissed the action on January 31, 2005.  (Exhibit 3.)

**B.    The Intervening Years**

In April 2006, Mr. Goodwyn left Morgan Lewis and joined McKenna.  (Goodwyn Decl. at ¶ 5.)  On September 8, 2008, McKenna, on behalf of Apeldyn, filed the instant action against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. (collectively "Samsung"), and others ("the *Apeldyn* case").  (D.I. 1.)  Only Samsung, of the ten defendants in the *Apeldyn* case, was a party in the *Mosaid* case.  As Mr. Goodwyn had stopped representing the *Mosaid* Defendants in January 2005, there were nearly four years between Mr. Goodwyn's representation of the *Mosaid* Defendants and the filing of this action.  In that nearly four year period, Mr. Goodwyn did not perform any work for any Samsung entity.  (Goodwyn Decl. at ¶ 5.)  Since that time, Mr. Goodwyn has worked extensively on patent infringement cases involving liquid crystal display ("LCD") technology.  (Goodwyn Decl. at ¶ 5.)

From May 2003 until March 2008, McKenna represented Commissariat à l'Énergie Atomique ("CEA"), the French Atomic Energy Commission, as plaintiff against various Samsung entities, including the two Samsung entities involved in this case, in patent infringement litigation pertaining to LCD technology filed in the United States, France and Japan.  (Declaration of Matthew T. Bailey ("Bailey Decl.") at ¶ 5.)  The United States case was litigated in the United States District Court for the District of Delaware, Civil No. 03-484-MPT

("the *CEA* case"). (*Id.* at ¶ 5.) Mr. Sirota, and his law firm, represented Samsung in the *CEA* case. The *CEA* case was a highly contested, protracted patent infringement litigation that lasted nearly five years. (*Id.* at ¶ 5.) During the pendency of the CEA case, lawyers from McKenna participated in two extensive mediation sessions and subsequently extensive settlement negotiations with representatives of Samsung. CEA eventually resolved its case with Samsung and a stipulation of dismissal was filed in March 2008. (*Id.* at ¶ 5.)

### C.    McKenna's Representation of Apeldyn

Plaintiff Apeldyn retained McKenna to represent it in the present case. (Bailey Decl. at ¶ 3.) McKenna has considerable expertise in litigating patent infringement cases, in particular LCD patent infringement cases, and has acquired extensive knowledge of LCD technology. (*Id.* at ¶ 4.) McKenna also has a full understanding of the cultural issues related to patent litigations involving large multinational Korean corporations (*Id.* at ¶ 4.) Before McKenna filed the complaint in this matter on behalf of Apeldyn relating to its LCD technology, Mr. Goodwyn informed McKenna that, as explained above, his involvement in the prior representation of the *Mosaid* defendants related to DRAMs. (Goodwyn Decl. at ¶ 6; Bailey Decl. at ¶ 6.) Because the *Apeldyn* case relates to controlling liquid crystal material in LCD flat screen displays, (D.I. 1 at ¶ 3; Exhibit 4, the '382 Patent), the technological and factual issues raised in the *Mosaid* case are materially different from the technology and factual issues that will be raised in this case. (Bailey Decl. at ¶ 6.)

McKenna filed the complaint in this matter on behalf of Apeldyn on September 8, 2008 alleging infringement of the '382 Patent. (D.I. 1.) Samsung was served on September 10, 2008. (D.I. 7, 8, and 14.) Mr. Goodwyn's name appeared as "of counsel" on that document. (D.I. 1.) However, to date, Mr. Goodwyn has not performed any work on this matter nor has he billed any time in connection with the *Apeldyn* case. (Goodwyn Decl. at ¶ 7.) Mr. Goodwyn did read the

'382 Patent and the complaint. (*Id.* at ¶ 7.) Significantly, Mr. Goodwyn has not discussed any confidential information regarding his work for the *Mosaid* Defendants nor has he discussed any other information he may have learned as part of that representation with anyone at McKenna. (*Id.* at ¶ 6.)

Indeed, although this case was filed in September 2008, very little has happened in it because the defendants, including Samsung, requested substantial extensions of time for filing answers. As previously noted, the Court conducted a Rule 16 Scheduling Conference on February 26, 2009. The last of the defendants filed answers on March 2, 2009. Apeldyn served its first discovery on the defendants on March 3, 2009.[1] The Court entered the Rule 16 Scheduling Order on March 9, 2009.

