IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APELDYN CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 08-568-SLR |
| ) | |
| SAMSUNG ELECTRONICS CO., LTD., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

---

Richard D. Kirk, Esquire, and Stephen B. Brauerman, Esquire, Bayard, P.A., counsel for plaintiff Apeldyn Corporation.  Of counsel:  Gaspare J. Bono, Esquire, Matthew T. Bailey, Esquire, and Shari L. Klevens, Esquire, McKenna Long & Aldrige LLP.

Richard L. Horwitz, Esquire, David E. Moore, Esquire, and D. Fon Muttamara-Walker, Esquire, Potter Anderson & Corroon LLP, counsel for defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.  Of counsel:  Neil P. Sirota, Esquire, Chang Sik Kim, Esquire, Michael J. Barta, Esquire, and William S. Foster, Jr., Esquire, Baker Botts, L.L.P

---

**MEMORANDUM OPINION**

Dated:  September 30, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Pending before the court is a motion, filed by defendants Samsung Electronics Co., Ltd. and Samsung Electronics America ("Samsung"), to disqualify R. Tyler Goodwyn, IV ("Goodwyn") and McKenna Long & Aldridge L.L.P. ("MLA"), counsel representing plaintiff Apeldyn Corporation (Apeldyn"). An evidentiary hearing was conducted on July 30, 2009. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338. For the reasons that follow, the motion shall be granted.

## II. BACKGROUND

Mr. Goodwyn joined MLA in April 2006. Prior to joining MLA, he was a partner at Morgan Lewis & Bockius ("Morgan Lewis"). In 2001, Morgan Lewis began its representation of Samsung in a lawsuit captioned *Mosaid Technologies, Inc. v. Samsung Electronics Co., Ltd.*, Civ. No. 01-4340 (D.N.J.) ("the *Mosaid* litigation"). The *Mosaid* litigation involved nine patents directed to specific technologies in DRAM[1] chips, to wit, word line driver and voltage pump functionalities. Mr. Goodwyn was a member of the Morgan Lewis litigation team, billing more than 4,000 hours to the matter between September 13, 2001 and January 31, 2005. (D.I. 154 at 51) According to Mr. Goodwyn, he "worked on developing claim construction positions and invalidity positions." (*Id.* at 149)

Jun Sung Park, who was senior legal counsel in Samsung's IP Legal Group 2 during the *Mosaid* litigation, testified that Mr. Goodwyn was involved

> in the analysis of the merits of the case. He was involved in the analysis
> of the patents at issue, and also analysis of related Samsung products.

---

[1] "Dynamic random access memory."

> And based on that, he came up with arguments that could be made relating to infringement/noninfringement issues, and from the perspective of invalidity issues, he would come up with recommendations and whatnot . . .. So, in this regard, he was deeply involved in the discovery phase of the case, so coming up with the strategies relating to discovery, he was the one who advised us about that mostly. And after that, there were various motions that were filed, and he took the leading role in terms of these various motions. . . . [I]mmediately before the case was finalized, in terms of the settlement issues, he was - - he took the leading role in terms of giving us the advice based on his experience and his analysis of the merits of the case, and things like that.

(*Id.* at 43-44) Mr. Park opined that, during his involvement in settlement, Mr. Goodwyn was "exposed to factors that Samsung considers important in settlement." (*Id.* at 44) Samsung's IP Legal Group 2 managed patent cases related to semiconductor and/or liquid crystal display ("LCD") technologies and developed strategy preferences that would carry over case-to-case. (*Id.* at 52)

In the summer of 2004, Weil Gotshal took over as lead counsel in the *Mosaid* litigation. However, Mr. Goodwyn remained involved in the litigation because of his extensive knowledge of such. (*Id.* at 53-54)

