IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

APELDYN CORPORATION,          )
                              )
       Plaintiff,          )
                              )
v.                            ) Civ. No. 08-568-SLR
                              )
SAMSUNG ELECTRONICS CO., LTD., )
et al.,                       )
                              )
       Defendants.         )

Richard D. Kirk, Esquire, and Stephen B. Brauerman, Esquire, Bayard, P.A., counsel for plaintiff Apeldyn Corporation. Of counsel: Gaspare J. Bono, Esquire, Matthew T. Bailey, Esquire, and Shari L. Klevens, Esquire, McKenna Long & Aldrige LLP.

Richard L. Horwitz, Esquire, David E. Moore, Esquire, and D. Fon Muttamara-Walker, Esquire, Potter Anderson & Corroon LLP, counsel for defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. Of counsel: Neil P. Sirota, Esquire, Chang Sik Kim, Esquire, Michael J. Barta, Esquire, and William S. Foster, Jr., Esquire, Baker Botts, LLP.

**MEMORANDUM OPINION**

Dated: March 12, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

In its September 30, 2009 opinion, the court granted a motion, filed by Samsung Electronics Co., Ltd. and Samsung Electronics America (collectively, "Samsung"), to disqualify R. Tyler Goodwyn, IV ("Goodwyn") and McKenna Long & Aldridge L.L.P. ("MLA") as counsel for plaintiff Apeldyn Corporation ("Apeldyn"). Plaintiff has moved for reconsideration of this decision or, in the alternative, certification under 28 U.S.C. § 1292(b) or for entry of judgment pursuant to Fed. R. Civ. P. 54(b). An oral argument was conducted on December 18, 2009. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338. For the reasons that follow, the motion (D.I. 159) shall be denied.

## II. BACKGROUND

The court's prior opinion (D.I. 155) details the factual backdrop of this dispute; for brevity's sake, this opinion will recount only those portions necessary to resolve plaintiffs' motion for reconsideration. Mr. Goodwyn joined MLA in April 2006. Prior to joining MLA, he was a partner at Morgan Lewis & Bockius ("Morgan Lewis"). In 2001, Morgan Lewis commenced representation of Samsung in a lawsuit captioned *Mosaid Technologies, Inc. v. Samsung Electronics Co., Ltd.*, Civ. No. 01-4340 (D.N.J.) ("the *Mosaid* litigation"). The Mosaid litigation involved nine patents directed to specific technologies in DRAM[1] chips, to wit, word line driver and voltage pump functionalities. Mr. Goodwyn was a member of the Morgan Lewis litigation team, billing more than 4,000 hours to the matter between September 13, 2001 and January 31, 2005. (D.I.

---

[1] "Dynamic random access memory."

154 at 51) Over the course of his extensive involvement in this matter, Mr. Goodwyn analyzed the patents at issue as well as the related Samsung products, contributing theories regarding claim construction and invalidity. (*Id.* at 43-44, 149) He was also "exposed to factors that Samsung considers important in settlement." (*Id.* at 44)

MLA began talking to Mr. Goodwyn about employment in April 2005, within months of the resolution of the *Mosaid* litigation. At that time, MLA was actively pursuing a case against Samsung ("the CEA litigation"), which litigation related to liquid crystal display ("LCD") technologies. MLA determined that "there was no conflict between the work that Mr. Goodwyn had done previously for Samsung and [MLA's] continued and current representation of CEA in the LCD case." (*Id.* at 86) In April 2006, when Mr. Goodwyn was hired, MLA imposed no ethical screen related to the CEA litigation or otherwise. (*Id.* at 141-43)

The September 2008 complaint naming Samsung and giving rise to the instant litigation identifies Mr. Goodwyn as counsel for plaintiff Apeldyn. (D.I. 1 at 16) Samsung's accused overdrive feature is implemented by two semiconductor components: the timing controller integrated circuit (T-CON) and DRAM. (*Id.* at 29-30) Prior to his involvement with the case at bar, Mr. Goodwyn raised questions about the propriety of the assignment in light of his work in the *Mosaid* litigation. The top managers of MLA's IP litigation practice compared the technologies of the *Mosaid* patents (focused on the design and architecture of a DRAM chip) and the '382 patent at issue (focused on liquid crystal materials and speeding up their response times through an overdrive functionality). They concluded that the patents were "not in any way

related to each other." (*Id.* at 93) Consequently, it was decided that there was no reason to exclude Mr. Goodwyn from working on the case at bar. (*Id.* at 94, 162)

