

222 Delaware Avenue • Suite 900

P.O. Box 25130 • Wilmington, DE 19899

Zip Code For Deliveries 19801

Writer's Direct Access:

(302) 429-4232

Email: sbrauerman@bayardlaw.com

May 4, 2011

**FILED AND SERVED ELECTRONICALLY, ORIGINAL BY HAND**

The Honorable Vincent J. Poppiti

Fox Rothschild, LLP

919 Market Street, Suite 1300

Wilmington, DE  19899-2323

> **Re:** ***Apeldyn Corp. v. AU Optronics Corp.*, C.A. No. 08-568 (SLR), D.M. No. 11**

Dear Special Master Poppiti:

AUO's April 29, 2011 response makes plain that Dr. Yeh's April 15, 2011 additional expert report was neither justified nor appropriate.  Indeed, AUO's assertions that it somehow lacked awareness of the Wu'1990, Saul'468, Miyagi'294, Nonomura'796, and Ueda'889 references are belied by the undisputed facts, which show that AUO knew or should have known of these five references well in advance of the deadline for filing opening expert reports.  AUO's position that it should nevertheless be permitted to serve an additional report as to these references is without merit and renders meaningless both the Scheduling Order and Rule 26(e).

AUO does not dispute that the Wu'1990, Saul'468, Miyagi'294, and Nonomura'796 references were all disclosed to the PTO during reexamination and that Apeldyn produced to AUO reexamination documents identifying those references on July 15, 2010.  While AUO asserts that this production should not constitute notice based solely on the number of references cited, that assertion ignores the fact that CMO's expert was apparently able to pick out these four references and address them in his opening report.  AUO does not offer—nor does it have—any reasonable excuse for its failure to do so as well.  Significantly, Apeldyn understands that it was AUO itself that filed the reexamination proceeding and thus was directly on notice of all prior art filed therein.

AUO also does not dispute—indeed, AUO entirely ignores—that it again received notice of the above four references, as well as Ueda'889, at least as early as January 28, 2011, when they were cited by CMO in its supplemental interrogatory responses, which included CMO's invalidity contentions based on those five references and others.  **Thus, at the very latest, AUO had notice of all five references as of January 28, months before opening expert reports were due.**  To the extent AUO asserts that Dr. Smith's report should be seen as the first time AUO was made aware of the references because that report was (allegedly) the first time the





relevance of those references was explained to AUO, such an argument fails under its own weight.  Notice is determined by when AUO knew or should have known of the references, **not** when AUO received invalidity arguments as to those references.  Further, and in any event, CMO's invalidity contentions did just that: outline invalidity arguments as to all five references. (Ex. 9 (highlighting the five references throughout the invalidity contention chart in CMO's Ex. C).)  AUO cannot have it both ways and rely on CMO's expert report as providing notice yet ignore that CMO's invalidity contentions, served months earlier, provided the very same notice. Here again, AUO does not offer—nor does it have—any reasonable excuse for its failure to ensure that Dr. Yeh addressed these five references in his opening report.

Similarly without merit is AUO's assertion that Dr. Yeh's April 15 additional report and any subsequent additional reports incorporating arguments based on the five references are somehow permissible in light of Judge Robinson's April 21, 2011 ruling.  Nothing in the Court's ruling permits additional arguments based on references that AUO was aware of but did not include in its opening expert report.[1]  (Ex. 10.)  Accordingly, any additional reports asserting such grounds remain untimely and unjustified.

Dr. Yeh's April 15 additional report was neither timely under Rule 26 nor justified under Rule 37.[2]  Further, contrary to AUO's assertion, Apeldyn is prejudiced by AUO's conduct.  The prejudice lies not only in Apeldyn's having to expend resources to respond to an untimely report, but also in permitting AUO to attack the patent-in-suit on grounds it waived due not to any excuse or mistake, but instead to its own lack of diligence.  Moreover, responding to the additional report is not simply a "cut and paste job," as AUO suggests, but instead will require analyzing and responding to AUO's arguments.  In addition, Apeldyn will be further prejudiced in its ability to prepare for expert discovery because, unlike AUO, Apeldyn will still be responding to an untimely expert report instead of being able to move on to preparing for depositions.

AUO's position, in effect, is that it can serve an additional expert report any time it desires based on information it knew or should have known prior to its opening expert report. Such a position, however, is untenable, as it renders meaningless both the Scheduling Order and Rule 26(e) and leaves no end to the discovery process.  Accordingly, Dr. Yeh's additional report

---

[1]  Apeldyn further notes that AUO mischaracterizes the eight claims added in reexamination and Judge Robinson's April 21 ruling related thereto.  AUO and CMO have known of the eight added claims since December 2009, and received copies of all reexamination documents.  AUO and CMO thus had notice of all the claims and had full opportunity for discovery prior to its depositions of Apeldyn, which concluded on April 14, 2011.  Nevertheless, on April 18, 2011 CMO filed a request with the Court regarding the status of these claims, to which Apeldyn promptly responded. (Ex. 10.)  As AUO did not file such a request or join in CMO's request, AUO plainly understood that the claims are and had been part of the case.  Based on the facts, Judge Robinson "[was] satisfied that <u>the parties **have been** operating with knowledge of these 'new' claims</u> and can adjust the schedule to accommodate, if necessary." (Ex. 10 (emphasis added).)  Thus, the claims in fact have been part of this case for some time.

[2]  Apeldyn did in fact provide the actual text of Rule 37(c) at the top of page two in its April 22 letter to Your Honor.



The Honorable Vincent J. Poppiti
Page 3

should be stricken, AUO should be precluded from relying on any information therein, and Apeldyn should be awarded its costs, including attorneys' fees, in bringing the instant motion.[3]

Respectfully submitted,

/s/ Stephen B. Brauerman

Stephen B. Brauerman (sb4952)

cc:    All counsel on attached service list

---

[3] If Dr. Yeh's April 15 additional report is not struck, at the very least AUO should bear Apeldyn's costs, including attorneys' fees, in responding to the untimely report.

