**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

APELDYN CORPORATION,

        Plaintiff,

      v.

AU OPTRONICS CORPORATION,  et al.,

        Defendants.

Civil Action No. 08-568-SLR

DM 11

## ORDER

This matter is presently before the Special Master on two related motions filed by Plaintiff Apeldyn Corporation ("Apeldyn"), namely: (1) Motion to Strike the Supplemental Expert Report of Pochi Yeh, Ph.D. Regarding Invalidity of U.S. Patent No. 5,347,382[1] ("Motion") (D.I. 452), which report was served by Defendant AU Optronics Corporation ("AUO") on April 15, 2011 ("April 15 Yeh Report"); and (2) Apeldyn's Motion to Strike the Second Supplemental Expert Report of Pochi Yeh, Ph.D. Regarding Invalidity of U.S. Patent No. 5,347,382 ("Supplemental Motion") (D.I. 455), which report was served by AUO on May 2, 2011 ("May 2 Yeh Report").

Having read and considered Apeldyn's briefs in support of its Motion and Supplemental Motion, AUO's oppositions thereto, and having heard the parties' oral arguments during the telephonic hearing on May 17, 2011, the Special Master concludes that: (1) the April 15 Yeh Report was not timely served; (2) AUO was not substantially justified in failing timely to serve the April 15 Yeh Report; (3) AUO's failure to serve the April 15 Yeh Report in a timely fashion is not "harmless"; (4) the harm to Apeldyn can be cured short of striking the April 15 Yeh Report

---

[1] "the '382 patent" or "patent-in-suit"

by the award of costs and attorneys' fees; and (5) the May 2 Yeh Report was timely served. Accordingly, for the reasons set forth below, Apeldyn's Motion is GRANTED-IN-PART and DENIED-IN-PART, Apeldyn's Supplemental Motion is DENIED, and the parties are ORDERED to meet and confer to discuss whether adjustments to the case schedule will be necessary in light of this Order.

## I.   BACKGROUND

### A. The April 15 Yeh Report

Pursuant to the Second Stipulation and Order Amended Scheduling Order ("Second Stipulated Scheduling Order"), the deadline for submitting opening expert reports was April 11, 2011. This April 11 deadline was the product of two stipulated extensions, the parties having agreed twice to move the deadline for opening expert reports.[2]

On April 11, 2011, in accordance with the Second Stipulated Scheduling Order, AUO served the Expert Report of Pochi Yeh, Ph.D. Regarding Invalidity of U.S. Patent No. 5,347,382 ("April 11 Yeh Report"). Four days later, on April 15, 2011, AUO served the April 15 Yeh Report—without having sought leave to submit a supplemental expert report once the deadline had passed.

The April 15 Yeh Report addresses five prior art references which were not addressed in the April 11 Yeh Report, namely: "Wu'1990" (Applied Physics Letters, Vol. 57, 3, September 1990); "Saul'468" (Saul WO 87101468, published March 12, 1987); "Miyagi'294" (JP02-

_____

[2] The original deadline for submitting "[e]xpert reports on issues for which the parties have the burden of proof" was March 4, 2011. (*See* Amended Scheduling Order, D.I. 315 ¶ 2(d)(1).) The parties subsequently agreed to extend the March 4 deadline to March 28, 2011. (*See* D.I. 452 at 2.) On March 17, 2011, however, AUO's counsel proposed to Apeldyn's counsel a two-week extension of the opening expert report deadline, thereby setting the deadline as April 11, 2011. (*See id.*) On March 23, 2011, the Special Master signed the Second Stipulated Scheduling Order, which reflects the parties' agreed upon deadline of April 11, 2011 for opening expert reports.

2

113294, published April 25, 1990); "Ueda'889" (JP59-90889, published May 25, 1984); and "Nonomura'796" (JP51-028796, published March 11, 1976).

On April 22, 2011, pursuant to Fed. R. Civ. P. 26(a)(2) and 37(c)(1), Apeldyn submitted its Motion, seeking a "recommendation that the untimely [April 15 Yeh Report] . . . be stricken and that AUO be precluded from relying on any information therein."[3]  (D.I. 452 at 1.)  AUO submitted its opposition to the Motion on April 29, 2011 ("Opposition") (D.I. 453), and Apeldyn submitted its reply brief on May 4, 2011 ("Reply") (D.I. 454).  The telephonic hearing on the matter took place on May 17, 2011.

