## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

APELDYN CORPORATION,

      Plaintiff,

      v.

AU OPTRONICS CORPORATION,  et al.,

      Defendants.

Civil Action No. 08-568-SLR

DM 11

## SPECIAL MASTER'S REPORT AND RECOMMENDATION
## REGARDING APELDYN CORPORATION'S BILL OF COSTS

This matter is before the Special Master on the Bill of Costs submitted by plaintiff Apeldyn Corporation ("Apeldyn") pursuant to the Special Master's May 25, 2011 Order (D.I. 464) ("Sanctions Order"), which Order imposed monetary sanctions against defendant AU Optronics Corporation ("AUO").  Having read and considered the parties' letter briefs relating to Apeldyn's Bill of Costs, for the reasons set forth below, the Special Master recommends that Apeldyn's requested award of $89,747.54 be reduced to $47,241.54.

I.      **BACKGROUND**

      **A. Defendants' Expert Reports and Apeldyn's Motions to Strike**[1]

          *1.  April 11 Yeh Report*

On April 11, 2011—the deadline for serving opening expert reports pursuant to the Second Stipulation and Order Amended Scheduling Order ("Second Stipulated Scheduling

---

[1] A detailed discussion of the background of Apeldyn's motions to strike can be found in the Sanctions Order.

Order") (D.I. 465)—AUO served the Expert Report of Pochi Yeh, Ph.D. Regarding Invalidity of U.S. Patent No. 5,347,382 ("April 11 Yeh Report").

### 2. *April 11 Smith Report*

Defendant Chi Mei Optoelectronics Corporation ("CMO") served the opening report of its invalidity expert, Dr. Bruce Smith, on April 11, 2011 ("April 11 Smith Report").

### 3. *April 15 Yeh Report*

On April 15, 2011—four days after the deadline for serving opening expert reports— AUO served the Supplemental Expert Report of Pochi Yeh, Ph.D. Regarding Invalidity of U.S. Patent No. 5,347,382 ("April 15 Yeh Report"). Dr. Yeh addressed in the April 15 Yeh Report five prior art references that he had not addressed in the April 11 Yeh Report. Those five prior art references are: "Wu'1990" (Applied Physics Letters, Vol. 57, 3, September 1990); "Saul'468" (Saul WO 87101468, published March 12, 1987); "Miyagi'294" (JP02-113294, published April 25, 1990); "Ueda'889" (JP59-90889, published May 25, 1984); and "Nonomura'796" (JP51-028796, published March 11, 1976). Notably, CMO's expert Dr. Smith addressed these five references in the April 11 Smith Report.

On April 22, 2011, Apeldyn filed a motion to strike the April 15 Yeh Report ("Motion") (D.I. 452), seeking a "recommendation that the untimely [April 15 Yeh Report] . . . be stricken and that AUO be precluded from relying on any information therein."[2] (D.I. 452 at 1.)

### 4. *May 2 Yeh Report*

On May 2, 2011, AUO served the May 2 Yeh Report. Like the April 15 Yeh Report, the May 2 Yeh Report discusses the five prior art references that were not addressed in the April 11

---

[2] In the alternative, Apeldyn requested that "[i]f Dr. Yeh's April 15 additional report is not struck, at the very least AUO should bear Apeldyn's costs, including attorneys' fees, in responding to the untimely report." (*See* D.I. 454 at 3 n.3.)

Yeh Report. According to Dr. Yeh, the May 2 Yeh Report is intended to address 8 new claims (claims 22-29) that were added to the patent-in-suit through a Reexamination Certificate issued by the United States Patent and Trademark Office ("PTO") on March 22, 2011. *(See* D.I. 453 at 2.)

On May 6, 2011, Apeldyn filed a motion to strike the May 2 Yeh Report ("Supplemental Motion") (D.I. 455), requesting that "Dr. Yeh's May 2 report be stricken to the extent that report includes information based on references not disclosed in Dr. Yeh's April 11, 2011 opening expert report, and that AUO be precluded from relying on any such information therein." (D.I. 455 at 1.)

## B. The Sanctions Order

A hearing on both of Apeldyn's motions was held telephonically on May 17, 2011. ("May 17 Hearing"). On May 25, 2011, the Special Master issued the Sanctions Order, granting-in-part and denying-in-part Apeldyn's Motion and denying Apeldyn's Supplemental Motion.

With respect to Apeldyn's Motion, the Special Master concluded that the April 15 Yeh Report was not timely served, and that AUO's failure to serve it within the deadline for submitting opening expert reports was not "substantially justified" or "harmless." *See* FED. R. CIV. P. 37(c)(1) (authorizing courts to sanction parties for failure to make discovery "unless the failure was substantially justified or is harmless"). Notwithstanding the prejudice to Apeldyn resulting from the untimely April 15 Yeh Report, the Special Master concluded that the severe sanction of striking the report was not warranted under the circumstances. *(See* D.I. 464 at 11-13, 15.) The Special Master concluded that monetary sanctions would cure the prejudice to Apeldyn, and accordingly ordered AUO to "reimburse Apeldyn for the costs and fees that Apeldyn will incur in responding to the April 15 Yeh Report, as well as for the costs and fees

3

Apeldyn incurred in connection with bringing the Motion." (*Id.* at 15.) Further, the Special Master directed Apeldyn to "submit a Bill of Costs within 10 days of submitting its response to the April 15 Yeh Report." (*Id.*)

With respect to Apeldyn's Supplemental Motion, the Special Master concluded that "[u]nlike the April 15 Yeh Report, the May 2 Yeh Report was not untimely served." (*Id.* at 13.) The Special Master therefore denied Apeldyn's Supplemental Motion and directed "[e]ach party [to] bear its own costs and attorneys' fees in connection with the Supplemental Motion and the May 2 Yeh Report." (*Id.* at 15.)

The parties not having taken exceptions to the Sanctions Order pursuant to Fed. R. Civ. P. 53(f)(2), the Sanctions Order became a final order of the Court on June 4, 2011. (*See* D.I. 479 and D.I. 480.)