### D.    Correspondence Related to Alleged Conflict

As revealed by the correspondence submitted in support of Samsung's motion to disqualify, Samsung's counsel, Neil Sirota, contacted McKenna for the first time in a letter dated January 14, 2009. (Exhibit 11, Horwitz Declaration, D.I. 47.) In that correspondence, Mr. Sirota raised, for the first time, the alleged conflict approximately four months after the service of the complaint and requested a telephone conference to discuss the issues raised therein. (*Id.*)

On January 16, 2009, Richard Kirk, co-counsel for Plaintiff in this action, responded to Mr. Sirota. (Exhibit 6, Horwitz Declaration.) In his response, Mr. Kirk wrote that the McKenna attorneys to whom the letter had been addressed were taking and defending depositions in Mr. Kirk's office for several weeks on another unrelated matter and were unavailable to discuss the issue until the week of January 26, 2009. (*Id.*) Mr. Kirk further stated, *in clear terms*, that "no

---

[1] Apeldyn served identical document requests on all the defendants. Mr. Goodwyn had no role in preparing those requests.

one, including Tyler, is working on the Apeldyn case." (*Id.*)  As such, Samsung knew at that

time that no alleged confidential information was at risk of being disclosed.

On January 20, Mr. Sirota responded and acknowledged that the depositions that were

occupying the time of the McKenna attorneys, but nonetheless demanded that the McKenna

attorneys immediately hold a conference with him.  (Exhibit 11, Horwitz Declaration.)  Mr.

Sirota did not explain why the matter needed to be addressed immediately in light of Mr. Kirk's

representation that no McKenna attorneys were working on this case at the time.  (*Id.*)  On

January 21, 2009, Mr. Kirk again responded and reiterated McKenna's willingness to discuss the

issues with Mr. Sirota during the week of January 26.  (*Id.*)

On January 29, 2009, Mr. Kirk responded to Mr. Sirota's January 14, 2009 letter.

(Exhibit 8, Horwitz Declaration.)  In that letter, Mr. Kirk explained that, in light of the factual

differences underlying the two cases, the *Mosaid* case and the *Apeldyn* case are not "substantially

related" and thus "no conflict exists."  (*Id.*)  Over the next several weeks, Mr. Sirota sent

additional correspondence in which he continued to demand that McKenna immediately

withdraw from representation of Plaintiff in this matter.  (Exhibits 9, 11, Horwitz Declaration.)

Mr. Sirota requested a conference to discuss the alleged issues.  (*Id.*)

On February 19, 2009, Mr. Kirk responded to Mr. Sirota's correspondence and advised

him that McKenna did not intend to withdraw from the representation.  (Exhibit 10, Horwitz

Declaration.)  In further correspondence on February 24, 2009, Mr. Kirk stated McKenna's

willingness to discuss the alleged conflict in a live setting using an interactive question and

answer format.  (Exhibit 11, Horwitz Declaration.)  Mr. Kirk proposed March 2 or 3 for the

conference.  (*Id.*)  In an email to Mr. Sirota later that evening, Mr. Kirk attempted to alleviate

any concerns that Mr. Sirota may have had in connection with the scheduling of the conference

by stating that "except for the matter of scheduling, no substantive work is being done on the Apeldyn case. I can confirm that Apeldyn will not prepare or serve any discovery on Samsung before we speak on Monday or Tuesday." (Exhibit 11, Horwitz Declaration.)

In later correspondence, Mr. Sirota insisted on speaking prior to March 2 or 3, even though Mr. Kirk had informed him that earlier dates would be extremely inconvenient for the McKenna attorneys, who were fully engaged on other matters until March 2, 2009. In response, Mr. Sirota stated that such a conference would "only take five minutes." (Exhibit 5.) The McKenna attorneys believed that, in light of the disqualification issue Samsung raised, it would be more appropriate to discuss the matter in a more thorough fashion, and that such a discussion would take longer than five minutes. However, rather than wait three business days until March 2, when the McKenna attorneys were available, Samsung filed the instant motion on February 24, 2009, the day before the Court's scheduling conference.

McKenna believes that the instant motion is meritless. Nevertheless, in order to be able to focus on the merits of this case, on March 11, 2009 McKenna contacted Mr. Sirota to attempt to resolve the issues raised in the motion. During the call, McKenna represented that (1) Mr. Goodwyn had not done any work on the *Apeldyn* case; (2) McKenna had instituted an informal ethical wall to segregate Mr. Goodwyn from the case when Samsung raised the conflict issue in January, and (3) Mr. Goodwyn had not disclosed any information about his work on the *Mosaid* case to anyone at McKenna. McKenna proposed that, in exchange for Samsung's withdrawal of the motion to disqualify, McKenna would agree that Mr. Goodwyn would not work on the *Apeldyn* case. McKenna would establish a formal ethical wall between Mr. Goodwyn and the *Apeldyn* case, and McKenna would continue to represent Apeldyn in the case with other attorneys.

On Friday, March 13, 2009, Mr. Sirota notified McKenna that Samsung would not agree to McKenna's proposal to resolve the issue, that Samsung was unwilling to withdraw the motion, and that Samsung wanted to allow the motion "to play out." In response, McKenna withdrew its proposal to resolve the issue.