MLA began talking to Mr. Goodwyn about employment in April 2005, within months of the resolution of the *Mosaid* litigation. At that time, MLA was actively pursuing a case against Samsung ("the *CEA* litigation"), which litigation related to LCD technologies. It was determined that "there was no conflict between the work that Mr. Goodwyn had done previously for Samsung and [MLA's] continued and current representation of CEA in the LCD case." (*Id.* at 86) The conflict was then cleared with Samsung. (*Id.* at 141) In April 2006, when Mr. Goodwyn was hired, MLA imposed no ethical screen related to the *CEA* litigation or otherwise. (*Id.* at 141-43)

2

Within months of being hired, Mr. Goodwyn was asked to work on the case at bar. When he raised questions about the propriety of the assignment in light of his work in the *Mosaid* litigation, a meeting was convened between the top managers of MLA's IP litigation practice. Consistent with their analysis in the *CEA* litigation, the managing partners reviewed the *Mosaid* patents and the '382 patent at issue and then compared the technologies. They concluded that the *Mosaid* patents (focused on the design and architecture of a DRAM chip) and the '382 patent (focused on liquid crystal materials and speeding up their response times through an overdrive functionality) were "not in any way related to each other." (*Id.* at 93) Consequently, it was decided that there was no reason to exclude Mr. Goodwyn from working on the case at bar. (*Id.* at 94, 162) Samsung was not consulted regarding this decision.

In January 2009, Samsung raised a concern about Mr. Goodwyn's representation of plaintiff Apeldyn in the instant litigation. Although Mr. Goodwyn had not yet expended time on the case (due to the press of other work), nevertheless, his name appeared on the complaint and other papers, and he was a listed recipient of documents until February 10, 2009. (*Id.* at 124-129)

Samsung's accused overdrive feature is implemented by two semiconductor components:[2] the timing controller integrated circuit (T-CON) and DRAM. (*Id.* at 29-30) There is no dispute that, without DRAM memory, Samsung's overdrive would not work.[3]

---

[2]According to the Messrs Park, Samsung's Semiconductor Division will have significant involvement in the defense of the case at bar, as it had in the *Mosaid* litigation. (*Id.* at 31-34, 44-45)

[3]As explained by Samsung, the DRAM at issue is dedicated to the overdrive function. Samsung LCD products without the overdrive function do not have this DRAM

(*Id.* at 30, 134) Although plaintiff concedes that "you must have a memory in any LCD display because it has to store the data that's going to be displayed," plaintiff argues that, from the perspective of the '382 patent, it does not matter what memory is used to determine how the overdrive works. (*Id.* at 135-36,164) Plaintiff bases its contention on the fact that the claims and specification of the '382 patent make no reference to DRAM or any equivalent structure that might be used in connection with the claimed overdrive functionality.

Samsung argues otherwise. According to Samsung, the patent claims at issue are written in means-plus-function format. Given that memory is an important component in the structures used to implement Samsung's overdrive functionality,[4] a proper means-plus-function infringement analysis will require that the structure of Samsung's DRAMs will be at issue. It stands to reason that, in order to prove infringement, Apeldyn will necessarily be using specimens and documentation that are of the same type, if not the same, as those collected and reviewed by Mr. Goodwyn in the *Mosaid* litigation. Consistent with this theory of the case, Apeldyn has pursued discovery (*e.g.,* document request 11) regarding the DRAM component circuitry of Samsung's accused products. Based on these largely undisputed contentions,

---

chip.

[4]Samsung argues in this regard that Apeldyn will have to rely on a theory of structural equivalence because the '382 patent is directed to the control of a single liquid crystal or several stacked cells for discrete use (*e.g.,* col.1:61-col. 2:3; col. 9:31-33), while Samsung's LCDs employ millions of liquid crystal cells and correspondingly complex control circuitry. Structural equivalence arguments will necessarily involve an analysis of the inner workings of the accused T-CON and DRAM chips. Apeldyn has presented no contrary evidence.

4

Samsung argues that there is a substantial overlap between the subject matter of the *Mosaid* litigation and the litigation at bar.