In January 2009, Samsung raised a concern about Mr. Goodwyn's representation of Apeldyn in the instant litigation. While Mr. Goodwyn had not yet expended time on the case (due to the press of other work), his name appeared on the complaint and other papers and he was a listed recipient of documents until February 10, 2009. (*Id.* at 124-29) Samsung subsequently moved to disqualify Mr. Goodwyn and MLA. In its memorandum opinion dated September 30, 2009, the court determined that Mr. Goodwyn's involvement in both the *Mosaid* litigation and the action at bar presented a conflict of interest and that MLA's failure to affirmatively segregate Mr. Goodwyn from the action at bar resulted in an unavoidable imputed conflict; accordingly, the court granted Samsung's motion. (D.I. 155 at 7)

## III. STANDARD OF REVIEW

### A. Reconsideration

A motion for reconsideration is appropriately filed only if there is: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See generally Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Plaintiff alleges multiple legal and factual errors.

### B. Disqualification

Model Rule 1.9(a) provides that:

3

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

M.R.P.C., Rule 1.9(a). Attorney conduct will fall within the ambit of the Rule if, inter alia, "the present client's matter [is] the same as the matter the lawyer worked on for the first client, or [is] a 'substantially related' matter . . . ."[2] *Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*, 632 F. Supp. 418, 422 (D. Del. 1986). A "substantial relationship" exists if the similarity between "the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Madukwe v. Del. State Univ.*, 552 F. Supp. 2d 452, 458 (D. Del. 2008) (citations omitted).

### C. Certification under 28 U.S.C. § 1292(b)

Pursuant to 28 U.S.C. § 1292(b), an interlocutory appeal may be had where the proposed appeal concerns "(1) a controlling question of law[3] (2) as to which there is substantial ground for difference of opinion and (3) . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b).

### D. Entry of Judgment Pursuant to Fed. R. Civ. P. 54(b)

---

[2]The other requirements, undisputed here, are (1) "the lawyer must have had an attorney-client relationship with the former client;" (2)"the interests of the second client must be materially adverse to the interests of the former client;" and (3) "the former client must not have consented to the representation after consultation." *Id.*

[3]A "controlling question of law" encompasses "at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

4

> Rule 54(b) states, in pertinent part:
>
> When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed. R. Civ. P. 54(b). Although the decision whether to certify as a final judgment rests in the discretion of the trial court, see *Sears. Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956), the Supreme Court in *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980), suggested two relevant factors a trial court should consider in deciding whether there is just reason for delay: (1) judicial administrative interests; and (2) the equities of the parties involved. *See id.* at 8. Consideration of judicial administration counsels against piecemeal review that would force appellate courts to decide the same issues on subsequent appeal. *See id.*

## IV. DISCUSSION

### A. Reconsideration

#### 1. Appearance of impropriety

The primary thrust of Apeldyn's motion for reconsideration is that the court erred by exclusively relying upon an "appearance of impropriety" standard in disqualifying Mr. Goodwyn and MLA. This characterization is premised upon several flaws. First, the court remains unconvinced that Apeldyn's assertion, taken as true, constitutes legal error. In support of its position, Apeldyn cites to a portion of *Nemours* dealing with **imputed conflicts** under Model Rule 1.10 which states that "the Third Circuit has followed other circuits in beginning to discredit Canon 9 as an exclusive basis for

5

disqualification, reflecting a more liberal treatment of this question."[4]  632 F. Supp. 418, 423 (D. Del. 1986) (citing *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157 (3d Cir. 1984)).[5]

While characterizing as problematic the per se disqualification of a firm based solely upon an appearance of impropriety, the *Nemours* court held that "an appropriate screening mechanism, in the proper circumstances, may rebut the presumption of shared confidences that arises under Rule 1.10 in cases where the disqualified attorney's conflict of interest originated in private practice." *Id.* at 428. Not only did MLA fail to institute such a screening measure; it affirmatively involved Mr. Goodwyn with this matter. Under these circumstances, the disqualification of Mr. Goodwyn and MLA comports with the settled case law of the Third Circuit, which holds that "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important, a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *Madukwe*, 552 F. Supp. 2d at 457 (quoting *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992)); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 500 (D. Del. 2006) (quoting

---

[4]Canon 9 of the Delaware Code of Professional Responsibility (repealed) states: "A lawyer should avoid even the appearance of professional impropriety."