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APELDYN CORPORATION,                          )
                                              )
                Plaintiff,                    )
                                              )
        v.                                    )        C.A. No. 08-568 (SLR)
                                              )
CHI MEI OPTOELECTRONICS                       )
CORPORATION, et al.,                          )
                                              )
                Defendants.                   )

**CHI MEI OPTOELECTRONICS CORPORATION'S AND
CHI MEI OPTOELECTRONICS USA, INC'S
THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO APELDYN
CORPORATION'S FIRST SET OF INTERROGATORIES (Nos. 1, 3–5)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendants Chi Mei

Optoelectronics Corporation ("CMO") and Chi Mei Optoelectronics USA, Inc. ("CMO USA"),

by their counsel, respond as follows to plaintiff's First Set of Interrogatories, served by Apeldyn

Corporation ("Apeldyn").

**GENERAL STATEMENT AND OBJECTIONS**

1.      The following responses, while based on a diligent investigation by CMO

and CMO USA and their counsel, are necessarily supported only by those facts and writings

presently and specifically known and readily available.  Discovery in this matter is at an early

stage and is ongoing.  As this action proceeds, further information may be discovered, or its

significance better understood, and CMO and CMO USA reserve the right to change, amend or

supplement these responses by providing such pertinent information.  CMO and CMO USA

therefore make these responses without prejudice to their right to produce at any stage of these

proceedings, including at trial, evidence of any facts or information that CMO and CMO USA

may later recall or discover.  CMO and CMO USA further reserve the right to change, amend or

28.     CMO and CMO USA object to Apeldyn's "Instructions" as unduly burdensome, harassing, oppressive, overbroad, vague, and ambiguous.

29.     Subject to and without waiving these General Objections, CMO and CMO USA respond and specifically object to Apeldyn's interrogatories as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

For each claim of the '382 patent that you allege is invalid, identify all bases (e.g., obviousness, anticipation, etc.) with underlying facts for your allegation, including, for example, all prior art references with a detailed identification on an element by element basis of all disclosures within each claimed prior art reference that you assert disclose elements of the '382 patent.

### Response to Interrogatory No. 1

In addition to the foregoing General Objections, CMO and CMO USA specifically object to this Interrogatory as overly broad and unduly burdensome to the extent it calls for CMO to identify "*all* bases." CMO and CMO USA also specifically object to this Interrogatory as prematurely seeking expert discovery inconsistent with the Scheduling Order. CMO and CMO USA also specifically object to this Interrogatory on the grounds that Apeldyn refuses to produce relevant discovery in contravention of Federal Rule of Civil Procedure 26(b)(2)(B). CMO and CMO USA also specifically object to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege.

Subject to and without waiving the foregoing objections, CMO and CMO USA respond as follows: The asserted claims are anticipated or rendered obvious by a number of prior art references, either individually, or in combination. By way of example, claims 1, 2, 5, 10

and 20 are anticipated, or in the alternative rendered obvious by JP 3-174186.  Claim 1, 5, 10 and 20 are anticipated, or in the alternative rendered obvious by U.S. Pat. No. 4,591,886.

CMO and CMO USA further respond that, pursuant to Federal Rule of Civil Procedure 33(d), documents containing information that may be responsive to this Interrogatory were produced by CMO and CMO USA at CMO-APE00000001–CMO-APE00005917.

CMO's and CMO USA's investigation is continuing, and CMO and CMO USA reserve the right to supplement this response.

**Supplemental Response to Interrogatory No. 1**

Subject to and without waiving the foregoing specific and General Objections, CMO hereby incorporates by reference the chart attached hereto as Exhibit C, CMO's Invalidity Contentions Chart.   Representative portions of the identified references are cited within Exhibit A in an effort to focus invalidity issues.  These citations are not necessarily the only portions of the reference that disclose specific elements.  The references cited may disclose elements of the asserted claims either explicitly and/or inherently, may be relied upon to show the state of the art during the relevant time period, and may be relied upon to show a motivation to combine references.  One of ordinary skill in the art may generally read a prior art reference as a whole and in the context of other publications as well as their general scientific knowledge or experience.   As such, CMO may rely on both cited and uncited portions of the prior art references, other publications, and expert testimony to provide context, and as an aid to understanding and interpreting any portion of the prior art that is cited.  CMO may also rely on uncited portions of the prior art references, other disclosed publications, and/or the testimony of experts to establish (i) that a prior art reference anticipates the claims, (ii) that a person of ordinary skill in the art at the time of the invention would have been motivated to modify or

9

combine certain of the cited references so as to render the claims obvious and/or (iii) that a person of ordinary skill in the art at the time of the invention would have understood the claims to be obvious in view of the prior art regardless of any teaching, suggestion or motivation to combine within the references themselves.  To the extent a citation in an invalidity claim chart refers to a particular figure in a prior art reference, that citation should be understood to encompass the caption and description of the figure and any text relating to the figure and/or subject matter of the figure in addition to the figure itself.  Similarly, where a citation is to a portion of text that refers to a figure, the citation should be understood to include the figure as well.