## B. The May 2 Yeh Report

On March 22, 2011, the United States Patent and Trademark Office ("PTO") issued a Reexamination Certificate that added 8 new claims to the '382 patent.  (See D.I. 453 at 2.)  On April 18, 2011, Defendant Chi Mei Optoelectronics Corporation ("CMO") submitted an E-Mail Request for Emergency Relief to seek the Court's guidance as to whether the 8 new claims are a part of this case, and, if so, how the case should proceed.  (See D.I. 253, Ex. B.)  Apeldyn submitted a response to CMO's E-Mail Request the next day, asserting that "CMO has known of the 8 new claims since 12/09, more than a year, and received copies of all reexamination documents." (See D.I. 253, Ex. B.)  On April 21, 2011, the Court ruled as follows: "The Court is satisfied that the parties have been operating with knowledge of these 'new' claims and can adjust the schedule to accommodate, if necessary." (See D.I. 253, Ex. B.)

On May 2, 2011, AUO served the May 2 Yeh Report.  According to AUO's expert Dr. Yeh, the May 2 Yeh Report is intended to address the 8 new claims—i.e., claims 22-29 from the

---

[3]  In the alternative, Apeldyn requests that "[i]f Dr. Yeh's April 15 additional report is not struck, at the very least AUO should bear Apeldyn's costs, including attorneys' fees, in responding to the untimely report." (See D.I. 454 at 3 n.3.)

3

Reexamination Certificate. (*See* D.I. 455, Ex. 11 at 2.) On May 6, 2011, Apeldyn submitted its Supplemental Motion, requesting that "Dr. Yeh's May 2 report be stricken to the extent that report includes information based on references not disclosed in Dr. Yeh's April 11, 2011 opening expert report, and that AUO be precluded from relying on any such information therein." (D.I. 455 at 1.) AUO submitted its opposition to Apeldyn's Supplemental Motion on May 11, 2011 ("Supplemental Opposition") (D.I. 456), and Apeldyn submitted its reply brief on May 16, 2011 ("Supplemental Reply") (D.I. 457). The telephonic hearing on Apeldyn's Supplemental Motion was conducted in conjunction with the May 17, 2011 hearing on Apeldyn's Motion.

## II.    LEGAL STANDARDS

An expert's written report "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B). Expert reports must be served "at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D).

Pursuant to Fed. R. Civ. P. 26(e)(1), a party must supplement an expert report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," or "as ordered by the court."

Pursuant to Fed. R. Civ. P. 37(c)(1), a court may impose sanctions against a party for failure to make discovery:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or

4

> instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorneys' fees, caused by the failure. . . .

FED. R. CIV. P. 37(c)(1) (emphasis added).

In determining whether a party's failure to make discovery is "harmless" under Fed. R. Civ. P. 37(c)(1), this Court considers the six factors ("Pennypack factors") articulated in *B. Braun Melsungen AG v. Terumo Medical Corp.*, 749 F. Supp. 2d 210 (D. Del. 2010).[4] The Special Master has tailored the Pennypack factors to suit the facts of the matter *sub judice* as follows:

> (1) the importance of the information [not timely disclosed]; (2) the explanation for the failure to disclose; (3) the prejudice or surprise to [Apeldyn as a result of the untimely expert report]; (4) the possibility of curing the prejudice; (5) the likelihood of disruption of the [discovery process or expert witness process]; and (6) the presence of bad faith or willfulness in not [timely] disclosing the [five prior art references].

*See Braun*, 749 F. Supp. 2d at 221.

---

[4] Given that the Pennypack factors are the relevant factors this Court considers in determining whether a party's failure to disclose is "harmless," the Special Master directed the parties' attention to *Braun* prior to the May 17 hearing, after briefing closed. The Pennypack factors are set forth in *Braun* as follows:

> (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence."

*Braun*, 749 F. Supp. 2d at 221 (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) and *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).

5

### III.   ANALYSIS

#### A.   The April 15 Yeh Report

##### i.   *The Five Prior Art References at Issue Were Not Timely Disclosed*

It is not disputed that the April 15 Yeh Report was served four days after the deadline for submitting opening expert reports. Such "supplemental reports" are not contemplated under the Second Stipulated Scheduling Order.