### C. Apeldyn's Rebuttal Expert Reports

On May 20, 2011, Apeldyn served two rebuttal expert reports, namely: (1) Expert Report of Allan R. Kmetz, D.Eng. in Response to the Expert Report of Dr. Bruce W. Smith (CMO) Regarding the Alleged Invalidity of U.S. Patent No. 5,347,382 ("May 20 Kmetz Report Re: Smith"); and (2) Expert Report of Allan R. Kmetz, D.Eng. in Response to the Expert Report of Pochi Yeh, Ph.D. (AUO) Regarding the Alleged Invalidity of U.S. Patent No. 5,347, 382 ("May 20 Kmetz Report Re: Yeh"). The May 20 Kmetz Report Re: Yeh responds to the April 11 Yeh Report. (*See* 7/12/11 AUO Ltr. at 2.)

On June 17, 2011, Apeldyn served the Supplemental Expert Report of Allan R. Kmetz, D.Eng. in Response to the First and Second Supplemental Expert Reports of Dr. Pochi Yeh Regarding the Alleged Invalidy of U.S. Patent No. 5,347, 382 ("June 17 Kmetz Report"). The June 17 Kmetz Report responds to the April 15 Yeh Report and the portions of the May 2 Yeh

4

Report which address the five prior art references not cited in the April 11 Yeh Report. (*See* 7/29/11 AUO Ltr., Exhibit B, at 1.)

### D. Apeldyn's Bill of Costs

On June 27, 2011, Apeldyn submitted a Bill of Costs ("June 27 Bill of Costs") "in the form of [a] Declaration of Lora Brzezynski" ("June 27 Brzezynski Declaration") "for the costs and fees it incurred in connection with bringing the Motion and in responding to the April 15 Yeh Report." (6/27/11 Ltr. from R. Kirk to the Special Master.) According to the June 27 Brzezynski Declaration, "Apeldyn incurred costs, including reasonable attorneys' fees, in the amount of at least $79,962.54 from [its outside counsel at McKenna Long & Aldridge LLP ("MLA")] in connection with (a) bringing the Motion; and (b) responding to the April 15 Yeh Report." (June 27 Brzezynski Decl. ¶ 4.) AUO submitted a letter brief objecting to Apeldyn's June 27 Bill of Costs on June 30, 2011. Apeldyn responded on July 6, 2011, and AUO submitted a reply on July 12, 2011.

In the Special Master's view, the June 27 Bill of Costs did not describe in sufficient detail the work performed by Apeldyn's counsel and the number of hours spent on each task. Accordingly, on July 20, 2011, the Special Master requested that Apeldyn submit a revised Bill of Costs "[i]n order for the Special Master to assess the reasonableness of [Apeldyn's] costs." (D.I. 537.) In addition, in an email to the parties' counsel dated July 21, 2011, the Special Master requested that the parties "direct their attention to the Special Master's Report and Recommendations on St. Clair's Motion for Special Master's Approval of Requested Fees and Costs as Part of the Sanctions Ordered Against Canon, Inc., Canon U.S.A., Inc. and Kramer Levin Naftalis & Frankel, LLP[3] (*see St. Clair Intellectual Property Consultants, Inc. v. Canon,*

---

[3] Hereinafter "St. Clair Report."

5

*Inc., Canon U.S.A., Inc., et al.*, C.A. No. 03-241 JJF (D. Del.) (D.I. 987)), and the case law cited therein."

In response to the Special Master's request, on July 27, 2011, Apeldyn submitted a letter brief and a revised Bill of Costs ("Bill of Costs") comprised of five declarations of MLA attorneys, namely: Declaration of Carl P. Bretscher ("Bretscher Declaration"); Declaration of Lora A. Brzezynski ("Brzezynski Declaration"); Declaration of Claire M. Maddox ("Maddox Declaration"); Declaration of Alyssa Sandrowitz ("Sandrowitz Declaration"); and Declaration of Sunjeev Sikand ("Sikand Declaration") (collectively, the "MLA Declarations"). Apeldyn's Bill of Costs seeks reimbursement of $89,747.54 in attorneys' fees and costs in connection with bringing the Motion, responding to the April 15 Yeh Report, and preparing the Bill of Costs.[4] Apeldyn asserts that this amount does not include any time expended in connection with the May 2 Yeh Report. (*See, e.g.*, Brzezynski Decl. ¶ 8 and Bretscher Decl. ¶ 12.)

The MLA Declarations are not accompanied by actual billing records. However, each declaration includes what appear to be reconstructed contemporaneous time records[5] which contain the following information: "Date," "Timekeeper," "Time Billed," "Amount," and "Description." The contemporaneous time records are supplemented by additional descriptions of the tasks performed by each MLA attorney. Further, each MLA attorney certifies that that his or her "hourly rate is reasonable and customary for an attorney with [his or her] years of experience at a law firm in Washington, D.C. and is comparable to the rates of other law firms in

---

[4] Apeldyn seeks fees totaling $10,685.00 in connection with preparing the Bill of Costs. (*See* Brzezynski Decl. ¶ 19.)

[5] The time records included in the attorney declarations appear to have been copied and pasted from the MLA attorneys' actual billing records. The Special Master will accept these records as contemporaneous time records and will refer to them as such herein.

Washington, D.C. with attorneys of similar qualifications and experience."[6] (*See, e.g.*, Bretscher Decl. ¶ 4.)

AUO submitted an answering letter brief on July 29, 2011, objecting to certain aspects of the Bill of Costs and proposing a lesser award of fees and costs. Apeldyn submitted a reply letter brief on August 2, 2011.

### 1. Bretscher Declaration

According to the Bretscher Declaration, MLA attorney Carl Bretscher "was the attorney primarily responsible for working on the rebuttal report to the April 15 Yeh report through June 9, 2011...." (Bretscher Decl. ¶ 7.) Mr. Bretscher explains that he "had to turn to other obligations" after June 9, and that his "colleague Alyssa Sandrowitz took over working on Apeldyn's response to the April 15 Yeh report" at that time. (*Id.* ¶ 8.) "In connection with responding to the April 15 Yeh Report, [Mr. Bretscher] billed 49 hours of time in May and June 2011 at a rate of $510 per hour" for a total of $24,990.00. (*Id.* ¶ 4.) Contemporaneous time records documenting these 49 hours were provided in the Bretscher Declaration. In addition to the contemporaneous time records, in paragraph 10, Mr. Bretscher "provide[s] . . . additional information concerning the work that [he] performed. . . ." (*Id.* ¶ 10.)