## IV.    ARGUMENT

### A.    Motions to Disqualify Are Not Favored And Should Not Be Used For Tactical Purposes

In general, motions to disqualify are regarded warily. *See, e.g., Commonwealth Ins. Co. v. Graphic Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992) (*quoting Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61 (E.D. Pa. 1986) ("Disqualification is a harsh measure, and therefore, 'motions to disqualify opposing counsel generally are not favored.'")[2]; *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 584-85 (D. Del. 2001) (recognizing that motions to disqualify are often filed as a dilatory tactic.)

Indeed, several courts have concluded that such motions are often filed merely for tactical purposes to harass opposing counsel. *See, e.g., Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436, 105 S. Ct. 2757, 2763 (1985) ("we share the Court of Appeals' concern about tactical use of disqualification motions to harass opposing counsel") (internal citations omitted); *Commonwealth Ins.,* 808 F. Supp. at 1203 ("the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes.") (internal citations omitted); *Hendry v. Hendry*, No. Civ.A. 18625-NC, 2005 WL 3359078, at *2 (Del. Ch. Dec. 1, 2005) ("courts

---

[2] Samsung relied on the *Commonwealth Ins.* case although in that case the Court denied the movant's request to disqualify. In fact, in several other cases cited by Samsung, the court ultimately denied the movant's request, in whole or in part. *See Conley v. Chaffinch*, 431 F. Supp. 2d 494 (D. Del. 2006) (denying motion to disqualify under Rule 1.9); *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418 (D. Del. 1986) (denying motion to disqualify law firm under Rule 1.10).

disfavor disqualification motions because they often are filed for tactical reasons rather than to ensure the integrity of the proceedings."); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982) (noting that "such motions should be viewed with extreme caution for they can be misused as techniques of harassment").

As described above, the complaint in this matter was filed on September 8, 2008. (D.I. 1.) Samsung was served on September 10, 2008. (D.I. 1, 7, 8, and 14.) As Samsung concedes, Mr. Goodwyn's name appeared as "of counsel" on that document. (D.I. 1.) As such, Samsung knew at the outset of this matter that Mr. Goodwyn was one of the McKenna attorneys who intended to represent Plaintiff in this matter. Yet, the correspondence shows that Mr. Sirota contacted McKenna for the first time on January 14, 2009, nearly four months later. (Exhibit 11, Horwitz Declaration.) In that correspondence, Mr. Sirota raised, for the first time, the alleged conflict that is the subject of the instant motion, even though Samsung knew of the representation approximately four months earlier when the complaint was served. (*Id.*) If the alleged conflict were of true concern to Samsung, there is no explanation for Samsung's delay in raising this issue. *Sanchez-Caza v. Estate of Whetstone*, No. Civ.A. 02C-08-002, 2004 WL 2087922, at *5 (Del. Super. Ct. Sept. 16, 2004) (where six months passed between the beginning of the case and the motion to disqualify, the court found that it appeared "that the Defendants were not overly concerned about [prior counsel and firm] possessing potentially harmful confidential information.")

In addition, in correspondence with McKenna attorneys prior to the filing of this motion, Samsung requested a conference to discuss the issues in the present motion. For its part, McKenna tried its best to elicit the specific basis on which Samsung alleged a conflict to exist. Samsung, through Mr. Sirota, refused to give any explanation, saying, essentially, that it did not

need to furnish any basis.  Then, Samsung filed the instant motion on February 24, 2009, the day before the Court held its Rule 16 scheduling conference.  When Mr. Sirota informed the Court of Samsung's motion it became clear that had been his intent all along.

Finally, as noted above, Mr. Goodwyn has not discussed any confidential information regarding his work for the *Mosaid* Defendants nor has he discussed any other information he may have learned as part of that representation with anyone at McKenna.  (Goodwyn Decl. at ¶ 6.)  If Samsung had waited for a substantive conference with McKenna, Samsung would have learned these facts.

Moreover, and perhaps most importantly, Samsung's rejection of McKenna's March 11, 2009 offer makes transparent the purpose of the instant motion.  Indeed, McKenna clearly represented that (1) Mr. Goodwyn had not done any work on the *Apeldyn* case; (2) when Samsung raised the conflict issue in January, McKenna instituted an informal ethical wall to segregate Mr. Goodwyn from the case; and (3) Mr. Goodwyn had not disclosed any information about his work on the *Mosaid* case to anyone at McKenna.  Nonetheless, Mr. Sirota rejected McKenna's offer stating that Samsung would not agree to allow McKenna to continue to represent *Apeldyn* in this case, but instead wanted to allow the motion "to play out."  In light of the history between McKenna and Mr. Sirota on the *CEA* case, it is clear that Samsung does not want McKenna to represent any adversary in any action against Samsung.  These facts strongly suggest that Samsung's motion was filed for a tactical purpose and the motion should be denied. *Nemours Found. v. Giblane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 431 (D. Del. 1986) ("Courts have been extremely reluctant to disqualify attorneys when there is a possibility that a motion was made primarily for strategic purposes in a litigation").