### III. ANALYSIS

#### A. Standard of Review

"Attorney conduct is governed by the ethical standards of the court before which the attorney appears." *Madukwe v. Del. State Univ.*, 552 F. Supp. 2d 452, 458 (D. Del. 2008) (citing *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984)). Pursuant to this court's Local Rule 83.6(d), attorneys admitted to practice before the court are governed by the Model Rules of Professional Conduct of the American Bar Association ("Model Rules").

Whenever an attorney's conduct relative to the Model Rules is called into question, the court must "examine the charge." *See Webb v. E.I. DuPont de Nemours & Co., Inc.*, 811 F. Supp. 158, 160 (D. Del. 1992). The court has the power to disqualify attorneys for violation of the Model Rules. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Nevertheless, motions to disqualify are generally disfavored. *E.g., Integrated Health Servs. of Cliff Manor, Inc. v. THCI, Co. LLC*, 327 B.R. 200, 204 (D. Del. 2005). "[T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Miller*, 624 F.2d at 1201. "[D]isqualification is never automatic," *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001), and the court has "wide discretion in framing its sanctions to be just and fair to all parties involved." *Miller*, 624 F.2d at 1201.

5

In carrying out its supervisory function, "a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992) (citations omitted). This is so because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice" is important. *Id.; see also Webb*, 811 F. Supp. at 160. "As the Third Circuit has explained, M.R.P.C. Rule 1.9 exists for the purpose of preventing 'even the potential that a former client's confidences and secrets may be used against him,' to maintain 'public confidence in the integrity of the bar,' and to fulfill a client's rightful expectation of 'the loyalty of his attorney in the matter for which he is retained.'" *Madukwe*, 552 F. Supp. 2d at 458 (citations omitted).

Model Rule 1.9(a) provides that:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

M.R.P.C., Rule 9.1(a). The Rule contains four requirements: (1) "the lawyer must have had an attorney-client relationship with the former client;" (2) "the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter;" (3) "the interests of the second client must be materially adverse to the interests of the former client;" and (4) "the former client must not have consented to the representation after consultation." *Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*, 632 F. Supp. 418, 422 (D. Del. 1986).[5]

---

[5]As noted, although *Nemours* was decided under an earlier version of Rule 1.9(a), there is no substantial difference between the former and current versions and,

## B. Discussion

There can be no dispute that the first, third and fourth elements of Rule 1.9(a) have been met. The only element over which there is disagreement is whether the subject matter at issue is "substantially related" to the subject matter at issue in the *Mosaid* litigation. Generally stated, a substantial relationship exists if the similarity between "the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Madukwe*, 552 F. Supp. 2d at 458 (citations omitted).

I conclude that there is a substantial relationship between the subject matter of the *Mosaid* litigation (and what Mr. Goodwyn learned therefrom) and the subject matter of the litigation at bar. Although Mr. Goodwyn has not recorded any billable time to this case, the appearance of impropriety in MLA's representation of a party adverse to Samsung is reflected in the fact that Mr. Goodwyn's representation of Samsung in the *Mosaid* litigation was not thoroughly vetted at the time he began his employment at MLA, the fact that Samsung was not alerted to his representation of Apeldyn at bar (unlike the procedure used in the *CEA* litigation), and the fact that MLA's conflict review was limited to what amounted to a word search (as opposed to a more thorough analysis of how MLA might prosecute and prove its infringement case against Samsung). Given Mr. Goodwyn's significant role representing Samsung in the *Mosaid* litigation, disqualification is warranted in the interests of fulfilling Samsung's "rightful

---

therefore, the analysis in *Nemours* remains instructive.

expectation of 'the loyalty of [its] attorney in the matter for which he [was] retained.'" *Id.*

## IV. CONCLUSION

For the reasons stated above, the motion for disqualification is granted. An appropriate order shall issue.