[5]In *Corn Derivatives*, the Third Circuit noted that a "balancing test" **may be** appropriate to determine disqualification in some cases that have "countervailing considerations." *See id.* at 162. However, the Third Circuit went on to explain that "M.R.P.C. Rule 1.9 exists for the purpose of preventing '**even the potential** that a former client's confidences and secrets may be used against him,' to maintain 'public confidence in the integrity of the bar,' and to fulfill a client's rightful expectation of 'the loyalty of his attorney in the matter for which he is retained.'" *Madukwe*, 552 F. Supp. 2d at 458 (quoting *Corn Derivatives*, 748 F.2d at 162 (emphasis added)).

6

*IBM v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) for the same). Put another way, "any doubt as to the propriety of the representation should be resolved in favor of disqualification." *Thorner v. Sony Computer Entertainment America, Inc.* 2009 WL 4041624, at *6 (D.N.J. 2009) (quoting *IBM*, 579 F.2d at 283).

Notwithstanding any marginal ambiguity that *Nemours* may inject into the standard for disqualification, the court's analysis does not, as Apeldyn alleges, begin and end with the apparent impropriety of Mr. Goodwyn's involvement in the instant litigation. The basis for the decision to disqualify Mr. Goodwyn and MLA rests also upon the court's determination that a substantial relationship exists between the subject matter of the *Mosaid* litigation and the matter at bar. Indeed, Apeldyn's recognition of the critical role played by this determination is implicit in its next argument that the court erred in finding a substantial relationship between the two matters.

### 2. Substantial relationship

Apeldyn next contends that "[t]he court committed an error of law in stating that 'a proper means-plus-function infringement analysis will require that the structure of Samsung's DRAMs will be at issue' . . . ." (D.I. 160 at 13) A means-plus-function analysis begins with the identification of a specific claim limitation written in accordance with 35 U.S.C. § 112, ¶ 6. This limitation "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. Accordingly, construction of a means-plus-function limitation requires the identification of the function of the limitation, followed by a determination of the structure disclosed in the patent that performs the claim limitation's

function. *See id.*

Establishing the literal infringement of a means-plus-function limitation "requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999). A patentee may show structural equivalence[6] "if the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification." *Id.* The *Odetics* Court differentiated between the "similar analysis" of equivalents under the doctrine of equivalents and 35 U.S.C. § 112, ¶ 6, noting that a component by component analysis is not required to establish structural equivalence in the latter. *Id.* Indeed, such an analysis would be improper to the extent that

> [t]he individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function. . . . The appropriate degree of specificity is provided by the statute itself; the relevant structure is that which "corresponds" to the claimed function. Further deconstruction or parsing is incorrect.

*Id.* at 1268 (internal citations omitted). Conversely, the relevant structure does not include "structure 'unrelated to the recited function' disclosed in the patent . . . ." *Id.* (citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998)).

The scope of this analysis is greatly broadened by Apeldyn's generic assertion of

---

[6]Samsung theorizes that Apeldyn will need to show structural equivalency because the '382 patent is directed to a single cell or a column of fused cells, while Samsung's products deals with millions of these cells. (D.I. 252 at 26)

8

the entire '382 patent, as well as its failure to proffer any infringement contentions. Nevertheless, in an effort to show that the structure of DRAM will not be at issue, Apeldyn isolates the "drive means" of claim 1 which includes a "first control means for changing said retardance from a first retardance to a second retardance . . . ." ('382 patent at 9:63-67) According to Apeldyn, the drive means corresponds to item 13 in Figure 2, which is the drive signal source. A block diagram of item 13 is presented in Figure 7. The '382 patent states that the drive signal source "comprises an ac signal source . . . a waveshape control unit and an amplitude modulator." (*Id.* at 6:66 - 7:2) The waveshape control unit may include "a **circuit** for determining what the target retardances should be . . . ." (*Id.* at 7:18-20) (emphasis added) The parties do not dispute that the '382 patent makes no explicit reference to memory.[7] And while it concedes that DRAM may be used as memory in the overdrive technology of the '382 patent, Apeldyn argues that "it does not matter what memory is used . . . ." (D.I. 160 at 14)

Samsung's DRAM is not "unrelated to the recited function." *Odetics*, 185 F.3d at 1267. The DRAM is a required[8] element for the accused overdrive functionality.