CMO's investigation regarding the validity of the '382 patent, including invalidity under 35 U.S.C. § 102, 35 U.S.C. § 103, and 35 U.S.C. § 112, is ongoing.  In addition, as a result of Apeldyn's failure to produce relevant witnesses for deposition, CMO is still in the process of obtaining necessary information, including for example, information regarding invalidity based on the public use and on-sale bar (35 U.S.C. § 102(b)) and the failure to comply with the disclosure requirements of 35 U.S.C. § 112.  Moreover, Apeldyn has not yet provided adequate infringement contentions from which to comprehend Apeldyn's proposed interpretations of the claims or the alleged scope of each asserted claim, and, accordingly, how Apeldyn's purported constructions may render the claims indefinite, nonenabled and/or lacking written description support.  Consequently, Exhibit C is based, at least in part, on alternative possible constructions with the intent of providing a disclosure as full as possible in advance of claim construction discovery.  CMO objects to any attempt to imply a proposed claim construction from the identification of prior art, or an apparent acceptance of Apeldyn's alleged claim scope.  CMO reserves the right to modify, amend, or supplement these disclosures as CMO's investigation and

10

that each reference cited in Exhibit C may be combined with any other cited reference or references to render one or more claims of the '382 patent obvious. The fact that certain references are suggested to invalidate a claim on the basis of an obviousness combination is not an admission that the individual references do not anticipate a claim, and any obviousness combination is in the alternative to CMO's asserted anticipation arguments.

Within each group of references identified, motivation exists to combine any subset of references within that group. With respect to combinations of references, the motivation to combine derives from the nature of the problem being solved, the prior art references themselves, as well as from the knowledge and common sense of one skilled in the art. The motivation to combine references includes the common objectives and subject matter of the identified references. These references identify and address the same technical issues and suggest very similar solutions to those issues. Moreover, these references may cross-reference and discuss one-another, further illustrating the close technical relationship among this group of references. Regardless of any teaching, suggestion or motivation to combine within the references themselves, a person of ordinary skill in the art at the time of the invention would have understood the asserted claims to be obvious in view of a common sense application of the prior art. Additionally, CMO contends that it would be obvious to try a modification or combination of any cited reference or references. By way of example, to the extent the asserted claims of the '389 patent preclude twisted nematic liquid crystal material, then it would be obvious use other liquid crystal material. If and to the extent that Apeldyn challenges the correspondence of any of these references with respect to particular elements of the respective identified claims, CMO reserves the right to supplement this response to identify with additional particularity motivation to combine particular references with one another.

12

The obviousness combinations of references provided in Exhibit C are merely exemplary and are not intended to be exhaustive.  CMO may rely upon a subset of references in a group or all of the references within the group depending upon the Court's claim construction and further investigation.   Additional obviousness combinations of these or other similar references are possible, and CMO reserves the right to use any such combination(s) in this litigation.   Any of the references listed may be combined to render obvious (and therefore invalid) each of Apeldyn's asserted claims from the respective patents.

To the extent any portion of this response reflects construction of claim limitations that are consistent with Apeldyn's infringement position or based upon the apparent breadth of Apeldyn's infringement positions, this response is not intended as an admission of agreement with such position, and CMO expressly reserves its right to contest such constructions.  CMO contends that certain claim limitations do not satisfy the requirements of 35 U.S.C. § 112.  For example, the claim limitations "a first eigen-axis thereof relative to a second eigen-axis thereof" does not comply with written description and/or enablement requirements.  Additionally, the claim limitation "for a period of time" does not comply with the written description, enablement and/or definiteness requirements.  CMO also contends that the asserted claims of the '389 patent do not comply with the best mode requirement.  Nothing in this response is intended as an admission that any of the claims of the '382 patent satisfy the requirements of 35 U.S.C. § 112.

CMO and CMO USA further incorporate by reference the discovery provided by the other parties to this action, including invalidity contentions or supporting evidence provided by AUO and/or Sharp.

CMO's and CMO USA's investigation is continuing, and CMO and CMO USA reserve the right to supplement this response.

**Interrogatory No. 3**

Identify each CMO Product that includes overdrive, fast response time, and/or response time compensation ("the technology"), and for each such CMO Product, identify all Specifications or other documents that illustrate, describe, or set forth the design, operation, functionality, performance, testing, parameters, or look-up table values of the technology.

**Response to Interrogatory No. 3**

In addition to the foregoing General Objections, CMO and CMO USA specifically object to this Interrogatory as overly broad and unduly burdensome to the extent it calls for CMO to identify "*all* Specifications or other documents" for "*each* CMO Product." CMO and CMO USA also specifically object to this Interrogatory to the extent it seeks information that is not relevant nor reasonably likely to lead to the discovery of admissible evidence. CMO and CMO USA also specifically object to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege. CMO and CMO USA also specifically object to this Interrogatory to the extent it seeks highly sensitive competitive information that is confidential to CMO and/or third parties. CMO will produce responsive information of this type only subject to an appropriate protective order, and only after any impacted third parties have consented to the production of that information.

Subject to and without waiving the foregoing objections, CMO and CMO USA respond as follows: Pursuant to Federal Rule of Civil Procedure 33(d), documents containing information that may be responsive to this Interrogatory were produced by CMO and CMO USA at CMO-APE00006264–CMO-APE00015079; CMO-APE00015124–CMO-APE00015151; CMO-APE00017553–CMO-APE00017763.

14

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
jtigan@mnat.com
*Attorneys for Defendants*
 *Chi Mei Optoelectronics Corporation and*
 *Chi Mei Optoelectronics USA, Inc.*

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Thomas C. Werner
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067-4276
(310) 277-1010

January 28, 2011
4063153

20

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that copies of the foregoing were caused to

be served on January 28, 2011, upon the following in the manner indicated:

| | |
|---|---|
| Richard D. Kirk, Esquire<br>BAYARD, P.A.<br>222 Delaware Avenue<br>Suite 900<br>Wilmington, DE 19801<br>*Counsel for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Gaspare J. Bono, Esquire<br>Song K. Jung, Esquire<br>R. Tyler Goodwyn, IV, Esquire<br>Lora A. Brzezynski, Esquire<br>MCKENNA LONG & ALDRIDGE LLP<br>1900 K. Street, NW<br>Washington, DC 20006<br>*Counsel for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Gerard M. O'Rourke, Esquire<br>RATNER PRESTIA<br>1007 Orange Street<br>Suite 1100<br>Wilmington, DE 19801-1231<br>*Counsel for AU Optronics Corporation and*<br>*AU Optronics Corporation America* | *VIA ELECTRONIC MAIL* |
| Vincent K. Yip, Esquire<br>Peter J. Wied, Esquire<br>Terry D. Garnett, Esquire<br>Benjamin Davis, Esquire<br>Daniel Prince, Esquire<br>Jay Chiu, Esquire<br>PAUL HASTINGS JANOFSKY & WALKER LLP<br>515 South Flower Street, Twenty-Fifth Floor<br>Los Angeles, CA 90071<br>*Counsel for AU Optronics Corporation and*<br>*AU Optronics Corporation America* | *VIA ELECTRONIC MAIL* |