AUO chose to serve the April 15 Yeh Report four days late without seeking leave to submit a supplemental report. In the Special Master's view, that was not the appropriate course of action. *See Braun*, 749 F. Supp. 2d at 221 ("Parties may not use their obligation to supplement as an excuse to violate the clear terms of a Scheduling Order, unilaterally buying themselves additional time to make disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a case."). Indeed, counsel for AUO admitted at the hearing that "certainly in retrospect [seeking leave to submit a supplemental report rather than just submitting it] may have been the more prudent course." (*See* 5/17/11 Hr'g Tr. at 35:24 – 36:1.)

In the Special Master's view, AUO's actions disregarded both the Second Stipulated Scheduling Order and the Federal Rules of Civil Procedure. This is especially troubling given the extensions to the deadline for opening expert reports that AUO had already sought and obtained. The Special Master therefore concludes that the April 15 Yeh Report was not timely served, and, thus, the five prior art references cited for the first time therein were not timely disclosed.

##### ii.   *AUO's Failure Timely to Serve the April 15 Yeh Report Was Not Substantially Justified*

To avoid the imposition of sanctions, AUO must in the first instance establish that its failure timely to serve the April 15 Yeh Report was "substantially justified." *See* FED. R. CIV. P.

WM1A 1000562v1 05/25/11

37(c)(1). For the reasons set forth below, the Special Master concludes that AUO's failure was not "substantially justified."

The first paragraph of the April 15 Yeh Report explains that the report is intended "to address additional prior art references disclosed in" the opening report of Dr. Bruce W. Smith, CMO's expert on validity, which was served on April 11, 2011. (*See* D.I. 452 at 2, quoting April 15 Yeh Report at 2.) According to Apeldyn, "AUO's and Dr. Yeh's assertions that they did not learn of [the five prior art references cited by Dr. Smith] until they received Dr. Smith's report are without merit" for several reasons. (*See id.* at 3.) Pointing out that four out of the five references were disclosed to the PTO during reexamination, Apeldyn argues that AUO knew or should have known of those references given that: (1) Dr. Yeh considered the reexamination materials for the patent-in-suit in preparing the April 11 Yeh Report (*see* D.I. 452 at 2-3, citing April 11 Yeh Report at 4); (2) "reexamination documents identifying those references were produced to AUO (and all other Defendants) on July 15, 2010, eight months before opening expert reports were due" (D.I. 452 at 3); and (3) Apeldyn believes (and AUO does not deny) that "it was AUO itself that filed the reexamination proceeding and thus was directly on notice of all prior art filed therein" (*see* D.I. 454 at 1). In addition, Apeldyn asserts that AUO was on notice of all five prior art references "when they were cited by CMO in Exhibit C to its supplemental response to Apeldyn's Interrogatory No. 1, which response and exhibit AUO received at least as early as January 28, 2011...." (*See* D.I. 452 at 3.)

Against the backdrop of Dr. Smith having been able to identify, understand, and address the five prior art references in his April 11, 2011 report, AUO argues in response that its failure to cite those same references in the April 11 Yeh Report was "substantially justified" due to the volume of references included in the reexamination file. Specifically, AUO explains that four

out of the five references "were included as entries in six pages that list almost 150 prior art references." (*See* D.I. 453 at 2.) AUO further explains that "the reexamination file also included a four page IDS[5] listing over 130 prior art references, and a 16-page IDS listing over 650 references." (*Id.*). Finally, AUO points out that "[e]ven the examiner noted that 'due to the unusually large number of references cited, and the absence of any description of the relevance of the references' they were given 'only the most cursory review.'" (D.I. 453, quoting Ex. D thereto.)

In the Special Master's view, AUO has not proffered any legitimate excuse for its failure to include in the April 11 Yeh Report the five prior art references that it disclosed for the first time in the April 15 Yeh Report. Indeed, AUO makes no attempt to explain how its failure is "substantially justified" particularly in light of CMO's disclosure of the five references in Exhibit C to its January 28, 2011 interrogatory responses.

Moreover, it is not disputed that: (1) Dr. Yeh considered the reexamination materials for the patent-in-suit when preparing the April 11 Yeh Report; (2) the reexamination materials included four out of the five prior art references at issue; (3) reexamination documents identifying those four references were produced to AUO (and all other Defendants) on July 15, 2010; and (4) CMO cited the five prior art references in Exhibit C to its supplemental response to Apeldyn's Interrogatory No. 1, which response and exhibit was served by CMO on January 28, 2011.