### 2. Brzezynski Declaration

According to the Brzezynski Declaration, MLA attorney Lora Brzezynski "billed 16.4 hours of time in April and May 2011 at a rate of $610 per hour" "[i]n connection with bringing the Motion to Strike," for a total of $10,004.00. (Brzezynski Decl. ¶ 4.) Contemporaneous time records reflecting these 16.4 hours were provided in the Brzezynski Declaration, and "additional information concerning the work that [she] performed" is provided in paragraph 7. (*See id.*

---

[6] AUO does not contest the reasonableness of the MLA attorneys' hourly rates.

7

¶¶ 5, 7.) Ms. Brzezynski further states that she "spent 3.5 hours reviewing and revising the Bill of Costs, supporting letters, and declarations for a total of $2,135.00." (*Id.* ¶ 19) (emphasis added). Contemporaneous time records reflecting these 3.5 hours were not provided.

Apeldyn also seeks reimbursement for work performed by MLA paralegal Lidija Pegan-Knight. According to the Brzezynski Declaration, in connection with bringing the Motion, Ms. Pegan-Knight billed 1.3 hours at $255 per hour for a total of $331.50. (*See id.* ¶ 9.) In connection with responding to the April 15 Yeh Report, Ms. Pegan-Knight billed 7.7 hours at $255 per hour, for a total of $1,963.50. (*Id.* ¶ 14.) Contemporaneous time records reflecting Ms. Pegan-Knight's hours were provided in the Brzezynski Declaration.

In addition, according to the Brzezynski Declaration, "Apeldyn's expert, Dr. Allan Kmetz, billed Apeldyn a total of $4,013.54." (*See id.* ¶ 17.)

### 3. *Maddox Declaration*

According to the Maddox Declaration, MLA attorney Claire Maddox "billed 41.9 hours of time in April and May 2011 at a rate of $450 per hour" in connection with bringing the Motion, for a total of $18,855. (*See* Maddox Decl. ¶ 4.) Contemporaneous time records documenting these 41.9 hours were provided in the Maddox Declaration. (*See id.* ¶ 5.) In addition to the contemporaneous time records, in paragraph 8, Ms. Maddox "provide[s] . . . additional information concerning the work that [she] performed. . . ." (*Id.* ¶ 10.)

Ms. Maddox further states that she "spent 19.0 hours at a rate of $450 an hour for a total of $8,550 on all submissions relating to Apeldyn's Bill of Costs," including the June 27 Bill of Costs. (*Id.*) Contemporaneous time records documenting these hours were not provided. However, in paragraph 10, Ms. Maddox describes the work she performed in connection with the June 27 Bill of Costs and Bill of Costs. (*Id.*)

8

### *4. Sandrowitz Declaration and Revised Sandrowitz Declaration*

According to the Sandrowitz Declaration, MLA attorney Alyssa Sandrowitz began working on Apeldyn's response to the April 15 Yeh Report on June 13, 2011. (Sandrowitz Decl. ¶ 7.) "Prior to that time, . . . Carl Bretscher worked on the rebuttal." (*Id.*) "In connection with responding to the April Yeh Report, [Ms. Sandrowitz] billed 32.5 hours of time in June 2011 at a rate of $370 per hour," for a total of $12,025.00. (*Id.* ¶ 4.) Contemporaneous time records documenting these 32.5 hours were provided. (*See id.* ¶ 5.)

In addition to the contemporaneous time records, in paragraph 8, Ms. Sandrowitz "provide[s] . . . additional information concerning the work that [she] performed. . . ." (*Id.* ¶ 8.)

Upon review of paragraph 8, it was clear to the Special Master that Ms. Sandrowitz had duplicated some of the work already performed by Mr. Bretscher. However, the Sandrowitz Declaration did not report the amount of time Ms. Sandrowitz spent performing such tasks, and, thus, the Special Master "lack[ed] sufficient information to make a determination regarding the extent to which Ms. Sandrowitz may have duplicated tasks performed by Mr. Bretscher." (D.I. 568 at 1.) Accordingly, on August 5, 2011, the Special Master requested that Ms. Sandrowitz submit a revised declaration "which specifies the amount of time she spent performing each task listed in her Declaration." (*Id.* at 2.)

In response to the Special Master's request, on August 10, 2011, Apeldyn submitted the Revised Declaration of Alyssa Sandrowitz ("Revised Sandrowitz Declaration") for *in camera* review. Paragraph 8 of the Revised Sandrowitz Declaration reports the number of hours Ms. Sandrowitz spent on various tasks she performed in connection with responding to the April 15 Yeh Report.

9

### 5. *Sikand Declaration*

According to the Sikand Declaration, Mr. Sikand "billed 5.5 hours of time in April and May 2011 at a rate of $400 per hour" "[i]n connection with bringing the Motion to Strike," for a total of $2,200.00. (Sikand Decl. ¶ 4.) In addition, Mr. Sikand "billed 11.7 hours of time in June 2011 at a rate of $400 per hour" "[i]n connection with responding to the April Yeh Report," for a total of $4,680.00. (*Id.* ¶ 9.) Contemporaneous time records documenting these hours were provided. (*See id.* ¶¶ 5, 10.) In addition to the contemporaneous time records, in paragraphs 7 and 12, Mr. Sikand "provide[s] . . . additional information concerning the work that [he] performed. . . ." (*Id.* ¶¶ 7, 12.)