**B.    Delaware's Balancing Test Weighs Against Disqualification**

In considering a motion to disqualify an attorney, Delaware courts "must weigh the current client's choice of counsel with a 'former client's right to protect confidences revealed in a prior representation.'" *Sanchez-Caza*, 2004 WL 2087922, at *4 (citing *Cramer v. Pepper*, No. 83C-JN-10, 1985 WL 635619, at *2 (Del. Super. Ct. June 24, 1985)); *see also Express Scripts, Inc. v. Crawford*, Civil Action No. 2663-N, 2007 WL 417193, at *1 (Del. Ch. Jan. 25, 2007) (requiring that courts balance "the interests of the former client in protecting confidences revealed during representation with the prejudice that would be suffered by the current client were the attorney or firm to be disqualified"); *Conley*, 431 F. Supp. 2d at 500 (denying motion to disqualify even where Rule 1.9 was violated because of the prejudice that the client would suffer if the court granted the motion). The comments to Rule 1.9 clearly state that "the rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel." M.R.P.C. Rule 1.9 cmt. 4.

The courts of Delaware give deference to a client's selection of counsel. *See, e.g., Cramer*, 1985 WL 635619, at *2, *4 (noting the evolution of the law to recognize the hardship suffered by clients when their attorneys are disqualified and stating that "the Court cannot deny [the new client] its choice of [counsel]"). Here, Apeldyn retained McKenna to represent it in the present case. McKenna has considerable expertise in litigating patent infringement cases, in particular LCD patent infringement cases, and has acquired extensive knowledge of LCD technology. (Bailey Decl. at ¶ 4.) McKenna also has a full understanding of the cultural issues related to patent litigations involving large multinational Korean corporations. (*Id.* at ¶ 4.) If the

Court disqualifies Mr. Goodwyn and McKenna, Plaintiff will be unable to be represented by the counsel of its choice.[3]

In addition, even if the instant motion is granted, Mr. Goodwyn and/or McKenna would only be precluded from representing Apeldyn against two of the ten defendants in this action. Both Mr. Goodwyn and McKenna could continue to represent Apeldyn with respect to the case against the other eight defendants. In such circumstances, Plaintiff would have to deal with the expense and administration of working with two different law firms in connection with the same technology and patent. In summary, disqualification here would substantially prejudice Apeldyn by interfering with its ability to select the counsel of its own choosing. *See Sanchez-Caza*, 2004 WL 2087922, at *5 (finding that disqualification of the attorney and his entire firm would "undoubtedly prejudice the Plaintiff by denying him his choice of counsel.").

## C.    The Motion Should Be Denied Because the Confidences of the *Mosaid* Defendants Are Not At Risk

As described above, Delaware courts balance the prejudice to the current client with the "former client's right to protect confidences revealed in a prior representation." *Sanchez-Caza*, 2004 WL 2087922, at *4 (*quoting Cramer*, 1985 WL 635619, at *2). *See also Express Scripts*, 2007 WL 417193, at *1 (same). Here, Samsung's confidential information is not at risk because (1) the technologies and patents at issue in the two cases are different and the matters are not

---

[3] Disqualification would also prejudice Mr. Goodwyn. For the last several years, Mr. Goodwyn has worked almost exclusively on cases involving LCD technology. Disqualification in this case would prevent Mr. Goodwyn from representing Apeldyn in this case against Samsung involving LCD technology, even though the technology relevant to LCDs is not "substantially related" to the DRAMs at issue in the *Mosaid* case. This outcome is particularly prejudicial considering that Samsung is one of the largest worldwide manufacturers of LCD products. Such a result is contrary to the case law and should not be permitted. *See* M.R.P.C. Rule 1.9 cmt. 4 (the rule "should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association."); *Commonwealth Ins.*, 808 F. Supp. at 1203 (considering as a factor "enabling attorneys to practice without excessive restrictions.").

substantially related; (2) any knowledge of Samsung's settlement strategies that Mr. Goodwyn may possess would not form the basis for disqualification; (3) any information learned by Mr. Goodwyn about the day-to-day operations of Samsung's IP Legal Group, personnel, location of documents, and other business operations is not confidential; and (4) the passage of time has rendered obsolete any alleged confidential information Mr. Goodwyn may still recall.

1.    **Because the Technologies and Patents at Issue in the Two Cases are Different, the Matters are Not Substantially Related**

Rule 1.9 of the Model Rules of Professional Conduct allows an attorney to represent a client in a matter in which a client's interests are adverse to the interests of a former client as long as the two matters are not "substantially related." M.R.P.C. Rule 1.9(a). The comments to Rule 1.9 state that the scope of the matter "depends on the facts of a particular situation or transaction." M.R.P.C. Rule 1.9 cmt. 2. Moreover, "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." *Id.*; *see also Unanue v. Unanue*, No. Civ. A. 204-N, 2004 WL 602096, at *7 (Del. Ch. Mar. 25, 2004) (denying motion to disqualify counsel and citing to Rule 1.9 cmt. 2 permitting counsel to represent client's adversary in a "factually distinct problem").