---

[7] However, Samsung points to a declaration made by inventor Scott H. Rumbaugh during reexamination of the '382 patent in which he stated that RAM was a definite requirement. (12/18/09 Tr. at 24)

[8] Apeldyn argues that Samsung's overdrive function "could certainly operate without DRAM and instead use other types of memory or data storage." (D.I. 160 at 16) While Samsung could very well use other types of storage to accomplish its overdrive function, it has chosen to use DRAM. Hypothesizing about how Samsung **could** have alternatively made the alleged infringing products does not seem particularly helpful in (or even relevant to) negating the fact that Samsung's overdrive function, in reality, depends upon DRAM.

Apeldyn vigorously disputes that, pursuant to its burden to demonstrate literal infringement, it will necessarily have to examine the structure of Samsung's DRAM in a structural equivalency analysis. While Apeldyn generally argues what is relevant to a hypothetical structural equivalency analysis, it has not, in spite of defendants' prompting, supported this position with an infringement contention demonstrating that a structural analysis of DRAM is unnecessary to carrying its burden.

Insofar as DRAM is not "unrelated to the recited function," it cannot be, as Apeldyn argues, merely a structure-less "black box." (D.I. 160 at 14) Indeed, without delving into some degree of structure, the court cannot fathom how Apeldyn will prove, or how Samsung will rebut, an allegation that the DRAM memory component meets the test of structural equivalency necessary to prove literal infringement. Accordingly, a "substantial relationship" arises from the "common-sense inference" that Apeldyn will necessarily be using specimens and documentation that are of the same type, if not the same, as those collected and reviewed by Mr. Goodwyn in the *Mosaid* litigation. *See Madukwe*, 552 F. Supp. 2d at 458.

### 3. Miscellaneous alleged factual errors

Apeldyn draws the court's attention to its finding that MLA "cleared with Samsung" the conflict for the CEA case. The testimony of Matthew T. Bailey ("Bailey"), an attorney at MLA, appears on its face[9] to suggest that Samsung was consulted;

---

[9]Question: "The firm imposed no ethical screen [upon Mr. Goodwyn with respect to the CEA litigation]?

"Mr. Bailey: "No. We cleared the conflict with Samsung."

(D.I. 154 at 141) Apeldyn states that Mr. Bailey's testimony is properly interpreted to

however, both Samsung and Apeldyn explain otherwise. While reaching out to Samsung in one instance to clear a questionable conflict - and not in another - might better demonstrate both Mr. Goodwyn's and MLA's disregard for Samsung's confidences, the court's error here does not affect the underlying analysis. Neither does the court's error in finding that "[w]ithin months of being hired, Mr. Goodwyn was asked to work on the case at bar."[10] (D.I. 155 at 3) While both of these errors initially bolstered the court's finding of an appearance of impropriety, their relative weight pales in significance to the fact that, out of the numerous MLA attorneys qualified[11] to represent Apeldyn in this litigation, MLA chose to involve Mr. Goodwyn, an attorney with a recent history of representing Samsung.

Apeldyn's remaining allegations of factual error are without merit. Among these alleged errors, Apeldyn argues that the court, on several occasions, incorrectly characterized the conflicts-vetting procedures of MLA. In the first instance, Apeldyn takes exception with the court's finding that MLA's conflict review regarding the action at bar "was limited to what amounted to a word search (as opposed to a more thorough analysis of how MLA might prosecute and prove its infringement case against Samsung)." (D.I. 155 at 7) However, none of the testimony cited by Apeldyn vitiates support for this finding; indeed, if a patent from a prior case did not explicitly mention

---

mean that MLA was satisfied with its internal conflicts analysis.

[10]MLA hired Mr. Goodwyn in April 2006, but Mr. Goodwyn was not assigned to the case at bar until September 2008. (D.I. 154 at 162-63)

[11]According to its NALP forms, MLA has 433 attorneys in 10 offices. Out of the 28 attorneys that MLA lists in its Global Patent Litigation group, at least 13 have backgrounds in the electrical arts.

the subject matter at issue in the subsequent case, MLA did not identify a conflict. (D.I. 154 at 83-84, 92-93, 163-65) As previously mentioned, the record is devoid of any analysis that MLA might use to demonstrate the infringement of the '382 patent by the accused Samsung products. Nor did MLA seemingly explore any defensive theories that Samsung might assert within this context. In light of these deficiencies,[12] it follows, *a fortiori*, that "Mr. Goodwyn's representation of Samsung in the Mosaid litigation was not thoroughly vetted at the time he began his employment at MLA." (D.I. 155 at 7)