Frederick L. Cottrell, III, Esquire                                          *VIA ELECTRONIC MAIL*
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Counsel for Sharp Corporation and Sharp*
*Electronics Corporation*


Josh A. Krevitt, Esquire                                                      *VIA ELECTRONIC MAIL*
Benjamin Hershkowitz, Esquire
Richard M. Koehl, Esquire
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
*Counsel for Sharp Corporation and Sharp*
*Electronics Corporation*



                                                    */s/ Rodger D. Smith II*
                                             _____

                                             Rodger D. Smith II (#3778)



                                                    2

# Exhibit C to CMO's Interrogatory Responses

## CMO's Invalidity Contentions for U.S. Patent No. 5,347,382
## Claims 1-6, 10, 11, 20

| | LIST OF PRIOR ART REFERENCES |
|---|---|
| 1 | "Bos I":  U.S. Patent No. 4,582,396 issued on April 15, 1986 |
| 2 | "Bos II":  U.S. Patent No. 4,652,087 issued on March 24, 1987 |
| 3 | "Ejiri":  U.S. Patent No. 4,945,352 issued on July 31, 1990 |
| 4 | "Fergason I":  U.S. Patent No. 5,074,647 issued December 24, 1991 |
| 5 | "Fergason II":  U.S. Patent No. 5,252,817 issued October 12, 1993 |
| 6 | "Heilmeier":  U.S. Patent No. 3,575,491 issued April 20, 1971 |
| 7 | "Kawamura":  U.S. Patent No. 5,119,084 issued June 2, 1992 |
| 8 | "Knapp":  U.S. Patent No. 5,014,048 issued May 7, 1991 |
| 9 | "Miyagi":  Japanese Patent Pub. No. JP02-113294 published April 25, 1990 |
| 10 | "Nakanishi":  Japanese Patent Pub. JP03-063692 published March 19, 1991 |
| 11 | "Nonomura":  Japanese  Patent Pub. No. JP51-028796 published March 11, 1976 |
| 12 | "Ohnishi":  Japanese Patent Pub. No. JP64-010299 published on January 13, 1989 |
| 13 | "Saul":  International Publication No. WO 87/01468 published March 12, 1987 |

| 14 | "Takahara", Japanese Patent Pub. No. JP03-174186 published on July 29, 1991 |
| 15 | "Tsukamoto":  U.S. Patent No. 3,891,307 issued June 24, 1975 |
| 16 | "Ueda":  Japanese Patent Pub. No. JP59[1984]-90889 published on May 25, 1984 |
| 17 | "Umeda":  U.S. Patent No. 4,591,886 issued May 27, 1986 |
| 18 | "Wu":  "Nematic liquid crystal modulator with response time less than 100μs at room temperature"  September 1990 |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| **1.** An optical retarder system, comprising: | |
| (a) first retarder means for controlling the retardance of light passing therethrough along a first eigen-axis thereof relative to a second eigen-axis thereof in response to the application of a first signal thereto; and | Bos I:  *see, e.g.*, Figs. 3-4D; 7:28-10:68.<br><br>Bos II:  *see, e.g.*, Figs. 4-5B; 9:18-13:2.<br><br>Ejiri: *see, e.g.*,  Figs. 2a-d; 1:36-2:49.<br><br>Ferguson I:  *see, e.g.*, Figs. 1 and 2; 10:10-10-35.<br><br>Ferguson II: *see, e.g.*, Fig. 1; 6:8-54.<br><br>Hellmeier:  *see, e.g.*,  Fig. 3; 2:15-27.<br><br>Kawamura:  *see, e.g.*, Fig. 2; 1:38-68; 2:40-3:31.<br><br>Knapp:  *see, e.g.*, Fig. 5; 5:38-60.<br><br>Miyagi: *see, e.g.*, Figs. 2 and 4; pgs. 4-5.<br><br>Nakanishi: *see, e.g.*, Fig. 2; pg. 3.<br><br>Nonomura:  *see, e.g.*, Fig. 1; pg. 3.<br><br>Ohnishi:  *see, e.g.*, Fig. 1; pg. 2.<br><br>Saul: *see, e.g.*, Figs. 1 and 5; pg. 6.<br><br>Takahara: *see, e.g.*, Figs. 21 and 22, pgs. 4-6. |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| | Tsukamoto: *see, e.g.*, Fig. 1; 3:15-38.<br><br>Ueda: *see, e.g.*, Figs. 1 and 3; pgs. 2-3.<br><br>Umeda: *see, e.g.*, Figs. 4a-6; 3:64-5:35.<br><br>Wu: *see, e.g.*, Figs. 2 and 3; pg. 986-988. |
| (b) first drive means, connected to said first retarder means, for supplying said first signal to said first retarder means, said drive means including first control means for changing said retardance from a first retardance to a second retardance by causing said first signal to change, in a direction to move toward said second retardance, from a first amplitude which is required for said first retardance to a second amplitude, beyond a third amplitude which is required for said second retardance, for a period of time, and then causing said first signal to change to said third amplitude required for a second retardance. | Bos I: *see, e.g.*, Figs. 3-4D; 7:28-11:57.<br><br>Bos II: *see, e.g.*, Figs. 4-5B; 9:18-20:40.<br><br>Ejiri: *see, e.g.*, Figs. 2a-d, 1:36-2:49.<br><br>Ferguson I: *see, e.g.*, Fig. 8; 12:10-14:17.<br><br>Ferguson II: *see, e.g.*, Figs. 2A-C; 4:38-5:2; 5:18-21; 7:43-14:32; 18:60-19:36.<br><br>Hellmeier: *see, e.g.*, Figs. 1-2 and 4-6, 1:51-2:14;2:33-4:12.<br><br>Kawamura: *see, e.g.*, Figs. 2 and 3A-D; 3:38-4:64.<br><br>Knapp: *see, e.g.*, Figs. 4a, 5 and 7b; 5:61-7:57.<br><br>Miyagi: *see, e.g.*, Figs. 1, 3, 5 and 6; pgs. 4-8.<br><br>Nakanishi: *see, e.g.*, Figs. 2 and 3; pgs. 3-6.<br><br>Nonomura: *see, e.g.*, Figs. 3 and 4; pgs. 3-6.<br><br>Ohnishi: *see, e.g.*, Figs. 2 and 3; pg. 3.<br><br>Saul: *see, e.g.*, Figs. 2-5; pgs. 3-12. |