In light of the foregoing, the Special Master concludes that AUO knew or should have known of all five prior art references at least as early as January 28, 2011, and, thus, AUO's failure to disclose them in the April 11 Yeh Report was not substantially justified.

---

[5] Information Disclosure Statement

8

### iii. *AUO's Failure Timely to Serve the April 15 Yeh Report is Not "Harmless"*

The Special Master having concluded that AUO's failure timely to disclose the five prior art references was not "substantially justified," AUO must establish that such failure is "harmless" to avoid the imposition of sanctions. *See* FED. R. CIV. P. 37(c)(1). For the reasons set forth below, the Special Master concludes that AUO's failure is not "harmless" because the untimely report results in prejudice to Apeldyn.

In support of its position, Apeldyn argues that it will be prejudiced by AUO's failure "in Apeldyn's having to expend resources to respond to an untimely report" and "in its ability to prepare for expert discovery because, unlike AUO, Apeldyn will still be responding to an untimely expert report instead of being able to move on to preparing for depositions." (*See* D.I. 454 at 2.) According to Apeldyn, "[t]he prejudice lies . . . in permitting AUO to attack the patent-in-suit on grounds it waived due not to any excuse or mistake, but instead to its own lack of diligence."[6] (*See id.*)

AUO asserts, on the other hand, that "there is no prejudice to Apeldyn from Dr. Yeh addressing the same prior art references [as Dr. Smith] a mere 4 days later than Dr. Smith (and a full 4 weeks before any rebuttal report is due)." (*See* D.I. 453 at 1.) According to AUO, Apeldyn's task "in preparing a rebuttal report on invalidity" will entail "copying the identical position it takes in response to Dr. Smith's report." (*See id.*). AUO then rather glibly states that "[s]hould Apeldyn need some extra time for copying, AUO is amenable." (*See id.*) In response, Apeldyn represents that "responding to the additional report is not simply a 'cut and paste job,'

---

[6] Although Apeldyn in passing raises the concept of waiver, in the absence of any meaningful development of an argument that AUO has waived certain invalidity arguments due to the untimely disclosure, the Special Master declines to make a determination regarding the issue of waiver.

as AUO suggests, but instead will require analyzing and responding to AUO's arguments." (D.I. 454 at 2.)

In determining whether AUO's untimely report is "harmless" under Fed. R. Civ. P. 37(c)(1), the Pennypack factors as refashioned by the Special Master must be examined.

### 1)  *The importance of the information not timely disclosed*

In the absence of any sound reason to reject AUO's representation that its "ability to argue invalidity based on [the five] references is important to [its] case" (*see* 5/17/11 Hr'g Tr. at 33:11-12), the Special Master concludes that the references are important to AUO.[7]

### 2)  *The explanation for the failure to disclose*

As explained above, there is no justification for AUO's failure to disclose the five prior art references in the April 11 Yeh Report.

### 3)  *The prejudice or surprise to Apeldyn as a result of the untimely expert report*

The record makes clear that Apeldyn was surprised by AUO's submission of the April 15 Yeh Report.  Moreover, the Special Master concludes that Apeldyn will be prejudiced by having to expend resources in responding to the untimely report.

### 4)  *The possibility of curing the prejudice*

In the Special Master's view, the imposition of monetary sanctions against AUO will cure the prejudice to Apeldyn.  Although Apeldyn suggests that monetary sanctions cannot cure the impact that AUO's untimely report will have on Apeldyn's "ability to prepare for expert discovery and the resulting impact on the discovery schedule" "given the tight deadlines in this

---

[7] Counsel for Apeldyn argued at the May 17 hearing that "the information not timely disclosed is not important; neither AUO nor Dr. Yeh could have thought the five references important if they were not included in Dr. Yeh's April 11 opening report." (*See* 5/17/11 Hr'g Tr. at 13:11-14.)  In the Special Master's view, however, AUO recognized the importance of the five prior art references in taking the step of serving the April 15 Yeh Report after the deadline for opening reports.

10

case" (*see* 5/17/11 Hr'g Tr. at 18:23-24; 20:24–21:1), subsequent to the parties' meet and confer, the Special Master will, if necessary, discuss the case schedule with the parties and will consider adjusting deadlines. (*See id.* at 52:2-10.) Further, in the Special Master's view, while moving dates may result in a more pressured work schedule, it would not be prejudicial.

> 5) *The likelihood of disruption of the discovery process or the expert witness process*

Although the untimely April 15 Yeh Report should not disrupt the schedule with respect to summary judgment motions and the trial date, it necessarily disrupts the expert discovery process.