## II. LEGAL STANDARD

In arriving at an appropriate award for attorneys' fees, the Special Master is bound to follow the clear precedent of this Court and the United States Court of Appeals for the Third Circuit. The Special Master is also instructed by decisions in other Federal District Courts. In this regard, Judge Robinson has described the applicable legal standards as follows:

> In calculating a statutory award of attorneys' fees, '[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The result of this calculation is called the lodestar. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). A court determines the reasonable hourly rate by reference to the prevailing market rates in the community. *See Hensley*, 461 U.S. at 433. The winning party bears the burden of establishing, by way of satisfactory evidence and the attorney's own affidavits, that the hourly rates meet the community rate. *See Washington* [*v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)]. With respect to the number of hours expended, the prevailing party must establish that those hours were 'reasonably expended.' *See Hensley*, 461 U.S. at 434. The court may exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation. *Id.* The court also may exclude from the lodestar calculation hours spent by plaintiff's counsel on claims 'on which

10

> the party did not succeed and that were distinct in all respects from claims on which the party did succeed.' *Rode*, at 892 F.2d 1183 (internal quotations and citations omitted).
>
> After multiplying a reasonable hourly rate by the number of hours expended, the resulting lodestar is presumed reasonable. *See id.* Nonetheless, the court can adjust the lodestar downward if it is not reasonable in light of the results obtained. *See id.; see also Hensley*, 461 U.S. at 434-37. This downward adjustment 'accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of successful claims.' *See Rode*, 892 F.2d at 1183.

*Bates v. Bd. of Educ. of the Capital School Dist.*, 2000 WL 1292677, *1-2 (D. Del. Aug. 29,

2000) (Robinson, J.); *see also In re ALH Holdings LLC*, 2010 WL 520632, *2-3 (D. Del. Feb.

12, 2010) (Robinson, J.).

Further, according to *Bates*, the analysis of a fee application should proceed as follows:

> First, [the court] shall assess whether the documentation submitted adequately supports the hours claimed by the attorneys. If it does, the court shall determine whether the hours claimed were reasonably expended. Next, the court shall consider whether the attorney's hourly rates are reasonable. After calculating the lodestar, the court shall consider suggested reductions to it. Finally, the court shall determine whether plaintiff's requests for other costs is reasonable.

*Bates*, 2000 WL 1292677, at *2; *see also Coalition to Save Our Children v. State Bd. of Educ.*,

901 F. Supp. 824, 829 (D. Del. 1995) (Robinson, J.) (citing *Amico v. New Castle County*, 654

F. Supp. 982, 997 (D. Del. 1987) (Wright, J.)).

## A. Adequacy of Documentation

"A predicate to performing [the] analysis into reasonableness is the court's ascertainment

of whether the hours claimed are adequately documented. . . . Where the documentation is

inadequate, the district court may reduce the award accordingly." *Coalition*, 901 F. Supp. at 829;

*see also Lyon v. Whisman*, 1994 WL 827159, *4 (D. Del. Dec. 8, 1994) (Robinson, J.) (same).

11

Where the fee applicant submits itemized records which make clear: (1) the dates on which certain legal work was performed; (2) the name of the attorney (or paraprofessional) performing such work; (3) the nature of the work performed; (4) the specific number of hours spent on such work; and (5) the hourly rate charged for such work; then, absent a specific objection from the party opposing the application, that documentation may be found to "adequately reflect the hours claimed." *See Bates*, 2000 WL 1292677, at \*2.

While adequate documentation should be contemporaneous, *see Amico*, 654 F. Supp. at 998 ("[C]ontemporaneous time records are the preferred mode of offering proof of time spent on a case"), a court may rely upon reconstructed time summaries to support an award of fees. *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983), *cert. denied*, 464 U.S. 1042 (1984). Where reconstructed records are relied upon, the party seeking fees has the obligation to demonstrate that the records are "substantially reconstructed and are reasonably accurate." *Lyon*, 1994 WL 827159, at \*5.

## B. Reasonableness of Hours Expended

Ultimately, the court is charged with the responsibility of being careful and searching in the process of evaluating billing entries in a fee application. *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir. 1983) ("In all phases of the fee determination, the district judge must cast a critical eye on the award request"); *see also Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 723 n.9 (3d Cir. 1989) (same). Accordingly, in consideration of an application for reimbursement of costs and expenses, "the '[c]ourt [should] look[] to whether the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented." *Coalition*, at 833 (quoting *Steiner v. Hercules*, 835 F. Supp. 771, 792 (D. Del. 1993) (McKelvie,

12

J.)). "It is . . . the moving counsel's burden to establish the reasonable necessity for hours claimed." *Coalition*, 901 F. Supp. at 829 (citing *Hensley*, 461 U.S. at 443-44.)

In this regard, the court should exclude from the lodestar unnecessary or duplicative hours. *Rode*, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, *redundant*, or otherwise unnecessary.") (citation omitted) (emphasis added); *see id* at 1189 ("A reduction for duplication 'is warranted . . . if the attorneys are *unreasonably* doing the *same* work.'") (emphasis in original); *see also Finch v. Hercules, Inc.*, 941 F. Supp. 1395, 1423 (D. Del. 1996) (Schwartz, J.) ("If counsel does not exercise billing judgment, the district court should exclude such hours from the lodestar calculation.") (citing *Rode*, 892 F.2d at 1183.)

## III.   ANALYSIS

### A. Apeldyn's Fees In Connection With Responding to the April 15 Yeh Report

According to the MLA Declarations, MLA attorneys Carl Bretscher and Alyssa Sandrowitz were responsible for drafting the June 17 Kmetz Report in response to the April 15 Yeh Report, and Sunjeev Sikand provided additional support. For the reasons stated below, the Special Master will exclude part of Mr. Bretscher's, Ms. Sandrowitz's, and Mr. Sikand's time from the lodestar calculation.

#### *1.   Adequacy of Documentation*

Upon review of the Bill of Costs and MLA Declarations, the Special Master concludes that the Revised Sandrowitz Declaration is not specific enough to enable the Special Master to understand the number of hours that Ms. Sandrowitz spent on particular tasks which are duplicative of tasks performed by Mr. Bretscher. Thus, the reasonableness of Ms. Sandrowitz's hours cannot be assessed in certain instances, and the lodestar will be reduced accordingly.

13

AUO attacks the adequacy of Apeldyn's documentation[7] on several grounds. The Special Master will address these grounds *seriatim*.