Samsung concedes, as it must, that the technologies are "different." (Memorandum at 13.) Instead, Samsung states that "[l]ike the *Mosaid* case, the *Apeldyn* case is a patent infringement action in which Samsung is an accused infringer." (Memorandum at 13.) This is not a basis for disqualification. As the comments to Rule 1.9 reveal, courts evaluating whether Rule 1.9 prohibits a subsequent representation must look at the facts of both cases, not merely at the legal issues involved. For example, in *Javorski v. Nationwide Mut. Ins. Co.*, Civil Action No. 3:06-CV-1071, 2006 WL 3242112, at *7 (M.D. Pa. Nov. 6, 2006), the court applied Rule 1.9 and

denied a motion for disqualification where the court analogized the movant's position "to an argument that all medical malpractice cases are the same. This court is unwilling to accept such a broad characterization." *Javorski*, 2006 WL 3242112, at *7 (internal citations omitted); *see also Schaefer v. Gen. Elec. Co.*, No. 3:07-CV-0858, 2008 WL 649189, at *11 (D. Conn. Jan. 22, 2008) ("attorney's representation of a party on the same *type* of case that he handled for a former client does not itself violate the ethics rules").[4]

Notably, this court recently denied a motion to disqualify where, as here, the patents at issue in the current case were different from those at issue in the prior representation. *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 515 (D. Del. 2007). In *Talecris*, the court denied the motion to disqualify, in part, because the patents at issue in the two suits were different. *Id.* Although the court concluded that "[t]here is no doubt that the two litigations overlap to some degree," the court found that "the substantive relationship between the two litigations is tenuous." *Id.* Moreover, as the validity of the patent from the first action was not at issue in the second action in *Talecris*, any confidential information counsel might have learned about the previously-litigated patent was not relevant to the later case. As such, the court found that the matters in the two cases were not "substantially related." *Id.*; *see also Elonex*, 142 F. Supp. 2d at 582 (finding that two cases were not substantially related and denying motion to disqualify because previous representation involved a different patent with "a different type of technology"); *Civco Med. Instruments Co., Inc. v. Protek Med. Prods., Inc.*, No. 4:03-CV-40722, 2004 WL 1326474, at *7 (S.D. Iowa 2004) (denying motion to disqualify where the patent from the first action was cited as prior art to the patent in the subsequent representation because the

---

[4] Cases cited herein that are from outside this jurisdiction are from other jurisdictions that have adopted Model Rule 1.9, including the requirement in Rule 1.9 that the two matters at issue be "substantially related."

factual matters were distinct).  As the *Talecris* and *Elonex* cases are patent infringement cases decided by this Court, they are the most persuasive authority on this issue and should be given more weight than the cases cited by Samsung.

   As described above, the technology at issue in the *Mosaid* case related to DRAMs.  (*See* Exhibit 1 at ¶ 9; *see also* Exhibit 2.)  The work that Morgan Lewis did in the *Mosaid* case related to DRAMs and to the *Mosaid* patents.  In this case, the technology relates to controlling liquid crystal material in LCD modules and to the '382 Patent.  The technological and factual issues raised in the *Mosaid* case, which relate to completely different patents, are not material to this action.

   Furthermore, the cases on which Samsung relies are inapplicable, as they are either not from this district or they are not patent infringement cases.  The cases are also distinguishable on their facts.  For example, in several of the cases cited by Samsung, the courts concluded that the matters were substantially related because the movant established that evidence from the first representation was relevant and admissible in the second representation, which is not true here. For example, in *Madukwe v. Delaware State University*, 552 F. Supp. 2d 452, 454-55 (D. Del. 2008), the court disqualified an attorney who had previously consulted with the former client on numerous employment related matters over more than 25 years of representation, including drafting a revision to the former client's employee handbook.  In subsequent representation against the former client, the specific employee handbook drafted by the attorney was relevant to the merits of the second case.  *Id.* at 462.

   In *Webb v. E.I. Dupont de Nemours & Co., Inc.*, 811 F. Supp. 158, 159-60 (D. Del. 1992), the attorney was a former in-house counsel, who was employed by the company for over 27 years in connection with ERISA matters.  In subsequent litigation against his former

-15-

employer, the attorney attempted to admit into evidence documents that he himself had drafted. *Id.* at 160.  In those circumstances, there was no question that the attorney had learned information in the prior representation that was related to the merits of the subsequent case.  *Id.* at 161.  Similarly, in *Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.*, 639 F. Supp. 282, 284, 286 (N.D. Cal. 1986), cited by Samsung, the movant sought to disqualify a former in-house attorney who had worked on numerous distribution and joint venture agreements and was very familiar with all of the client's distribution policies and procedures, both internationally and domestically.  The court deemed that such knowledge would be relevant to the merits of a subsequent antitrust action addressing the propriety of the same distribution policies and procedures.