Next, Apeldyn argues that the court erred in finding that Mr. Goodwyn received "documents" until February 10, 2009. The genesis of this allegation is Apeldyn's misconception that the court was referring to Samsung's documents; however, the record plainly shows that Mr. Goodwyn received emails and orders related to the case until February 10, 2009. (D.I. 154 at 98-99, 114-15) The final alleged factual error concerns the court's finding that ". . . Apeldyn has pursued discovery (e.g. document request 11) regarding the DRAM component circuitry of Samsung's accused products." (D.I. 155 at 4) This discovery request concerns all documents describing, among other things, **the circuitry** and the software used to implement the overdrive functionality. Insofar as DRAM is a circuit that may play a role in the overdrive functionality of Samsung's accused products, the record substantially supports the court's finding.

### B. Certification under 28 U.S.C. § 1292(b)

---

[12] The court does not doubt the seriousness with which MLA approaches matters of ethics and professional responsibility. Nor did the court easily (or lightly) make the determination that Mr. Goodwyn's involvement in the matter at bar presents a substantial relationship warranting his, as well as MLA's, disqualification. The closeness of this question is inherent in the substantial briefing and multiple hearings required for its resolution.

Because no basis for reconsideration presents itself, the court considers Apeldyn's alternative request to certify the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). While disqualification orders may properly be the subject matter of an interlocutory appeal, see *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (U.S. 1985), Apeldyn has failed to establish any of the elements required for certification.

First, resolution of the disqualification order will not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). While it is not necessary that the interlocutory appeal have the potential to resolve the entire case, at least one of plaintiff's substantive claims should stand to be affected. See *In re Hollis*, 2010 WL 336132, at *2 (D.N.J. Jan. 22, 2010). A reversal here (allowing MLA to proceed as counsel for Apeldyn) would leave the underlying substantive claims between the parties undisturbed.

Second, Apeldyn has not identified a "controlling question of law" as to which "there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). With respect to this prong, Apeldyn submits that one controlling question is whether counsel may be disqualified using the "appearance of impropriety" standard. Insofar as the court did not rest its disqualification decision exclusively upon an appearance of impropriety, this argument does not support certification. Apeldyn argues that an additional controlling question of law presents itself in the level of specificity required for the conflict inquiry in a patent case. Nor does this question entail a substantial ground for difference of opinion. Irrespective of the subject matter of this case, the Federal Circuit has explained that matters of disqualification are decided under the regional circuit law of the district where the case is pending. See *Panduit Corp. v. All States*

13

*Plastic Mfg. Co.*, 744 F.2d 1564, 1576 (Fed. Cir. 1984) (holding that disqualification motions are procedural matters "that are not unique to patent issues . . . ."). Consequently, as discussed *supra*, the appropriate level of specificity is governed by the Third Circuit's understanding as to when two matters are "substantially related."

### C. Entry of Judgment Pursuant to Fed. R. Civ. P. 54(b)

Rule 54(b) allows a district court to direct the entry of final judgment in those cases in which there is "more than one claim for relief" or "when multiple parties are involved." Fed. R. Civ. P. 54(b). This Rule does not displace the requirement that an appeal will only lie from a "final decision" of the district court. 28 U.S.C. § 1291. According to the Supreme Court,

> [a] district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision on a **cognizable claim for relief**, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)) (emphasis added). The Third Circuit has interpreted a "claim for relief" under Rule 54(b) as a legal right seeking one or more remedies. *See Sussex Drug Products v. Kanasco, Ltd.*, 920 F.2d 1150, 1154 (3d Cir. 1990). The only "claim for relief" presently before the court is Apeldyn's allegation that Samsung's accused products infringe the '382 patent. The resolution of a collateral issue, such as the disqualification of counsel, cannot properly be considered a "final judgment" with respect to an assertion of patent infringement. *See Richardson-Merrell*, 472 U.S. at 430 ("An order disqualifying counsel in a civil case is not a final judgment on the merits of the litigation.").

14

## V. CONCLUSION

For the reasons discussed above, plaintiff's motion for reconsideration or, in the alternative, certification under 28 U.S.C. § 1292(b) or for entry of judgment pursuant to Fed. R. Civ. P. 54(b), is denied. An appropriate order shall issue.