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| | Takahara: *see, e.g.*, Figs. 1, 2, 3, 4, 7, 8, 11, 14 and 20; pgs. 8-23, 29-31. <br><br> Tsukamoto: *see, e.g.*, Figs. 3c, 4a and 7c; 3:61-5:59. <br><br> Ueda: *see, e.g.*, Figs. 3-10, pgs. 2-6. <br><br> Umeda: *see, e.g.*, Figs. 13, 15 and 18a-b; 8:37-9:24; 9:56-10:8. <br><br> Wu: *see, e.g.*, Fig. 4; pg. 987-988. |
| 2. The optical retarder system of claim 1, wherein said first drive means includes means for increasing for a period of time the amplitude of said signal from said first amplitude to said second amplitude, then setting said amplitude of said signal to said third amplitude. | Bos I: *see, e.g.*, Figs. 3-4D; 7:28-11:57. <br><br> Bos II: *see, e.g.*, Figs. 4-5B; 9:18-20:40. <br><br> Ejiri: *see, e.g.*, Figs. 2a-d, 1:36-2:49. <br><br> Ferguson I: *see, e.g.*, Fig. 8; 12:10-14:17. <br><br> Ferguson II: *see, e.g.*, Figs. 2A-C; 4:38-5:2; 5:18-21; 7:43-14:32; 18:60-19:36. <br><br> Hellmeier: *see, e.g.*, Figs. 1-2 and 4-6, 1:51-2:14;2:33-4:12. <br><br> Kawamura: *see, e.g.*, Figs. 2 and 3A-D; 3:38-4:64. <br><br> Knapp: *see, e.g.*, Figs. 4a, 5 and 7b; 5:61-7:57. <br><br> Miyagi: *see, e.g.*, Figs. 1, 3, 5 and 6; pgs. 4-8. <br><br> Nakanishi: *see, e.g.*, Figs. 2 and 3; pgs. 3-6. <br><br> Nonomura: *see, e.g.*, Figs. 3 and 4; pgs. 3-6. <br><br> Ohnishi: *see, e.g.*, Figs. 2 and 3; pg. 3. |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
| --- | --- |
| | Saul: *see, e.g.*, Figs. 2-5; pgs. 3-12.<br><br>Takahara: *see, e.g.*, Figs. 1, 2, 3, 4, 7, 8, 11, 14 and 20; pgs. 8-23, 29-31.<br><br>Tsukamoto: *see, e.g.*, Figs. 3c, 4a and 7c; 3:61-5:59.<br><br>Umeda: *see, e.g.*, Figs. 13, 15, 18a-b; 8:37-9:24; 9;56-10:8.<br><br>Ueda:  *see, e.g.*,  Figs. 3-10, pgs. 2-6.<br><br>Wu: *see, e.g.*, Fig. 4; pg. 987-988. |