> 6) *The presence of bad faith or willfulness in not timely disclosing the five prior art references*

While the Special Master concludes that AUO flagrantly disregarded the Second Stipulated Scheduling Order, even though by only four days, in the Special Master's view, there is no evidence of bad faith or willfulness in connection with AUO's untimely disclosure of the five prior art references. Indeed, Apeldyn stated at the May 17 hearing that it is not suggesting that AUO "planned an ambush." (*see* 5/17/11 Hr'g Tr. at 28:19-20.)

Weighing all of the factors, placing primary emphasis on factor nos. 2 (the explanation for the failure to disclose) and 3 (the prejudice or surprise to Apeldyn as a result of the untimely report), the Special Master concludes that AUO's failure timely to disclose the five prior art references is not "harmless."

### iv. *The Appropriate Sanction Pursuant to Fed. R. Civ. P. 37(c)(1)*

"It is well recognized that 'the scope and conduct of discovery are within the sound discretion of the trial court,' . . . and a district court's 'decision whether to penalize non-compliance with a deadline is entrusted to the discretion of the court that imposed it.'" *Canterna*

*v. United States*, 319 Fed. Appx. 93, 97, 2008 WL 2957087, *3 (3d Cir. Aug. 4, 2008) (quoting *Marroquin-Manriquez v. INS,* 699 F.2d 129, 134 (3d Cir. 1983) and *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 178 (3d Cir. 1991)).

Apeldyn has requested that the April 15 Yeh Report be stricken. "The Third Circuit, however, has expressed an aversion to excluding [expert reports], unless admission would result in incurable prejudice." *Cuffee v. Dover Wipes Co.*, 334 F. Supp. 2d 565, 572 (D. Del. 2004). "In addition to incurable prejudice, the Third Circuit has considered . . . whether non-disclosure was the result of bad faith. . . ." *Id.*

The Special Master is mindful that the Court in *Cuffee* ultimately struck the plaintiff's untimely expert reports, even though there was "no evidence that plaintiff's failure to meet the[] deadlines was the result of intentional non-disclosure or bad faith," because they were "too untimely to be included" in light of the imminently approaching trial date. *Id.* The Court concluded that "it would prejudice the defendants to include the reports because it would leave them little over a month to contact experts and get reports to counter the conclusions drawn by plaintiff's experts." *Id.* By contrast, in the matter *sub judice*, AUO's untimely disclosure of the five prior art references occurred only four days after the deadline for opening reports, and the Special Master has concluded that the untimely disclosure should not impact the trial date. (*See supra* at 11.) These facts fall far short of the egregious circumstances which warranted the striking of the plaintiff's expert reports in *Caffee*.

While the Special Master is mindful that AUO ignored the Second Stipulated Scheduling Order, having concluded that there is no evidence that AUO's untimely disclosure of the five references was the result of bad faith and that the prejudice to Apeldyn is curable, the Special

Master concludes that the "extreme sanction" of striking the April 15 Yeh Report is not warranted here. *See In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d. Cir. 1994).

Rather, in the matter *sub judice*, the Special Master concludes that monetary sanctions are appropriate. "[Fed. R. Civ. P.] 37(c)(1) authorizes the court to require payment of reasonable expenses, including attorneys' fees, caused by the failure to disclose." 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2289.1, at 622 (3d ed. 2010). "In some cases, this presumably would include any additional costs required to respond to new matters or witnesses and, like the sanction for failure to admit, amounts expended to obtain information that should have been disclosed in the first instance." *Id.* Indeed, "[t]he Rules of Civil Procedure are designed to deter discovery misconduct by ensuring that the responsible party bears the cost of the unnecessary litigation." *See Winner v. Etkin & Company, Inc.*, 2008 WL 5429623, *6 (W.D. Pa. Dec. 31, 2008) (holding that "an award of reasonable expenses [is not] unjust [where] [t]he errors were within the control of [the party being sanctioned] and should have been avoidable").

Therefore, to cure the prejudice to Apeldyn, the Special Master concludes that the monetary sanction of costs and attorneys' fees is warranted. Accordingly, AUO is ORDERED to reimburse Apeldyn for the costs and fees that Apeldyn will incur in responding to the April 15 Yeh Report, as well as for the costs and fees Apeldyn has incurred in connection with bringing the Motion.