First, AUO asserts that "[i]t is not possible to determine what tasks Apeldyn's attorneys performed in supposedly rebutting the April 15 Yeh Report and the specific number of hours spent performing these tasks." (7/29/11 AUO Ltr. at 1.) Specifically, AUO complains that the descriptor "worked on" used by Mr. Bretscher and Ms. Sandrowitz[8] in their contemporaneous time records is vague. (*See id.*)

In the Special Master's view, the descriptor "worked on" is vague in and of itself, as it fails to convey to the reader the precise task being performed by the timekeeper. Ample description of specific tasks is provided, however, in paragraph 10 of the Bretscher Declaration and paragraph 8 of the Sandrowitz Declaration (and Revised Sandrowitz Declaration). For example, the Bretscher Declaration explains that Mr. Bretscher's tasks included "closely read[ing] the April 15 Yeh Report," "confer[ing] at length with [Dr. Kmetz] and the client to discuss the April 15 Yeh Report and prior art in detail," "beg[inning] [to] work[] on an outline of the rebuttal report with key arguments," and "analyz[ing] and account[ing] for differences in claim construction between Dr. Yeh's invalidity reports (including the April 15 Yeh Report) and Dr. Yeh's non-infringement reports." (Bretscher Decl. ¶ 10(a)-(b).)

---

[7] The Special Master notes that AUO's arguments in this regard relate to the Bretscher Declaration and the Sandrowitz Declaration, and not to the Revised Sandrowitz Declaration; indeed, AUO has not even reviewed the Revised Sandrowitz Declaration, since that document was submitted to the Special Master for *in camera* review. Nonetheless, AUO's arguments with respect to the Sandrowitz Declaration apply with equal force to the Revised Sandrowitz Declaration because both declarations are substantially similar in the respects that AUO complains of. On a related note, any information herein which relates solely to the Revised Sandrowitz Declaration—such as the number of hours she spent on discrete tasks as reported in Paragraph 8 of the Revised Sandrowitz Declaration—have been redacted. (*See* §§ III.A.1, III.A.3, and V herein.) Appendix A hereto contains unredacted versions of these sections and is being filed under seal, with a copy to be provided to Apeldyn's counsel only.

[8] AUO incorrectly referred to Ms. Sandrowitz as "Ms. Maddox" in its July 29, 2011 letter.

Second, AUO contends that the additional descriptions provided by Mr. Bretscher and Ms. Sandrowitz "do not provide [the court] with sufficient documentation to understand what work was performed, for how long, and the associated fees." (*Id.*)

In the Special Master's view, the vast majority of the additional descriptions provided in Mr. Bretscher's and Ms. Sandrowitz's declarations are fulsome enough to enable the Special Master to understand the nature of those attorneys' tasks so that the reasonableness of their hours can be assessed. There are, however, two instances where the Revised Sandrowitz Declaration fails to account for the number of hours that Ms. Sandrowitz spent on performing certain duplicative tasks.

According to the Bretscher Declaration and the Revised Sandrowtiz Declaration, Mr. Bretscher worked on responding to the April 15 Yeh Report from May 26 through June 9, 2011, whereupon Ms. Sandrowitz assumed responsibility for completing the work. The Special Master appreciates that Ms. Sandrowitz needed time to familiarize herself with the issues at hand in order to pick up where Mr. Bretscher left off. Nonetheless, in the Special Master's view, some of the tasks that Ms. Sandrowitz performed were duplicative of tasks that Mr. Bretscher had already performed. However, the documentation provided is not specific enough to enable the Special Master to determine how much time Ms. Sandrowitz spent on performing duplicative tasks versus non-duplicative tasks.

For instance, in paragraph 8(b), Ms. Sandrowitz states that she spent a total of on the following tasks: (1) "analyz[ing] the April 15 Yeh Report"; (2) "analyz[ing] each prior art reference asserted as part of a combination"; (3) "compar[ing] the prior art references to Dr. Yeh's arguments "—all of which are duplicative of tasks performed by

15

Mr. Bretscher[9]; and (4) "revising the draft rebuttal," which task is not duplicative of others' work. *(See* Revised Sandrowitz Decl. ¶ 8(b).) Similarly, in paragraph 8(e), Ms. Sandrowitz states that she spent a total of ▮▮▮▮ on the following tasks: (1) "confer[ing] with Dr. Kmetz regarding the April 15 Yeh Report at length," which task is duplicative of work already performed by Mr. Bretscher[10]; and (2) "confer[ing] and review[ing] with [Dr. Kmetz] the drafts of the rebuttal for the April 15 Yeh Report," which task it not duplicative of others' work. (Revised Sandrowitz Decl. ¶ 8(e).)

Because paragraphs 8(b) and 8(e) of the Revised Sandrowitz Declaration group together duplicative and non-duplicative tasks, it is not possible for the Special Master to determine the exact number of hours that Ms. Sandrowitz spent on performing the non-duplicative tasks described in those paragraphs. Accordingly, all of the hours described in paragraphs 8(b) and 8(e) will be excluded from the lodestar calculation. *See Coalition,* 901 F. Supp. at 829 ("Where the documentation is inadequate, the [Special Master] may reduce the award accordingly.").

Finally, AUO also complains that "[n]one of the [MLA attorneys' time] entries and information provided is sufficiently detailed to determine how much time is/was properly allocable to the May 2 Yeh Report" (7/29/11 AUO Ltr. at 2), noting that the June 17 Kmetz Report responds to both the April 15 and May 2 Yeh Reports. The MLA Declarations make clear, however, that Apeldyn's time records "do not include any time spent reviewing or analyzing" the May 2 Yeh Report. *(See, e.g.,* Revised Sandrowitz Decl. ¶ 10.) Moreover, the MLA attorneys "were specifically directed to keep track of their time relating to the April 15

---

[9] *See* Bretscher Decl. ¶ 10(a)-(b) ("closely read[ing] the April 15 Yeh Report to understand the descriptions of each prior art reference cited therein"; "careful[ly] rereading . . . the report as well as the prior art"; "analyz[ing] the prior art cited").