Here, there are no facts suggesting that Mr. Goodwyn's knowledge from the previous action would be relevant or admissible in this case.  His work for the *Mosaid* defendants was limited to the *Mosaid* patents at issue in that case.  Moreover, Samsung has not alleged and cannot allege that any evidence used in the prior case would be applicable here.  Because the two cases relate to completely different patents and factual issues, the matters are not substantially related.

Samsung also relies on *In re Riles*, 243 F.3d 553, 2000 WL 1062086 (Fed. Cir. July 20, 2000) and *In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992).  However, both the *Riles* and *American Airlines* courts applied the law of the 5th Circuit, which differs from the law of Delaware.  Indeed, as evidenced by the *Riles* and *American Airlines* cases, the law of the 5th Circuit states that the subject matter of a case need not be "relevant" to a subsequent case for the two matters to be "substantially related."  *Riles*, 2000 WL 1062086, at *3; *American Airlines*, 972 F.2d at 623.  Thus, in the 5th Circuit, even information that is irrelevant to the subject matter

of the subsequent litigation can result in disqualification.[5]  This is not the rule in Delaware,

however, where the courts instead look at the facts relevant to the specific case at issue and

require the two matters to have overlapping facts before disqualifying the attorney.[6]  *Unanue*,

2004 WL 602096, at *7 (permitting counsel to represent former client's adversary in a "factually

distinct problem") (internal citations omitted); *Talecris*, 491 F. Supp. 2d at 515 (allowing

representation of former client's adversary because the patents at issue in the two suits were

different); *Elonex*, 142 F. Supp. 2d at 582 (denying motion to disqualify because previous

representation involved a different patent with "a different type of technology").  Thus, the *Riles*

and *American Airlines* cases are not applicable here.  Under Delaware law, the matters here are

not substantially related and the motion should be denied.

> ### 2.    Mr. Goodwyn Should Not Be Disqualified Based on a General Knowledge Of Samsung's Litigation and Settlement Strategies

As noted above, Samsung concedes, as it must, that the technologies are "different" and

instead attempts to argue that Mr. Goodwyn learned general information, such as Samsung's

settlement strategies that "is far more valuable to opposing counsel than the technical details of

any particular accused product." (Memorandum at 13.)  On this basis, Samsung seeks to

disqualify Mr. Goodwyn and McKenna.  During his tenure at Morgan Lewis, however, the single

matter on which Mr. Goodwyn worked for any Samsung entity was the *Mosaid* case related to

---

[5] The amount of time spent on a matter is not dispositive.  Although the *Riles* court disqualified the attorneys in part because they had billed over 1200 hours on a variety of patent matters, in *Wieme v. Eastman Kodak Co.*, No. 02-CV-6021L, 02-CV-6212L, 2004 WL 2271402, at *3 (W.D.N.Y. Sept. 7, 2004), the court denied a motion to disqualify in an employment discrimination case where one attorney had billed over 1,200 hours and a second attorney had billed "almost twice that amount in representing [former client] in employment matters."

[6] The 5th Circuit also fails to apply the balancing test that is applicable here, and does not consider the prejudice to the current client that would result from disqualification.

DRAMs and the *Mosaid* patents. (Goodwyn Decl. at ¶ 5.)  Therefore, Mr. Goodwyn could hardly be said to possess general knowledge of Samsung's litigation and settlement strategies.  Rather all information in his possession relates specifically to the *Mosaid* case.  (*See* Exhibit 6 (showing that Samsung was involved in 179 patent infringement litigations from 2000 to the present).)

Even if Mr. Goodwyn learned information about Samsung's litigation and settlement policies and practices, such information would be an insufficient basis for disqualification.  *See, e.g.,* M.R.P.C. Rule 1.9 cmt. 3 ("In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation . . . .").  In *Vestron, Inc. v. Nat'l Geographic Soc'y*, 750 F. Supp. 586, 595 (S.D.N.Y. 1990), the client seeking to disqualify its former counsel asserted that the attorney had learned "sensitive and confidential information concerning the manner in which those in [the former client's] upper management . . . work and think, and specifically [the former client's] approach to and strategy in litigation matters."  The former client's representative further stated that the attorney learned the representative's "views, both personally and on behalf of the [former client], as to when settlement was appropriate, when and on what basis the [former client] was prepared to litigate issues and generally how the [former client] functioned during a protracted litigation."  *Id.*  In response, the court denied the motion to disqualify counsel, finding that the general information cited by the former client was insufficient to disqualify the attorney.  *Id.*  The court stated that "if insight into a former client's general 'litigation thinking' were to constitute 'relevant privileged information,' then disqualification would be mandated in virtually every instance of successive representation.  That clearly is not the law, and the [former client's] motion must be denied."  *Id.*