'382 PATENT – INVALIDITY CONTENTIONS

2372065

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| 3. The optical retarder system of claim 2, wherein said first retarder means comprises a liquid crystal cell having two transparent plates disposed substantially parallel to one another, the surfaces of said plates facing one another and each having respective transparent electrodes disposed thereon, liquid crystal material disposed between said electrodes, and means for aligning said liquid crystal material in a predetermined manner. | Bos I:  *see, e.g.*, Figs. 3-4D; 7:28-10:68.<br><br>Bos II:  *see, e.g.*, Figs. 4-5B; 9:18-13:2.<br><br>Ejiri:  *see, e.g.*,  Figs. 2a-d, 1:36-2:49.<br><br>Ferguson I:  *see, e.g.*, Figs. 1 and 2; 10:10-10-35.<br><br>Ferguson II: *see, e.g.*, Fig. 1; 6:8-54.<br><br>Hellmeier:  *see, e.g.*,  Fig. 3, 2:15-27.<br><br>Kawamura:  *see, e.g.*, Fig. 2; 1:38-68; 2:40-3:31.<br><br>Knapp:  *see, e.g.*, Fig. 5; 5:38-60.<br><br>Miyagi: *see, e.g.*, Figs. 2 and 4; pgs. 4-5.<br><br>Nakanishi: *see, e.g.*, Fig. 2; pg. 3.<br><br>Nonomura:  *see, e.g.*, Fig. 1; pg. 3.<br><br>Ohnishi:  *see, e.g.*, Fig. 1; pg. 2.<br><br>Saul: *see, e.g.*, Figs. 1 and 5; pg. 6.<br><br>Takahara: *see, e.g.*, Figs. 21 and 22, pgs. 4-6.<br><br>Tsukamoto: *see, e.g.*, Fig. 1; 3:15-38.<br><br>Ueda:  *see, e.g.*,  Figs. 1 and 3, pgs. 2-3.<br><br>Umeda: *see, e.g.*, Figs. 4a-6; 3: 3:64-5:35. |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| | Wu: *see, e.g.*, Fig. 2; pg. 986-988. |
| 4. The optical retarder system of claim 3, wherein said first drive means comprises means for applying to said transparent electrodes as said first signal an ac voltage of selected amplitude, and said control means comprises means for controlling said amplitude. | Bos I:  *see, e.g.*, Figs. 3-4D; 7:28-11:57.<br><br>Bos II:  *see, e.g.*, Figs. 4-5B; 9:18-20:40.<br><br>Ejiri:  *see, e.g.*,  Figs. 2a-d, 1:36-2:49.<br><br>Ferguson I:  *see, e.g.*, Fig. 8; 12:10-14:17.<br><br>Ferguson II: *see, e.g.*, Figs. 2A-C; 4:38-5:2; 5:18-21; 7:43-14:32; 18:60-19:36.<br><br>Hellmeier:  *see, e.g.*,  Figs. 1-2 and 4-6, 1:51-2:14;2:33-4:12.<br><br>Kawamura:  *see, e.g.*, Figs. 2 and 3A-D; 3:38-4:64.<br><br>Knapp:  *see, e.g.*, Figs. 4a, 5 and 7b; 5:61-7:57.<br><br>Miyagi: *see, e.g.*, Figs. 1, 3, 5 and 6; pgs. 4-8.<br><br>Nakanishi: *see, e.g.*, Figs. 2 and 3; pgs. 3-6.<br><br>Nonomura:  *see, e.g.*, Figs. 3 and 4; pgs. 3-6.<br><br>Ohnishi:  *see, e.g.*, Figs. 2 and 3; pg. 3.<br><br>Saul: *see, e.g.*, Figs. 2-5; pgs. 3-12.<br><br>Takahara: *see, e.g.*, Figs. 1, 2, 3, 4, 7, 8, 11, 14 and 20; pgs. 8-23, 29-31.<br><br>Tsukamoto: *see, e.g.*, Figs. 3c, 4a and 7c; 3:61-5:59.<br><br>Ueda:  *see, e.g.*,  Figs. 3-10, pgs. 2-6. |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| | Umeda: *see, e.g.*, Figs. 13, 15 and 18a-b; 8:37-9:24; 9;56-10:8. <br><br> Wu: *see, e.g.*, Fig. 4; pg. 987-988. |
| **5.** The optical retarder system of claim 1, wherein said first drive means comprises means for applying to said first retarder means as said first signal an ac voltage of selected amplitude, | Bos I:  *see, e.g.*, Figs. 3-4D; 7:28-11:57. <br><br> Bos II:  *see, e.g.*, Figs. 4-5B; 9:18-20:40. <br><br> Ejiri:  *see, e.g.*,  Figs. 2a-d, 1:36-2:49. <br><br> Ferguson I:  *see, e.g.*, Fig. 8; 12:10-14:17. <br><br> Ferguson II: *see, e.g.*, Figs. 2A-C; 4:38-5:2; 5:18-21; 7:43-14:32; 18:60-19:36. <br><br> Hellmeier:  *see, e.g.*,  Figs. 1-2 and 4-6, 1:51-2:14;2:33-4:12. <br><br> Kawamura:   *see, e.g.*, Figs. 2 and 3A-D; 3:38-4:64. <br><br> Knapp:  *see, e.g.*, Figs. 4a, 5 and 7b; 5:61-7:57. <br><br> Miyagi: *see, e.g.*, Figs. 1, 3, 5 and 6; pgs. 4-8. <br><br> Nakanishi: *see, e.g.*, Figs. 2 and 3; pgs. 3-6. <br><br> Nonomura:  *see, e.g.*, Figs. 3 and 4; pgs. 3-6. <br><br> Ohnishi:  *see, e.g.*, Figs. 2 and 3; pg. 3. <br><br> Saul: *see, e.g.*, Figs. 2-5; pgs. 3-12. <br><br> Takahara: *see, e.g.*, Figs. 1, 2, 3, 4, 7, 8, 11, 14 and 20; pgs. 8-23, 29-31. |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| | Tsukamoto: *see, e.g.*, Figs. 3c, 4a and 7c; 3:61-5:59.<br><br>Ueda: *see, e.g.*, Figs. 3-10, pgs. 2-6.<br><br>Umeda: *see, e.g.*, Figs. 13, 15 and 18a-b; 8:37-9:24; 9;56-10:8.<br><br>Wu: *see, e.g.*, Fig. 4; pg. 987-988. |
| **6.** The optical retarder system of claim 4, wherein said ac voltage has a rectangular waveform of predetermined duty cycle. | Bos I: *see, e.g.*, Figs. 3-4D; 7:28-11:57.<br><br>Bos II: *see, e.g.*, Figs. 4-5B; 9:18-20:40.<br><br>Ejiri: *see, e.g.*, Figs. 2a-d, 1:36-2:49.<br><br>Ferguson I: *see, e.g.*, Fig. 8; 12:10-14:17.<br><br>Ferguson II: *see, e.g.*, Figs. 2A-C; 4:38-5:2; 5:18-21; 7:43-14:32; 18:60-19:36.<br><br>Hellmeier: *see, e.g.*, Figs. 1-2 and 4-6, 1:51-2:14;2:33-4:12.<br><br>Knapp: *see, e.g.*, Figs. 4a, 5 and 7b; 5:61-7:57.<br><br>Miyagi: *see, e.g.*, Figs. 1, 3, 5 and 6; pgs. 4-8.<br><br>Nakanishi: *see, e.g.*, Figs. 2 and 3; pgs. 3-6.<br><br>Nonomura: *see, e.g.*, Figs. 3 and 4; pgs. 3-6.<br><br>Ohnishi: *see, e.g.*, Figs. 2 and 3; pg. 3.<br><br>Saul: *see, e.g.*, Figs. 2-5; pgs. 3-12.<br><br>Takahara: *see, e.g.*, Figs. 1, 2, 3, 4, 7, 8, 11, 14 and 20; pgs. 8-23, 29-31. |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| | Tsukamoto: *see, e.g.*, Figs. 3c, 4a; 7c; 3:61-5:59.<br><br>Ueda: *see, e.g.*, Figs. 3-10, pgs. 2-6.<br><br>Umeda: *see, e.g.*, Figs. 13, 15 and 18a-b; 8:37-9:24; 9;56-10:8.<br><br>Wu: *see, e.g.*, Fig. 4; pg. 987-988. |
| **10.** The optical retarder system of claim 1, wherein said first drive means includes means for reducing, for a period of time, said amplitude of said signal below that amount needed to change the retardance of said retarder means to a new, selected value, then setting said amplitude to that corresponding to said new, selected value. | Miyagi: *see, e.g.*, Figs. 1, 3, 5 and 6; pgs. 4-8.<br><br>Bos I:  *see, e.g.*, Figs. 3-4D; 7:28-11:57.<br><br>Bos II:  *see, e.g.*, Figs. 4-5B; 9:18-20:40.<br><br>Nonomura:  *see, e.g.*, Figs. 3 and 4; pgs. 3-6.<br><br>Takahara: *see, e.g.*, Figs. 8, 11 and 14; pgs. 17-23.<br><br>Tsukamoto: *see, e.g.*, Figs. 3c, 4a and 7c; 3:61-5:59.<br><br>Ueda:  *see, e.g.*, Figs. 3-10, pgs. 2-6.<br><br>Umeda: *see, e.g.*, Figs. 13, 15 and 18a-b; 8:37-9:24; 9;56-10:8.<br><br>Wu: *see, e.g.*, Fig. 4; pg. 987-988. |
| **11.** The optical retarder system of claim 10, wherein said first retarder means comprises a liquid crystal cell having two transparent plates disposed substantially parallel to one another the surfaces of said plates facing one another and | Bos I:  *see, e.g.*, Figs. 3-4D; Figs. 3-4D; 7:28-11:57.<br><br>Bos II:  *see, e.g.*, Figs. 4-5B; 9:18-20:40.<br><br>Ejiri:  *see, e.g.*,  Figs. 2a-d, 1:36-2:49.<br><br>Ferguson I:  *see, e.g.*, Figs. 1 and 2; 10:10-35; Fig. 8; 12:10-14:17. |