## B. The May 2 Yeh Report

Unlike the April 15 Yeh Report, the May 2 Yeh Report was not untimely served. Apeldyn is not requesting that the entire May 2 Yeh Report be stricken; it only requests that the

13

Special Master strike information therein relating to the five prior art references that AUO failed to disclose in the April 11 Yeh Report.

In support of its position, Apeldyn asserts that "AUO has known of the eight added claims since December 2009" (D.I. 455 at 1 n.2.), and explains that "any prior art relevant to added claims 22-29 would necessarily also be relevant to the original claims. . . . Thus, the prior art that may be relevant to claims 22-29 would not include additional prior art that would not also be relevant to the original claims." (D.I. 455 at 2) (emphasis in original); *see also* 5/17/11 Hrg' Tr. at 15:21-24 ("[A]ny art that would have been relevant to the added claims would also have been relevant to the original claims and should have been cited in the original report.").

In response, AUO asserts that "if AUO is to be provided a meaningful opportunity to respond to [the newly added] claims, it must be allowed to include additional prior art [beyond the prior art cited in the opening report]; to hold otherwise would be error because it would effectively preclude AUO from addressing the new limitations added to the claims." (*See* D.I. 456 at 2.) AUO further states that "[s]ince Apeldyn does not object to Dr. Yeh providing an opinion on the new claims (since it only seeks to strike certain references), it is inconsistent for Apeldyn to object to Dr. Yeh using prior art references beyond those included in his original report." (*See id.*) AUO reiterated at the hearing that since "it doesn't appear that Apeldyn is arguing that no new report should have been permitted, then if the defendants are to have a meaningful opportunity to respond to those claims, . . . that cannot be limited to prior art that was previously cited with respect to the original claim[s]." (*See* 5/17/11 Hr'g Tr. at 39:24–40:5.)

Notwithstanding AUO's failure timely to disclose the five prior art references, in the Special Master's view, it is inconsistent for Apeldyn, on the one hand, to accept the serving of supplemental expert reports to address newly added claims, yet on the other hand, to object to

14

AUO's use of five specific prior art references contained in one such supplemental report on the grounds that the references could have and should have been cited in an earlier report.

Consistent with the principle that prior art references beyond those cited in opening reports may be appropriate to cite in a subsequent report to address newly added claims, the Special Master DENIES Apeldyn's Supplemental Motion. Each party shall bear its own costs and attorneys' fees in connection with the Supplemental Motion and the May 2 Yeh Report.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons:

A. Apeldyn's Motion is DENIED-IN-PART in that the April 15 Yeh Report will not be stricken;

B. Apeldyn's Motion is GRANTED-IN-PART in that AUO, pursuant to Fed. R. Civ. P. 37(c)(1), shall reimburse Apeldyn for the costs and fees that Apeldyn will incur in responding to the April 15 Yeh Report, as well as for the costs and fees Apeldyn incurred in connection with bringing the Motion. Apeldyn shall submit a Bill of Costs within 10 days of submitting its response to the April 15 Yeh report.

C. Apeldyn's Supplemental Motion is DENIED;

D. Apeldyn and AUO are ORDERED to meet and confer not later than May 27, 2011 regarding whether adjustments to the deadlines set forth in the Second Stipulated Scheduling Order will be necessary in light of this Order. If there is no disagreement with respect to deadlines, the parties shall forthwith inform the Special Master of that fact and shall submit a stipulated scheduling order setting forth any new agreed-upon deadlines by 5:00 p.m. EDT on May 27, 2011. If the

WM1A 1000562v1 05/25/11

parties disagree with respect to deadlines, the parties shall, by 5:00 p.m. EDT on May 27, 2011, request that a teleconference with the Special Master be scheduled.

THE SPECIAL MASTER'S ORDER SHALL NOT BE CONSIDERED A FINAL ORDER FOR PURPOSES OF FILING OBJECTIONS PURSUANT TO FED. R. CIV. P. 53(f)(2).    THIS ORDER SHALL BECOME A FINAL ORDER FOLLOWING THE MEET AND CONFER PROCESS AND THE ENTRY OF A MODIFIED SCHEDULING ORDER (IF NECESSARY), AND IN ANY EVENT SUBSEQUENT TO FURTHER ORDER OF THE SPECIAL MASTER.

SO ORDERED this 25th day of May, 2011

_____
Vincent J. Poppiti (#100614)
Special Master

16