[10] *See* Bretscher Decl. ¶ 10(a)-(b) ("I also conferred at length with our expert and the client to discuss the April 15 Yeh Report and prior art in detail. . . .")

Yeh Report for the very purpose of reporting that time to" the Special Master. (8/2/11 Apeldyn Ltr. and *in camera* Exhibit 1 thereto.)

In the Special Master's view, Apeldyn's failure to submit documentation reflecting the hours expended on responding to the May 2 Yeh Report does not affect the lodestar. Although the Special Master would have found it helpful to review such records for comparative purposes, it was not necessary for Apeldyn to include such documentation in its Bill of Costs. Given that Apeldyn's fee award is limited to fees and costs incurred in connection with responding to the April 15 Yeh Report and bringing the Motion, the Special Master concludes that the documentation that Apeldyn provided is appropriate in scope. Furthermore, the Special Master has no reason to question the accuracy of Apeldyn's statement that the submitted records "do not include any time spent reviewing or analyzing" the May 2 Yeh Report. The Special Master takes Apeldyn at its word.

### 2. *Reasonableness of Hours Expended*

#### i. Number of Hours Expended

In the Special Master's view, Apeldyn expended an excessive amount of time in connection with responding to the April 15 Yeh Report. All excessive hours will be excluded from the lodestar. *See Rode*, 892 F.2d at 1183 (noting that hours are not reasonably expended, and therefore should be excluded from the lodestar, if they are "excessive, redundant, or otherwise unnecessary").

Significantly, and as AUO points out, the June 17 Kmetz Report "extensively overlaps with" the May 20 Kmetz Report Re: Smith and the May 20 Kmetz Report Re: Yeh. (*See* 7/29/11 AUO Ltr. at 1.) AUO illuminated for the Special Master the extent to which the June 17 Kmetz Report duplicates Dr. Kmetz's earlier reports, highlighting in blue the duplicative text as

17

between the May 20 Kmetz Report Re: Smith and the June 17 Kmetz Report (respectively, Exhibits A and B to 7/29/11 AUO Ltr.), and highlighting in yellow the duplicative text as between the June 17 Kmetz Report and the May 20 Kmetz Report Re: Yeh (respectively, Exhibits B and C to 7/29/11 AUO Ltr.). Indeed, upon review of these highlighted versions of Dr. Kmetz's reports, it appears to the Special Master that approximately 70% of the June 17 Kmetz Report is duplicative—in most instances word-for-word—of Dr. Kmetz's earlier reports.

While the Special Master finds no reason to doubt Apeldyn's assertion that "significant effort . . . must be undertaken before the final content of the rebuttal report can be reached," including "research, analysis, [and] conferences [with the expert]" (7/6/11 Apeldyn Ltr. at 1; *see also* Bretscher Decl. ¶ 10), the Special Master rejects Apeldyn's position that "[t]he degree of overlap . . . *is in no way indicative* of the amount of time necessary to be spent for the quality legal work performed." (8/2/11 Apeldyn Ltr. at 2) (emphasis added).

Given the substantial degree of duplication, in the Special Master's view, it was excessive, and therefore not reasonable, for Mr. Bretscher to have spent 49 hours in connection with responding to the April 15 Yeh Report.[11] The Special Master, taking into account the potentially time consuming task of determining whether and how to reuse portions of an earlier report, concludes that it would have been reasonable for an attorney with Mr. Bretscher's qualifications and experience to have spent not more than 25 hours on the work that Mr. Bretscher was ultimately able to complete.

Notwithstanding this conclusion, it is worth noting that in several instances, AUO inappropriately labeled certain material in the Kmetz reports as "overlapping." Numerous passages in the June 17 Kmetz Report which discuss the Moriyama prior art reference relied on

---

[11] Mr. Sikand's time is addressed in Section III.A.2.ii, *infra.*

by *Dr. Yeh* were identified by AUO as repetitive of information contained in the May 20 Kmetz Report Re: *Smith*. (*See* June 17 Kmetz Report at, *e.g.*, ¶¶ 79, 89, 102, and 117.) Apeldyn makes clear, however, that "Dr. Smith does not cite to Moriyama at all" (7/6/11 Apeldyn Ltr. at 2), and apart from one passing reference to Moriyama (*see* May 20 Kmetz Report Re: Smith ¶ 211), the May 20 Kmetz Report Re: Smith does not discuss Moriyama. It appears to the Special Master that AUO may have identified too much text as "overlapping." Thus, in making conclusions regarding the lodestar calculation, the Special Master rejects AUO's contention that passages in the June 17 Kmetz Report which discuss Moriyama overlap with passages in the May 20 Kmetz Report Re: Smith.

### ii. Duplicative Hours

Upon review of the MLA Declarations, the Special Master concludes that all of the work that Mr. Sikand performed in connection with responding to the April 15 Yeh Report is duplicative of certain work performed by Mr. Bretscher and Ms. Sandrowitz.

According to the Bretscher Declaration and Revised Sandrowitz Declaration, Mr. Bretscher and Ms. Sandrowtiz were responsible for drafting the June 17 Kmetz Report. Mr. Sikand's role, it seems, was to provide backup support. From June 2 through June 16, 2011, Mr. Sikand performed the following tasks: (1) analyzing the April 15 Yeh Report; (2) drafting arguments for Dr. Kmetz's rebuttal report; (3) continuing to analyze the April 15 Yeh Report; and (4) continuing to draft arguments for Dr. Kmetz's rebuttal report. (*See* Sikand Decl. ¶ 10.) Those tasks are, in the Special Master's view, entirely duplicative of work already done by Mr. Bretscher and Ms. Sandrowitz. (*See* Bretscher Decl. ¶¶ 5, 10); (*see* Revised Sandrowitz Decl. ¶¶ 5, 8.) Accordingly, none of the 11.7 hours that Mr. Sikand billed in connection with responding to the April 15 Yeh Report will be included in the lodestar.

19

### 3. *Conclusion*

For the foregoing reasons, with respect to time expended on responding to the April 15 Yeh Report, the Special Master will exclude from the lodestar 24 hours of Mr. Bretscher's time, ████████ of Ms. Sandrowitz's time, and 11.7 hours of Mr. Sikand's time.