In *Kaminski Bros. v. Detroit Diesel Allison*, 638 F. Supp. 414, 414-15 (M.D. Pa. 1985), the party moving to disqualify its former law firm argued that the firm had represented the

former client in at least fifteen cases in fifteen years. Although the former client argued that the

law firm might have knowledge of the client's negotiation techniques or defense theories, the

court denied the motion to disqualify counsel, stating that "[w]hile litigation has replaced

physical battle as a means of dispute resolution, we are not under conditions of surprise flank

attacks." *Id.* at 417. Indeed, even assuming that the law firm had knowledge of the former

client's negotiation techniques or defense theories, the court found that the Federal Rules of Civil

Procedure and Evidence ensure that "relevant facts are discoverable and open and the outcome

[of litigation] depends on the litigator's skill to argue his conclusion in post impressionist fashion

from the facts known by all." *Id.* The court stressed, however, that while "facts" acquired

during the scope of the prior representation might bar counsel from continuing in the present

representation, the court found it unlikely that any facts would have been disclosed because the

two representations involved different technologies, namely suits over two different types of

trucks. *Id.* In light of these cases, even if Mr. Goodwyn possessed some information regarding

Samsung's general litigation and settlement strategies that would be applicable here, the Court

should nonetheless deny Samsung's motion.

      3.      **Information About The Day-To-Day Operations Of Samsung's IP Legal Group, Personnel, Location Of Documents, And Other Business Operations Is Not Confidential**

Samsung also alleges that Mr. Goodwyn learned through his representation of Samsung

general information regarding (1) the day-to-day operations of Samsung's IP Legal Group; (2)

Samsung Semiconductor Division's structure, personnel, and documents; and (3) other aspects of

Samsung's business operations. (Memorandum at 13.) However, such information is not

privileged or confidential and would likely be learned by Apeldyn in the course of discovery in

this case. Disqualification based on these facts would be inappropriate. M.R.P.C. Rule 1.9 cmt.

3 ("Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying.").

For example, in *Talecris*, 491 F. Supp. 2d at 515 n.2, the former client asserted that the attorney had learned confidential client information including the identity of potential witnesses and information regarding the former client's licensing agreements. However, the court denied the motion to disqualify counsel in part because the alleged confidential information would have been learned during the normal course of discovery. Similarly, in *Bayou Pumps & Prods., Inc. v. Discflo Corp.*, Civil Action No. 06-0962, 2006 WL 3702120, at *8 (W.D. La., Dec. 13, 2006), the court refused to disqualify counsel where alleged confidential information would have been discovered by the attorney in his role as a shareholder in the corporation. As such, the client could not reasonably have expected that the information would be treated as privileged. *Id.; see also Sanchez-Caza*, 2004 WL 2087922, at *4 (denying motion to disqualify where documents received from former client included corporate minutes that were not confidential and were subject to discovery).

Here, Samsung asserts that Mr. Goodwyn learned information about the day-to-day operations of Samsung's IP Legal Group, Samsung Semiconductor Division's structure, personnel, and documents, and other aspects of Samsung's business operations. However, all of this information is subject to disclosure during discovery. Indeed, Rule 26(a) *requires* a party to identify its relevant documents and any personnel with relevant information even if the other party fails to request such information. Samsung's own initial disclosures, served on March 9, 2009, identified several individuals with information regarding this action, and included their job titles and business addresses as well. (Exhibit 7.) Samsung's initial disclosures also identified the categories of documents that Samsung has and the location of all of those documents. (*Id.*)

In addition, a review of the declarations that Samsung attached to its memorandum reveals information about the job titles, job responsibilities, business structure, operations, and more, suggesting that Samsung does not regard such information as confidential, much less privileged.[7] (See Jun Sung Park Decl. at ¶¶ 2, 3, 5,7, 10, 12, 20, and 21; Dong Won Park Decl. at ¶¶ 2,8, and 9.)  In light of the above, any information that Mr. Goodwyn may have learned regarding the day-to-day operations of Samsung's IP Legal Group, Samsung Semiconductor Division's structure, personnel, and documents, and other aspects of Samsung's business operations is not confidential or privileged and should not result in disqualification.

### 4.    The Passage of Time Has Rendered Obsolete Any Alleged Confidential Information Mr. Goodwyn May Still Recall

The comments to Rule 1.9 state that "[i]nformation acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related."  M.R.P.C. 1.9 cmt. 3.  Many courts have found that information learned previously has been rendered obsolete in less time than the four year passage of time in this case.  *See, e.g.*, *Sanchez-Caza*, 2004 WL 2087922, at *2 (denying motion to disqualify where prior representation and current representation were separated in time by barely more than a year); *GM v. ETW*, No. CN01-08714, 2006 WL 3197352, at *2 (Del. Fam. Ct. Sept. 12, 2006) (denying motion to disqualify because any confidential information learned was likely "rendered obsolete" by the passage of three years); *Wieme v. Eastman Kodak Co.*, No. 02-CV-6021L, 02-CV-6212L, 2004 WL 2271402, at *6 (W.D.N.Y. Sept. 7, 2004) (denying motion to disqualify where more than three years had passed