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| having respective transparent electrodes disposed thereon, liquid crystal material disposed between said plates, and means for aligning said liquid crystal material in a predetermined manner; and said drive means comprises means for applying to said transparent electrodes as said first signal an ac voltage of selected amplitude, and control means for controlling said amplitude. | Ferguson II: *see, e.g.*, Fig. 1; 6:8-54; Figs. 2A-C; 4:38-5:2; 5:18-21; 7:43-14:32; 18:60-19:36. <br><br> Hellmeier:  *see, e.g.*,  Figs. 1-6, 1:51-4:12. <br><br> Kawamura:  *see, e.g.*, Fig. 2; 1:38-68; 2:40-3:31; Figs. 2 and 3A-D; 3:38-4:64. <br><br> Knapp:  *see, e.g.*, Figs. 4a, 5 and 7b; 5:38-7:57. <br><br> Miyagi: *see, e.g.*, Figs. 2 and 4; pgs. 4-5; Figs. 1, 3, 5 and 6; pgs. 4-8. <br><br> Nakanishi: *see, e.g.*, Figs. 2 and 3; pgs. 3-6. <br><br> Nonomura:  *see, e.g.*, Figs. 1, 3 and 4; pgs. 3-6. <br><br> Ohnishi:  *see, e.g.*, Figs. 1, 2 and 3; pgs. 2-3. <br><br> Saul: *see, e.g.*, Figs. 1 and 5; pg. 6; Figs. 2-5; pgs. 3-12. <br><br> Takahara: *see, e.g.*, Figs. 21 and 22, pgs. 4-6; Figs. 1, 2, 3, 4, 7, 8, 11, 14 and 20; pgs. 8-23, 29-31. <br><br> Tsukamoto: *see, e.g.*, Fig. 1; 3:15-38; Figs. 3c, 4a and 7c; 3:61-5:59. <br><br> Ueda:  *see, e.g.*,  Figs. 1 and 3-10, pgs. 2-6. <br><br> Umeda: *see, e.g.*, Figs. 4a-6; 3: 3:64-5:35; Figs. 13, 15 and 18a-b; 8:37-9:24; 9;56-10:8. <br><br> Wu: *see, e.g.*, Figs. 2 and 4; pg. 986-988. |
| 20. A method for controlling an optical retarder for controlling the retardance of light passing therethrough along a first eigen-axis thereof relative to a second eigen-axis | Bos I:  *see, e.g.*, Figs. 3-4D; 7:28-10:68. <br><br> Bos II:  *see, e.g.*, Figs. 4-5B; 9:18-13:2. <br><br> Ejiri:  *see, e.g.*,  Figs. 2a-d; 1:36-2:49. |