### B. Apeldyn's Fees In Connection With Bringing the Motion

MLA attorneys Claire Maddox and Lora Brzezynski were primarily responsible for bringing the Motion, including preparing for and attending the May 17 Hearing, and Sunjeev Sikand provided additional support. Ms. Maddox, Ms. Brzezynski, and Mr. Sikand collectively billed nearly 64 hours in connection with bringing the Motion. For the reasons stated below, these hours were excessive, and the Special Master accordingly will exclude certain hours from the lodestar calculation.

#### *1. Adequacy of Documentation*

AUO does not contest the adequacy of the documentation provided by Apeldyn in support of its request for fees in connection with bringing the Motion. Further, the Special Master is satisfied that the documentation provided in the MLA Declarations is sufficient to enable the Special Master to determine the reasonableness of the hours expended on bringing the Motion.

#### *2. Reasonableness of Hours Expended*

##### i. Number of Hours Expended

Collectively, Ms. Maddox, Ms. Brzezynski, and Mr. Sikand billed 63.8 hours in connection with bringing the Motion. By contrast, AUO was billed only 7.1 hours in connection with AUO's opposition to the Motion. (*See* Declaration of Peter J. Wied.) Ms. Maddox, the MLA associate who was primarily responsible for drafting the opening and reply letter briefs in

20

support of the Motion and for preparing Ms. Brzezynski to argue the Motion, billed a total of 41.9 hours for her work in this regard. Of that time, 21.1 hours were spent on drafting the opening letter brief and reviewing materials related to the Motion, 9.8 hours were spent on drafting the reply letter brief and compiling exhibits thereto, and 7.2 hours were spent on preparing for and attending the May 17 Hearing. (*See* Maddox Decl. ¶ 5.)

Ms. Brzezynski, the MLA partner who revised Ms. Maddox's drafts and argued the Motion at the May 17 Hearing, billed a total of 16.4 hours in connection with the Motion. Of those hours, 4.1 hours were spent on revising the opening letter brief, 3.8 hours were spent on working on the reply letter brief, and 8.5 hours were spent on preparing for and attending the May 17 Hearing.

Mr. Sikand assisted Ms. Brzezynski and Ms. Maddox. He billed a total of 5.5 hours in connection with the Motion. Of those hours, 4.8 hours were spent on "review[ing] and analyz[ing] the April 15 Yeh Report" and defendants' document productions and discovery responses, "confer[ing] with MLA colleagues Lora Brzezynski and Claire Maddox regarding the contents of the April 15 Yeh Report, and consider[ing] and discuss[ing] grounds for moving to strike the report." (Sikand Decl. ¶ 7(a).) In addition, Mr. Sikand spent 0.7 hours "assist[ing] with preparation of" the reply letter brief. (*Id.* ¶ 5.)

In the Special Master's view, the Motion did not involve complex issues of fact or law, and Apeldyn did not cite any case law in its letter briefs, indicating that intensive legal research was not done. The letter briefs themselves were not lengthy; the opening letter brief was just over three single-spaced pages long, and the reply letter brief spanned only two single-spaced pages. Given the straightforward issues involved, the brevity of the letter briefs, and the absence of case law in the briefs, the Special Master concludes that an associate with Ms. Maddox's

21

qualifications and experience reasonably should have taken not more than 8 hours to review the relevant materials and draft the opening letter brief, 4 hours to draft the reply letter brief, and 4 hours to prepare for the May 17 Hearing. Similarly, the Special Master concludes that a partner of Ms. Brzezynski's qualifications and experience should have taken not more than 2.5 hours to revise the opening brief, 2 hours to revise the reply brief, and 5 hours to prepare for the May 17 Hearing. The Special Master therefore concludes that Ms. Maddox and Ms. Brzezynski unnecessarily expended, respectively, 25.9 and 6.9 hours in connection with bringing the Motion.

### ii. Duplicative Hours

According to the Sikand Delcaration, Mr. Sikand spent 0.7 hours "assist[ing] with preparation of reply letter in support of Apeldyn's Motion to Strike AUO's untimely expert report." (Sikand Decl. ¶ 5.) Given that Ms. Maddox was responsible for drafting the reply brief and Ms. Brzezynski was responsible for revising and finalizing it, it is unclear what value Mr. Sikand provided in this regard. It appears to the Special Master that Mr. Sikand duplicated Ms. Maddox's work and, thus, the 0.7 hours were unnecessarily expended.

### 3. Conclusion

For the foregoing reasons, with respect to time expended on the Motion, the Special Master will exclude from the lodestar 25.9 hours of Ms. Maddox's time, 6.9 hours of Ms. Brzezynski's time, and 0.7 hours of Mr. Sikand's time.

### C. Apeldyn's Fees In Connection With Preparing the Bill of Costs

Apeldyn seeks a total of $10,685.00 in fees in connection with preparing the June 27 Bill of Costs and Bill of Costs. MLA attorneys Claire Maddox and Lora Brzezynski prepared those submittals. For the reasons stated below, all hours expended on preparing the June 27 Bill of

22

Costs will be excluded from the lodestar calculation, and as a result, the following hours are being excluded: (1) 3.5 hours of Ms. Brzezynski's time; and (2) 3.0 hours of Ms. Maddox's time.

### 1. Adequacy of Documentation

Neither Ms. Maddox nor Ms. Brzezynski provided contemporaneous time records reflecting the work they performed in connection with the June 27 Bill of Costs and the Bill of Costs. They did, however, describe their work in summary fashion in their respective declarations. As stated above, "contemporaneous time records are the preferred mode of offering proof of time spent on a case." *Amico*, 654 F. Supp. at 998. A court may, however, rely upon reconstructed time summaries to support an award of fees. *See Pawlak*, 713 F.2d at 978. Where, as here, reconstructed records are relied upon, the party seeking fees has the obligation to demonstrate that the records are "substantially reconstructed and are reasonably accurate." *Lyon*, 1994 WL 827159, at *5.