---

[7] The motion and declarations were not filed under seal.

since the previous representation, noting that over time "company attitudes and policies toward litigation and settlement may also change").[8]

In light of the above, any confidential information that may have been learned by Mr. Goodwyn has been rendered obsolete by the passage of time. Mr. Goodwyn's representation of the *Mosaid* Defendants ended more than four years ago and, since then, Mr. Goodwyn has not performed any work for any Samsung entities. Samsung's practices and policies toward the *Mosaid* litigation and settlement are unlikely to have any bearing on the *Apeldyn* case, especially given the passage of time. *See Wieme*, 2004 WL 2271402 at *6. For these reasons, the passage of nearly four years has rendered obsolete any confidential information that Mr. Goodwyn may have once known about Samsung.

### D.    McKenna Is Not Violating Rule 1.10(a) and Should Not Be Disqualified

Rule 1.10 prohibits a firm from representing a client if an individual attorney within the firm would be barred from the same representation. M.R.P.C. Rule 1.10(a). Because Rule 1.9 does not bar Mr. Goodwyn from representing Apeldyn in the *Apeldyn* case, McKenna similarly should not be disqualified.

Furthermore, McKenna should not be disqualified because Mr. Goodwyn has not shared any alleged confidential information with any McKenna attorneys. In *Nemours Found. v. Giblane, Aetna, Fed. Ins. Co.*, 632 F. Supp. at 428, the court emphasized that "the Rules enjoin the attorney to guard his client's secrets in an affirmative and deliberate manner, through self-imposed silence." To that end, a "cone of silence . . . credit[s] members of the legal profession with a certain level of integrity." *Id.* With that in mind, in the *Nemours* case, the court declined

---

[8] *See Wieme v. Eastman Kodak Co.*, No. 02-CV-6021L, 02-CV6212, 2003 WL 23163157, at *1 (W.D.N.Y. Sept. 22, 2003) (indicating that the attorneys left their prior firm in 2000).

to disqualify an entire law firm, even where an individual attorney within the firm had knowledge of confidential information. The court reached this conclusion in light of several factors. First, the court declined to disqualify the firm because the attorneys involved had imposed their own "cone of silence." *Id.* at 429. Moreover, the firm had ensured that no confidential information was disclosed by the attorneys. *Id.* The court also noted that, importantly, the attorney at issue "was not the lead counsel in the [previous] litigation." *Id.* In addition, the former client could not assert any alleged prejudice that would result by representation by the other attorneys in the firm. *Id.* at 430.

Similar to the *Nemours* case, here, Mr. Goodwyn has not done any work or billed any time in connection with the *Apeldyn* case. (Goodwyn Decl. at ¶ 7.) He has only read the '382 Patent and the complaint. (*Id.* at ¶ 7.) Mr. Goodwyn has not discussed any confidential information regarding his work for the *Mosaid* Defendants nor has he discussed any other information he may have learned as part of that representation with anyone at McKenna. (*Id.* at ¶ 6.) As stated above, Mr. Goodwyn was not the lead attorney in the *Mosaid* case. (*Id.* at ¶ 4.) Accordingly, there would be no prejudice to Samsung if McKenna continued to represent Apeldyn in this matter.

## V.    CONCLUSION

Although no one factor is dispositive in evaluating whether disqualification is appropriate, the totality of the facts here strongly suggests that disqualification of Mr. Goodwyn and McKenna is not appropriate. *See Starlight Sugar, Inc. v. Soto*, 903 F. Supp. 261, 267 (D.P.R. 1995) (finding that, although no one factor is dispositive, multiple issues such as the timing of the motion to disqualify, the length of time between relevant representations, and the assurances of the possibly conflicted attorney that no confidential information is being used can have the cumulative effect of "tilt[ing] the balance" against disqualification.) Here, the facts

-23-

clearly weigh against disqualification.  For the foregoing reasons, the Court should deny

Samsung's motion to disqualify Mr. Goodwyn and McKenna.

March 17, 2009                                    BAYARD P.A.


                                                   /s/ Richard D. Kirk (0922)
                                                  Richard D. Kirk (rk0922)
                                                  Stephen B. Brauerman (sb4952)
                                                  222 Delaware Avenue, 9th Floor
                                                  P.O. Box 25130
                                                  Wilmington, DE 19899-5130
                                                  (302) 655-5000
                                                  rkirk@bayardlaw.com
                                                  sbrauerman@bayardlaw.com

                                                  *Attorneys for Plaintiff Apeldyn Corporation*

OF COUNSEL:

Gaspare J. Bono
Matthew T. Bailey
Shari L. Klevens
Christina M. Carroll
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500