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| thereof in response to the application of signal thereto, said method comprising:<br><br>(a) supplying a signal to said retarder to control its retardance; | Ferguson I: *see, e.g.*, Figs. 1 and 2; 10:10-10-35.<br><br>Ferguson II: *see, e.g.*, Fig. 1; 6:8-54.<br><br>Hellmeier: *see, e.g.*, Fig. 3; 2:15-27.<br><br>Kawamura: *see, e.g.*, Fig. 2; 1:38-68; 2:40-3:31.<br><br>Knapp: *see, e.g.*, Fig. 5; 5:38-60.<br><br>Miyagi: *see, e.g.*, Figs. 2 and 4; pgs. 4-5.<br><br>Nakanishi: *see, e.g.*, Fig. 2; pg. 3.<br><br>Saul: *see, e.g.*, Figs. 1 and 5; pg. 6.<br><br>Nonomura: *see, e.g.*, Fig. 1; pg. 3.<br><br>Ohnishi: *see, e.g.*, Fig. 1; pg. 2.<br><br>Takahara: *see, e.g.*, Figs. 21 and 22, pgs. 4-6.<br><br>Tsukamoto: *see, e.g.*, Fig. 1; 3:15-38.<br><br>Ueda: *see, e.g.*, Figs. 1 and 3; pgs. 2-3.<br><br>Umeda: *see, e.g.*, Figs. 4a-6 and 3: 3:64-5:35.<br><br>Wu: *see, e.g.*, Figs. 2 and 3; pg. 986-988. |
| (b) changing said retardance from a first retardance to a second retardance by causing said signal to change, in a | Bos I: *see, e.g.*, Figs. 3-4D; 7:28-11:57.<br><br>Bos II: *see, e.g.*, Figs. 4-5B; 9:18-20:40. |

'382 PATENT – INVALIDITY CONTENTIONS

| Asserted Claim | CMO's Invalidity Contentions |
|---|---|
| direction to move toward said second retardance, from a first amplitude which is required for said first retardance to a second amplitude, beyond a third which is required for said second retardance, for a period of time; and<br><br>(c) thereafter causing said signal to change to said third amplitude required for said second retardance. | Ejiri:  *see, e.g.*,  Fig. 2a-d, 1:36-2:49.<br><br>Ferguson:  *see, e.g.*, Fig. 8; 12:10-14:17.<br><br>Ferguson II: *see, e.g.*, Figs. 2A-C; 4:38-5:2; 5:18-21; 7:43-14:32; 18:60-19:36.<br><br>Hellmeier:  *see, e.g.*,  Figs. 1-2 and 4-6, 1:51-2:14;2:33-4:12.<br><br>Kawamura:  *see, e.g.*, Figs. 2 and 3A-D; 3:38-4:64.<br><br>Knapp:  *see, e.g.*, Figs. 4a, 5 and 7b; 5:61-7:57.<br><br>Miyagi: *see, e.g.*, Figs. 1, 3, 5 and 6; pgs. 4-8.<br><br>Nakanishi: *see, e.g.*, Figs. 2 and 3; pgs. 3-6.<br><br>Nonomura:  *see, e.g.*, Figs. 3 and 4; pgs. 3-6.<br><br>Ohnishi:  *see, e.g.*, Figs. 2 and 3; pg. 3.<br><br>Saul: *see, e.g.*, Figs. 2-5; pgs. 3-12.<br><br>Takahara: *see, e.g.*, Figs. 1, 2, 3, 4, 7, 8, 11, 14 and 20; pgs. 8-23, 29-31.<br><br>Tsukamoto: *see, e.g.*, Figs. 3c, 4a and 7c; 3:61-5:59.<br><br>Wu: *see, e.g.*, Fig. 4; pg. 987-988.<br><br>Ueda:  *see, e.g.*,  Figs. 3-10, pgs. 2-6.<br><br>Umeda: *see, e.g.*, Figs. 13, 15 and 18a-b; 8:37-9:24; 9;56-10:8. |

# EXHIBIT 10

## E-Mail Request for Emergency Relief

1. Case Number:                08 -cv- 568  -SLR

2. Check the box that applies:

      Requesting a teleconference with the parties and the court
      Requesting an in-person conference with the parties and the court
✓   Requesting either of the above listed options at the court's determination

3. BRIEFLY describe the reason for this **emergency** request:

Fact discovery closed on January 28, 2011. Two months later, on March 22, 2011, the PTO issued a reexamination certificate adding 8 new claims to the '382 patent. The new claims were not vetted in discovery and were not addressed in the claim construction exchange of the parties.  Plaintiff nevertheless served infringement contentions for several of those claims on March 28, 2011 and included them in its April 11, 2011 expert report. Plaintiff has taken the position that these new claims are part of this case even though it has not sought to supplement its complaint under Rule 15(d) to add the reexamination certificate.  CMO does not believe that Apeldyn can add  claims issued after the close of discovery, and certainly not without leave of Court.  CMO seeks the Court's guidance as to whether those claims are part of this case and, if so, how the case will proceed.

*Any text added beyond the limits of this space will be disregarded by the court.

4. Name of opposing counsel contacted about this request: Sunjeev S. Sikand

5. Response of opposing counsel to this request:

Apeldyn believes that it does not need leave of Court to assert the newly-issued claims.

6. Name of local counsel making this request: Rodger D. Smith II

7. Today's Date: April 18, 2011

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

For court use only:
☐   A teleconference will be held on                                    to be coordinated and initiated by

☐   An in-person discovery conference will be held on:

☑   Other: *The court is satisfied that the parties have been operating with knowledge of these "new" claims and can adjust the schedule to accommodate, if necessary.*

*SLR*
*4/21/11*

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that, on May 4, 2011, he served the foregoing

documents by email and by hand upon the following counsel:

Frederick L. Cottrell, III
Anne Shea Gaza
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801

Gerald M. O'Rourke
RatnerPrestia P.C.
1007 N. Orange Street, Suite 1100
Wilmington, DE 19801

Jack B. Blumenfeld
Rodger Smith
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

The undersigned counsel further certifies that, on May 4, 2011, he served the foregoing

documents by email and by U.S. Mail upon the following counsel:

Josh A. Krevitt
Benjamin Hershkowitz
Richard M. Koehl
Gibson Dunn Crutcher LLP
200 Park Avenue
New York, NY 10133

Vincent K. Yip
Peter J. Wied
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071

Morgan Chu
Jonathan S. Kagan
Thomas C. Werner
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

/s/ Stephen B. Brauerman (sb4952)
Stephen B. Brauerman