With respect to the June 27 Bill of Costs, Ms. Maddox states that she spent 3.0 hours "drafting the Bill of Costs submitted on June 27, 2011 in the form of a letter to Special Master Poppiti and the Declaration of Lora A. Brzezynski served on that date." (Maddox Decl. ¶ 10.)

With respect to the briefing relating to the June 27 Bill of Costs, Ms. Maddox spent 5.5 hours "review[ing] the June 30, 2011 response from AUO and prepar[ing] Apeldyn's reply letter served on July 6, 2011." (*Id.*)

With respect to the Bill of Costs, Ms. Maddox spent 10.5 hours "review[ing] the [Special Master's] St. Clair Report and the case law cited therein and prepar[ing] the first drafts of supporting declarations for each attorney to review." (*Id.*).

In the Special Master's view, the Maddox Declaration describes Ms. Maddox's work with sufficient particularity to enable the Special Master to determine whether her claimed hours

23

were reasonably expended. Further, in the Special Master's view, by virtue of Ms. Maddox's "declar[ation] under penalty of perjury that the foregoing is true and correct," (Maddox Decl. ¶ 10), Apeldyn has met its burden to demonstrate that Ms. Maddox's records are "substantially constructed" and "reasonably accurate." Indeed, the Special Master sees no reason to question the accuracy of Ms. Maddox's descriptions, and AUO offers none.

The Special Master does not reach the same conclusion with respect to the Brzezynski Declaration. Ms. Brzezynski states, in general terms, that she "spent 3.5 hours reviewing and revising the Bill of Costs, supporting letters, and declarations for a total of $2,135.00." (Brzezynski Decl. ¶ 19.) It appears that Ms. Brzezynski's reference to "Bill of Costs" is meant to include both the June 27 and July 27 Bills of Costs. In the Special Master's view, Ms. Brzezynski's description is inadequate, as it does not enable the Special Master to determine how Ms. Brzezynski split her time between working on the June 27 Bill of Costs and the Bill of Costs. Because the Special Master concludes that the time spent in connection with preparing the June 27 Bill of Costs was not reasonable (*see infra* § III.C.2), all of Ms. Brzezynski's time in this regard will be excluded.

## 2. *Reasonableness of Hours Expended*

In the Special Master's view, Apeldyn is not entitled to receive reimbursement for fees or costs incurred in connection with preparing the June 27 Bill of Costs, and, thus, the hours expended by the MLA attorneys on same were not reasonable. First, Apeldyn did not request such fees in its first submittal on June 27, 2011. Thus, Apeldyn has waived any opportunity it once might have had to seek reimbursement for such fees. Second, and most importantly, Apeldyn submitted its July 27 Bill of Costs at the Special Master's request, the Special Master having determined that the June 27 Bill of Costs lacked sufficient documentation. In the Special

24

Master's view, it would be unfair to reward Apeldyn for preparing what the Special Master concluded to be a deficient submittal.

Accordingly, all attorney hours expended in connection with preparing the June 27 Bill of Costs will be excluded from the lodestar. The following hours will be excluded: (1) 3.0 hours that Ms. Maddox spent on "drafting the Bill of Costs submitted on June 27, 2011 in the form of a letter to Special Master Poppiti and the Declaration of Lora A. Brzezynski served on that date" (Maddox Decl. ¶ 10); and (2) 3.5 hours that Ms. Brzezynski spent on "reviewing and revising the Bill of Costs, supporting letters, and declarations." (Brzezynski Decl. ¶ 19.)

It is, however, appropriate in the Special Master's view to include in the lodestar calculation the 5.5 hours that Ms. Maddox spent on "review[ing] the June 30, 2011 response from AUO and prepar[ing] Apeldyn's reply letter served on July 6, 2011." (*Id.*)

### *3. Conclusion*

For the foregoing reasons, with respect to time expended on the Bill of Costs, the Special Master will exclude from the lodestar 3 hours of Ms. Maddox's time and 3.5 hours of Ms. Brzezynski's time.

## IV. OTHER FACTORS

For the reasons stated below, the remaining *Bates* inquiries have no bearing on the lodestar calculation in the case *sub judice*.

### A. Reasonableness of MLA Attorneys' Hourly Rates

AUO does not object to the MLA attorneys' hourly rates.

### B. Adjustments to Lodestar

The Special Master concludes that there is no reason to make an upward or downward adjustment to the lodestar calculation.

## C. Reasonableness of Requested Costs

Apeldyn does not seek reimbursement for costs.

## V.   CONCLUSION

For the foregoing reasons, the Special Master excludes the following hours from the

lodestar:

| MLA Attorney | Task | Excluded Hours | Dollar Value |
|---|---|---|---|
| Carl Bretscher | April 15 Yeh Report | 24.0 | $12,240.00 |
| Alyssa Sandrowitz | April 15 Yeh Report | ▉ | ▉ |
|  | April 15 Yeh Report | ▉ | ▉ |
| Sunjeev Sikand | Motion to Strike | 0.7 | $280.00 |
|  | April 15 Yeh Report | 11.7 | $4,680.00 |
| Claire Maddox | Motion to Strike | 25.9 | $11,655.00 |
|  | June 27 Bill of Costs | 3.0 | $1,350.00 |
| Lora Brzezynski | Motion to Strike | 6.9 | $4,209.00 |
|  | June 27 Bill of Costs | 3.5 | $2,135.00 |
| TOTAL[12] |  |  | $42,506.00 |

Accordingly, the Special Master concludes that Apeldyn is entitled to reimbursement of

**$47,241.54** in attorneys' fees.

---

[12] The Special Master recognizes that it is possible for the defendants to calculate the amount of Ms. Sandrowitz's time being excluded from the lodestar by working backwards from this total amount. Reporting the total number of excluded hours in this Report and Recommendation, however, is necessary, and the Special Master trusts that the defendants will not spend their time on such pursuits.

26

THE SPECIAL MASTER'S REPORT AND RECOMMENDATION WILL BECOME A

FINAL ORDER OF THE COURT UNLESS OBJECTION IS TAKEN PURSUANT TO FED.

R. CIV. P. 53(f)(2).


ENTERED this 29th day of August, 2011.


Vincent J. Poppiti (#100614)
Special Master

27