IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APELDYN CORPORATION, | |
| Plaintiff, | Civil Action No. 08-568-SLR |
| v. | |
| AU OPTRONICS CORPORATION, et al., | DM 13 |
| Defendants. | |

**SPECIAL MASTER'S REPORT AND RECOMMENDATION
REGARDING PLAINTIFF APELDYN CORPORATION'S MOTION TO MODIFY THE
PROTECTIVE ORDER TO PERMIT ITS CORPORATE REPRESENTATIVES TO
HAVE ACCESS TO INFORMATION DESIGNATED ATTORNEYS' EYES ONLY**

This matter is before the Special Master on Plaintiff Apeldyn Corporation's ("Apeldyn")

Motion to Modify the Protective Order to Permit Its Corporate Representatives to Have Access

to Information Designated Attorney's Eyes Only (D.I. 687) ("Motion"). Having read and

considered the parties' briefs relating to Apeldyn's Motion, and having heard oral argument

during the telephonic hearing on the Motion on June 11, 2012 ("June 11 Hearing"), for the

reasons set forth below, the Special Master recommends that Apeldyn's Motion be DENIED.

## I. BACKGROUND

On September 8, 2008, Apeldyn filed the above-captioned action against defendants AU

Optronics Corporation, AU Optronics Corporation America ("AUO"), Chi Mei Optoelectronics

Corporation, and Chi Mei Optoelectronics USA ("CMO"), among others, for infringement of

U.S. Patent No. 5,347,382 ("the '382 patent").

The undersigned entered the Stipulated Protective Order ("Protective Order") (D.I. 259) in this case on March 15, 2010. The Protective Order became an Order of the Court on March 17, 2010.

On September 2, 2011, the Court held a Markman/Summary Judgment hearing (D.I. 606), and subsequently entered summary judgments of non-infringement for AUO and CMO on December 19, 2011. (D.I. 655). The Court entered final judgment in favor of CMO and AUO on January 19, 2012. (D.I. 665). Apeldyn filed notices of appeal on January 18 and 19, 2012. (D.I. 663, 664, 667, and 668.) Apeldyn's appeals are presently before the Court of Appeals for the Federal Circuit, and its opening appellate brief is currently due to be filed on June 23, 2012. (*See* Transcript of May 29, 2012 Teleconference at 7:21-23.) Apeldyn has requested a one-month extension of this deadline, and the parties are presently awaiting a ruling on that request. (*Id.* at 8:15-19.)

On April 12, 2012, Apeldyn filed its Motion with an Opening Brief in support thereof (D.I. 688). AUO and CMO filed Answering Briefs on May 14, 2012 (D.I. 696 (AUO's Answering Brief) and D.I. 698 (CMO's Answering Brief).) Apeldyn filed its Reply Brief (D.I. 702) on May 24, 2012. Pursuant to the Special Master's order dated May 31, 2012 (D.I. 706), AUO and CMO submitted Sur-Reply Briefs on June 1, 2012. A telephonic hearing on the Motion was held on June 11, 2012.

Three days before Apeldyn filed its Reply Brief, on May 21, 2012, Apeldyn's outside litigation counsel, McKenna, Long & Aldridge LLP ("McKenna"), withdrew from this case. McKenna also filed a Motion to Withdraw in the appeal of this matter before the Federal Circuit. (*See* Weid Decl. In Support of AUO's Sur-Reply, Ex. I.) According to Apeldyn, new outside counsel has not yet been retained to represent it in the appeal. (*See* D.I. 702 at 2 n.1.) Although

2

Apeldyn identified the law firm of Robins, Kaplan, Miller & Ciresi LLP ("Robins Kaplan") as "independent outside counsel to assist it with this case" in an email dated April 23, 2012 (D.I. 697, Ex. E), Apeldyn has since explained that Robins Kaplan "ha[s] not agreed to undertake the appeal," as "[t]here is a question as to whether [it is] able to because of a potential conflict." (June 11 Hrg. Tr. at 12:2-5.)

Apeldyn's Motion seeks modification of the Protective Order to permit its corporate representatives—Scott Rumbaugh (the President of Apeldyn and the named inventor of the '382 patent) and William Birdwell (Apeldyn's founder, corporate secretary and sole Director)—to have "access to information relating to Defendants' motions for summary judgment of non-infringement[1] designated CONFIDENTIAL – ATTORNEY'S EYES ONLY." (D.I. 688 at 1). The Motion further requests that Mr. Birdwell be permitted "to have access to *all* information Defendants designated" Attorneys' Eyes Only. *Id* (emphasis in original). Apeldyn articulates three principal reasons for its request: (1) in order for Messrs. Rumbaugh and Birdwell "to assist fully in the preparation of the briefs in the appeal of the summary judgments," as they have "technical expertise and familiarity with the '382 Patent" (*id.* at 5); (2) "in order [for Mr. Birdwell] to manage outside litigation counsel and evaluate and assist with the case as it progresses" (*id.* at 6); and (3) "to allow [Messrs. Rumbaugh and Birdwell] to engage and assist new counsel in the pending appeal of this matter to the Federal Circuit" (D.I. 702 at 2) (emphasis added).

During the June 11 Hearing, Apeldyn conceded that "what is really essential to both Mr. Birdwell and Mr. Rumbaugh are those documents that were part of the claim construction and

---

[1] Apeldyn states that "[t]his includes at least all the summary judgment motions of AUO and CMO, and all unredacted memoranda of AUO, CMO and Apeldyn, together with all exhibits, expert reports related to infringement, expert Declarations filed with the Court, demonstrative evidence and the unredacted transcript of the proceedings." (D.I. 688 at 1 n.1.)

WM1A 1033619v3 06/13/12

summary judgment process" (June 11 Hrg. Tr. at 23:8-10), thereby effectively abandoning its original request that Mr. Birdwell be permitted to access <u>all</u> of Defendants' Attorneys' Eyes Only information.

## II. LEGAL STANDARD

"[C]ourts have discretionary authority to modify a stipulated protective order. . . ." *Phillips Petroleum Co. v. Rexene Products Co.*, 158 F.R.D. 43, 46 (D. Del. 1994). "[T]he burden of demonstrating that an agreed protective order should be modified is on the moving party." *Id.*

"The party seeking to modify the order of confidentiality must come forward with a reason to modify the order." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994). "Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Id.* "The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance. . . .'" *Id.* "The *Pansy* Court identified the following factors of the good cause balancing test:

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public."

*Arnold v. Pennsylvania Dep't of Transportation*, 477 F.3d 105, 108 (3d Cir. 2007).

"After weighing those factors, the Court must 'balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Crum*

WM1A 1033619v3 06/13/12

*& Crum Enterprises, Inc. v. NDC of California*, 2007 WL 886356, at \*2 (D. Del. March 10, 2011) (quoting *Pansy*, 23 F.3d at 787).

## III. ANALYSIS

### A. Apeldyn has come forward with "a reason" to modify the Protective Order.

Before the Special Master conducts an examination of the *Pansy* "good cause" factors, Apeldyn must first satisfy *Pansy*'s threshold requirement to "come forward with a reason to modify the order." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994) (emphasis added). It is clear that this threshold step simply requires the moving party to state "a reason" for seeking modification, as the legitimacy of the moving party's purpose is reserved for examination under the second *Pansy* factor.

The Special Master concludes that Apeldyn has satisfied *Pansy*'s threshold requirement of "com[ing] forward with a reason to modify the order" (*Pansy*, 23 F.3d at 790) in stating that modification is necessary to "allow Mr. Birdwell and Mr. Rumbaugh to fully assist litigation counsel in the pending appeal. . . ." (D.I. 688 at 1.) Thus, an analysis of the "good cause balancing test" is warranted.

### B. The *Pansy* "good cause balancing test."

#### 1. *The interest in privacy of the party seeking protection*

As corporate entities, AUO and CMO have no privacy interest "capable of protection at stake here." *Arnold*, 477 F.3d at 111. *See also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."); *Crum & Crum*, 2011 WL 886356, at \*3 ("Unlike individuals, who have a general

WM1A 1033619v3 06/13/12

right to privacy, business entities do not have a right to privacy.").[2] Thus, the first *Pansy* factor weighs in favor of modification of the Protective Order.

>   2.  *Whether the information is being sought for a legitimate purpose or an improper purpose*

As this Court has held, it is not "improper" for a party to "request disclosure of [confidential information] in order to more effectively advocate [its] position. . . ." *Crum & Crum*, 2011 WL 886356, at *4 (concluding that "the second *Pansy* factor favors disclosure" where the requesting party's stated purpose for seeking disclosure of confidential information was "to further her position on a motion for summary judgment"). Apeldyn has articulated a similar purpose. (*See supra* at 3.) Thus, the Special Master is satisfied that Apeldyn is seeking the disclosure of Defendants' Attorneys' Eyes Only information for a "legitimate purpose." Accordingly, the second factors weighs in favor of disclosure.[3]

>   3.  *The prevention of embarrassment, and whether that embarrassment would be particularly serious*

As the Court in *Crum & Crum* explained, "embarrassment is generally a non-monetized harm to an individual." *Crum & Crum*, 2011 WL 886356, at *4. *See also The Medicines*

---

2  The parties appear to have overlooked this fundamental principle. *See, e.g.*, Apeldyn's Opening Brief (D.I. 688) at 10 ("[T]here is little to no risk to any privacy interest of Defendants in permitting Apeldyn's corporate representatives to have access to [Attorneys' Eyes Only] information. . . ."). Indeed, Apeldyn analyzed the issue of potential injury to Defendants within the context of the first *Pansy* factor. In the Special Master's view, it is appropriate to address that issue "[a]fter weighing [the *Pansy*] factors," in "balanc[ing] [Apeldyn's] need for information against the injury that might result if uncontrolled disclosure is compelled." *Crum & Crum*, 2007 WL 886356, at *2 (quoting *Pansy*, 23 F.3d at 787). *See infra* at Section III.C.1.

3  The parties appear to have analyzed Apeldyn's need for the Attorneys' Eyes Only information within the context of this factor. However, as this factor simply asks whether the moving party is seeking the information "for a legitimate purpose or an improper purpose," *Arnold*, 477 F.3d at 108, and does not call for a deeper analysis of the moving party's need for the information, it is once again more appropriate, in the Special Master's view, to assess Apeldyn's need for the information "[a]fter weighing [the *Pansy*] factors." *Crum & Crum*, 2007 WL 886356, at *2 (quoting *Pansy*, 23 F.3d at 787). *See infra* at Section III.C.1.

WM1A 1033619v3 06/13/12

*Company v. Teva Parenteral Medicines, Inc.*, 2011 WL 3290290, at *10-11 (D. Del. June 30, 2011). Thus, "it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground." *Pansy*, 87 F.3d at 787. Because Defendants have not argued that they will suffer any form of embarrassment if their Attorneys' Eyes Only information is disclosed to Messrs. Rumbaugh and Birdwell, this factor weighs in favor of modifying the Protective Order. *See Crum & Crum*, 2011 WL 886356, at *4.

4. *Whether the information sought is important to public health and safety*

As in *Crum & Crum*, the parties in the case *sub judice* "are not public officials or public entities, and there is no evidence that [the infringement or non-infringement of the '382 patent] will cause harm to the public." *See Crum & Crum*, 2011 WL 886356, at *4. Thus, the fourth factor weighs against modifying the Protective Order.[4]

5. *Whether sharing of the information among litigants would promote fairness and efficiency*

Apeldyn asserts that this factor favors disclosure because Messrs. Rumbaugh and Birdwell's "technical expertise," and "Mr. Birdwell's patent litigation and appellate experience, may be critical to addressing the issues on appeal adequately."[5] (D.I. 688 at 10.) Apeldyn

---

[4] According to Apeldyn, this "factor[] [is] not applicable to the current dispute" because "this dispute is between private parties and no public entities or health issues are involved." (D.I. 688 at 7.) Even so, it is appropriate for the Court to analyze this factor. *See Crum & Crum*, 2011 WL 886356, at *4 (analyzing the fourth, sixth, and seventh factors even though the parties were not public entities and no public health issues were involved).

[5] Apeldyn's Opening Brief further states that "permitting at least Mr. Birdwell to have access to all [Attorneys' Eyes Only] information will allow Apeldyn to make informed decisions and to communicate fully and effectively with its litigation counsel for the remainder of this litigation." *Id.* The Special Master no longer views this statement as part of Apeldyn's Motion, as Apeldyn effectively abandoned its request for Mr. Birdwell to have access to all of Defendants' Attorneys' Eyes Only information during the June 11 Hearing.

7

further asserts that "it is inherently unfair to prevent Apeldyn from having any firsthand knowledge of the facts on which its case turns so as to be able to assist its counsel and to evaluate counsel's performance." (D.I. 702 at 9-10.) In support of its argument, Apeldyn explains that Mr. Birdwell "has over 38 years of experience as a patent attorney and degrees in electrical engineering and optical sciences" and that Mr. Rumbaugh "is the inventor [of] the '382 Patent, has degrees in physics and electrical engineering, and is particularly technically qualified to evaluate the evidence. . . ." (*Id.* at 8.)

In the Special Master's view, permitting the disclosure of AUO's and CMO's Attorneys' Eyes Only information to Messrs. Rumbaugh and Birdwell, simply so that they may assist and evaluate counsel (or prospective counsel), would not promote fairness and efficiency for several reasons.

First, Apeldyn fails to explain why it chose not to seek relief more than one year ago so that Messrs. Rumbaugh and Birdwell could assist Apeldyn's former outside counsel, McKenna Long & Aldridge, in responding to Defendants' motions for summary judgment of non-infringement. Indeed, Apeldyn explains that "the justification for preventing Messrs. Birdwell and Rumbaugh from accessing the designated material"—"Apeldyn's possible participation in the reexamination or prosecution process of the '382 Patent"—"no longer exists," as "reexamination proceedings have concluded, and a reexamination certificate was issued on March 22, 2011." (D.I. 688 at 9.) Thus, there was nothing to prevent Apeldyn from moving to modify the Protective Order after March 22, 2011 so that Messrs. Rumbaugh and Birdwell could participate in the summary judgment briefing. As Apeldyn made no such motion at that time, it is reasonable for the Special Master to conclude that Apeldyn did not deem it necessary to substantively involve Messrs. Rumbaugh and Birdwell in the Markman and summary judgment

8

issues in the interest of fairness and efficiency at that stage of the litigation. Apeldyn does not offer any reason for its request at this stage of the litigation, which involves the same issues, and the Special Master sees none.

In addition, in the Special Master's view, Apeldyn has not demonstrated how Messrs. Rumbaugh and Birdwell's "technical expertise" would aid Dr. Kmetz (Apeldyn's infringement expert) and its outside counsel, thereby promoting fairness and efficiency. For instance, Apeldyn has not shown that their expertise surpasses that of Dr. Kmetz. Nor has Apeldyn shown that Mr. Birdwell's legal expertise surpasses that of its outside counsel or prospective counsel. On the record presently before the Special Master, it is simply not possible to conclude that Messrs. Rumbaugh and Birdwell are uniquely situated to perform the analysis necessary to assist Apeldyn in its appeal. *Cf. Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 21 (D. Del. 1988) (rejecting as "speculative" Safe Flight's argument that its President was "'uniquely qualified' to access" Sundstrand's highly confidential documents); *cf. Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) ("I am not persuaded on the record before me that the plaintiff's president is uniquely qualified over other outside experts to assist in the prosecution of this claim.").

Absent an explanation as to how Messrs. Rumbaugh and Birdwell's combined technical and legal expertise is now somehow critical "to addressing the issues on appeal adequately" (*id.* at 10) when no effort was made to secure their assistance with summary judgment briefing, the Special Master rejects Apeldyn's contention that Messrs. Rumbaugh and Birdwell's participation in the appeal would promote fairness and efficiency.

Second, to the extent that Apeldyn needs to share Attorneys' Eyes Only information with prospective appellate counsel, paragraph 3(a) of the Protective Order would permit such

disclosure. Pursuant to paragraph 3(a), "[i]nformation designated as CONFIDENTIAL may be disclosed . . . to . . . outside attorneys of record who have been admitted to practice before the Court in the above captioned action <u>or who have been, prior to any disclosure, identified in writing to the disclosing party</u>. . . ." (D.I. 259 ¶ 3(a)) (emphasis added). Indeed, Apeldyn has already followed this procedure, having identified the Robins Kaplan firm in writing to counsel for AUO and CMO by email dated April 23, 2012. (*See* D.I. 697, Ex. E.) Because Apeldyn is permitted under the Protective Order to disclose Attorneys' Eyes Only information to prospective counsel upon identifying such counsel in writing to the other parties, there is simply no need, in the Special Master's view, for Messrs. Rumbaugh and Birdwell to have access to Defendants' Attorneys' Eyes Only information in the interest of fairness and efficiency.

Third, to the extent that Apeldyn requires yet additional time to secure appellate counsel, Apeldyn can request a further extension to the deadline for filing its opening appellate brief. CMO has indicated that it would not oppose a request for an additional extension (May 29, 2012 Teleconference Tr. at 8:1-3), and AUO stated that it would "be happy to discuss" the need for such a request with Apeldyn. (*Id.* at 9:3-7.) Given the possibility that Apeldyn would be able to secure an additional extension, modifying the Protective Order to permit Messrs. Rumbaugh and Birdwell to access Defendants' Attorneys' Eyes Only information would not, in the Special Master's view, promote fairness and efficiency.

Finally, Apeldyn raises a waiver argument in its briefs under the umbrella of the "fairness and efficiency" factor, stating that "Defendants have *already* waived certain confidential information previously designated as confidential in open court, during their oral arguments regarding the original summary judgment motion on September 2, and the motion on reargument on November 16 and 18." (D.I. 688 at 11) (emphasis in original). Apeldyn further states as

follows: (1) the "hearings were held in an open courtroom, where persons not granted access under the Protective Order could hear argument and observe exhibits shown by the parties, which contained confidential information"; (2) "representatives of Samsung, . . . a direct competitor to Defendants, and other unidentified third parties were present during those arguments"; (3) "a representative of CMO, a direct competitor of AUO, was present during the September 2 Hearing"; and (4) "Defendants made no request that the court be closed or that any persons be excluded from the proceedings." (*Id.*)

Apeldyn clarified the nature of its waiver argument during the June 11 Hearing, explaining that it does not intend to advance the argument that there has been a clear waiver by Defendants by virtue of their disclosure of Attorneys' Eyes Only information in open court. (*See* June 11 Hrg. Tr. at 10:6-11:7). Thus, the Special Master concludes that Apeldyn has abandoned the waiver argument as presented in its papers. Apeldyn explained during the June 11 Hearing that it is simply contending that "the fact that much of this [information] is already out there goes to show that allowing access to Mr. Rumbaugh and Mr. Birdwell won't increase the risk of disclosure in any material way at all." (June 11 Hrg. Tr. at 9:10-13.)

The Special Master rejects Apeldyn's argument. The fact that some of Defendants' Attorneys' Eyes Only information was discussed in open court does not render harmless the continued dissemination of such information.

> 6. *Whether the party benefitting from the order of confidentiality is a public entity or official*

The sixth factor weighs against modifying the Protective Order "because both parties in this lawsuit are private entities."[6] *Crum & Crum*, 2011 WL 886356, at *5.

---

6 *See supra* n.5.

### 7. *Whether the case involves issues important to the public*

Like the employment contract dispute in *Crum & Crum*, this patent infringement case between private business entities does not, in the Special Master's view, involve issues important to the public. In *Crum & Crum*, the Court concluded that the seventh factor "favored nondisclosure" because "the public has little interest in a private company, or the details of a contract between two private parties." *Crum & Crum*, 2011 WL 886356, at *5. For the self same reasons, the Special Master concludes that the seventh factor weighs against modifying the Protective Order.[7]

### C. Apeldyn's need for AUO's and CMO's Attorneys' Eyes Only information is outweighed by the injury to AUO and CMO that might result from the disclosure of such information to Messrs. Rumbaugh and Birdwell.

#### 1. *The risk of inadvertent disclosure*

After analyzing the "good cause" factors, the Court must "balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Crum & Crum*, 2011 WL 886356, at *2 (quoting *Pansy*, 23 F.3d at 787). In conducting this balancing analysis, the Court "should consider 'whether the [moving party's corporate representatives] are involved in competitive decision making of the company and should examine the risks and safeguards surrounding inadvertent disclosure of the protected information.'" *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 U.S. Dist. LEXIS 424, at *5-6 (D. Del. Jan. 4, 2007).

The Special Master is satisfied that AUO and CMO have identified "particularized harm" that may result from the disclosure of their Attorneys' Eyes Only information to Messrs.

---

[7] *See supra* n.5.

Rumbaugh and Birdwell. *See Crum & Crum*, 2007 WL 886356, at *5. As CMO points out, Messrs. Rumbaugh and Birdwell are Apeldyn's key decision makers, with Mr. Rumbaugh, Apeldyn's President, owning approximately 25% of Apeldyn's outstanding shares of stock, and Mr. Birdwell, Apeldyn's sole Director, owning approximately 51%. (*See* D.I. 698 at 3.) Further, "Apeldyn is currently asserting the '382 Patent against other LCD manufacturers that compete directly with AUO." (D.I. 696 at 8; *see also* D.I. 698 at 8). According to AUO, "Apeldyn's determination to license or not license [to] those other companies, and on what terms, has a direct impact on AUO's ability to remain competitive with those other LCD manufacturers." (D.I. 696 at 8). AUO adds that "the risk of confidential AUO information inadvertently influencing those decisions is significant." *Id.* CMO echoes AUO's observation, stating that "Apeldyn's business decisions, including to whom to license and what royalty rate to charge, directly affect and have affected CMO's business." (D.I. 698 at 8.)

In response, Apeldyn asserts that "disclosure of [AUO's and CMO's Attorneys' Eyes Only] information to Apeldyn poses no realistic risk of competitive disadvantage to Defendants," as "Apeldyn is not a competitor of AUO or CMO and does not make or sell any products using liquid crystal display technology." (D.I. 688 at 9.) In addition, Apeldyn points out that it "produces no product and does not compete in the product marketplace; it simply enforces the '382 patent." (D.I. 702 at 7.) Relying on *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465 (Fed. Cir. 1984), Apeldyn further asserts that Messrs. Rumbaugh and Birdwell are not "competitive decision makers" because "[n]either makes any decision on behalf of Apeldyn that has an effect on the 'pricing' or 'product' design of any product of the type that CMO or AUO produces." (D.I. 702 at 7.) Apeldyn further states that "to the extent Apeldyn hopes to license the '382 patent to others, the defendants have failed to show how Apeldyn will obtain any unfair

13

advantage by having access to their [Attorneys' Eyes Only] information in light of the fact that its attorneys already have such access." (*Id.*) Finally, Apeldyn points out that "the '382 patent is now expired, so Apeldyn is really not a competitor to the Defendants AUO and CMO in any real sense." (June 11 Hrg. Tr. at 26:13-15.)

Defendants have, in the Special Master's view, identified a "particularized harm" beyond mere "[b]road allegations . . . unsubstantiated by specific examples or articulated reasoning." *See Pansy*, 23 F.3d at 786. This Court has noted that "competitive disadvantage" is a "recognized harm." *See Phillips Petroleum*, 158 F.R.D. at 47. The possibility that Mr. Rumbaugh or Mr. Birdwell might inadvertently disclose Defendants' confidential information to direct competitors of Defendants in the future is, in the Special Master's view, a legitimate and palpable concern, particularly given that Apeldyn is actively enforcing the '382 patent against some of Defendants' direct competitors.

The fact that the '382 patent has expired does not extinguish the risk of inadvertent disclosure. Indeed, Apeldyn raised the possibility that it might one day license the patent-in-suit. (*See* D.I. 702 at 7) ("to the extent Apeldyn hopes to license the '382 patent to others . . ."). Further, Apeldyn explained during the June 11 Hearing that it "has unfinished business against Samsung and Sony." (June 11 Hrg. Tr. at 30:23-24.) AUO aptly pointed out that "when [Apeldyn] go[es] to negotiate with CMO or Sony, based on what [it] know[s] about [AUO's] products versus [CMO's or Sony's] products, this all goes into the calculus of relative licensing. And there is absolutely no way to segment that information." (*Id.* at 39:1-4.) Apeldyn's "unfinished business" with Defendants' direct competitors sets an environment for the risk of inadvertent disclosure.

14

Further, the fact that Apeldyn does not currently compete directly with Defendants does not eliminate this risk. *See Tailored Lighting*, 236 F.R.D. at 149 (noting the lack of "any cases to suggest that the disclosure of proprietary information to opposing patent inventor would be appropriate merely because the parties were not currently direct competitors, particularly where . . . the inventor licenses the patent to a direct competitor"); *see also R.R. Donnelley*, 2007 U.S. Dist. LEXIS 424, at *5 n.2 ("Plaintiff argues that this factor is negated, or at least tempered, by the fact that the parties in this case are not direct competitors. . . . Plaintiff does not deny, however, that Defendants' trade secrets and other sensitive information could potentially be of value to Plaintiff.").

Thus, Apeldyn's assertion that "Defendants have no legitimate need to maintain the current Protective Order" (D.I. 702 at 8), simply because Apeldyn does not currently compete directly with Defendants, is unavailing. In addition, the fact that Messrs. Rumbaugh and Birdwell do not make decisions regarding "pricing" or "product design" is of no moment, as the list of "competitive decisionmaking" duties identified by the Federal Circuit in *U.S. Steel Corp.* was clearly not meant to be exhaustive. *See U.S. Steel Corp.*, 730 F.2d at 1468 n.3 ("pricing, product design, *etc.*) (emphasis added). Mr. Rumbaugh, as President of Apeldyn, and Mr. Birdwell, as its sole Director, are Apeldyn's key (if not sole) decisionmakers. They are therefore "in a position that creates a high risk of inadvertent disclosure." *R.R. Donnelly*, 2007 U.S. Dist. LEXIS 424, at *4 (quoting *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 12782 (D. Del. 2004).)

Finally, it is not insignificant that Apeldyn has never challenged any of Defendants' "Attorneys' Eyes Only" designations under paragraph 19 of the Protective Order. As Apeldyn has never challenged Defendants' designations, Apeldyn has, in the Special Master's view,

implicitly recognized that the disclosure of Defendants' Attorneys' Eyes Only information to Messrs. Rumbaugh and Birdwell may cause Defendants "to suffer substantial commercial or competitive disadvantage or harm." (*See* D.I. 259 at ¶ 1) (definition of "CONFIDENTIAL – ATTORNEYS' EYES ONLY" information includes information "that the producing party reasonably and in good faith believes would cause the producing party to suffer substantial commercial or competitive disadvantage or harm if publicly known or if known by agents or employees of the parties who have access to 'CONFIDENTIAL' documents, information, or things pursuant to this Order").

While Apeldyn's counsel stated that "the process for Apeldyn to take documents on a document-by-document basis and challenge a marking I think would be enormous" (June 11 Hrg. Tr. at 24:7-9), the Special Master is nonetheless mindful of the mechanics of protective orders. Certainly, one function of protective orders is to ensure that materials are properly designated, and paragraph 19 has always been an available mechanism for the parties to test the propriety of designations. It is up to counsel to decide whether to exercise that option.

2. *Apeldyn's need for the information does not outweigh the risk of inadvertent disclosure.*

Having concluded that fairness and efficiency would not be served by permitting the disclosure of Defendants' Attorneys' Eyes Only information to Messrs. Rumbaugh and Birdwell for the purpose of engaging appellate counsel and substantively contributing to the appellate brief, and Apeldyn not having articulated any other need for the information, the Special Master concludes that Apeldyn's stated reasons for seeking modification of the Protective Order are insufficient to overcome the risk of inadvertent disclosure of Defendants' Attorneys' Eyes Only information to third parties which might result in competitive harm to Defendants. *See, e.g., R.R. Donnelley,* 2007 U.S. Dist. LEXIS 424, at *5-6 (citing *Intel Corp. v. VIA Tech., Inc.,* 198 F.R.D.

16

525, 528 (N.D. Ca. 2000) ("[T]he risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management.").

Indeed, Apeldyn's stated reasons for seeking modification are no more compelling than the proffered reasons held to be insufficient in *R.R. Donnelley* and *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992). In *R.R. Donnelley*, this Court denied the plaintiff's request to permit its President of Corporate Strategic Initiatives to have access to "Attorneys' Eyes Only" information, holding that "the reasons offered for access [were] insufficient to overcome the risk of inadvertent disclosure inherent in permitting access" where "the only reason stated for allowing [the President] access to attorneys' eyes only information [was] to enable him to manage outside counsel and advise R.R. Donnelly." *R.R. Donnelley*, 2007 U.S. Dist. LEXIS 424, at *5-6.

The understandable inconvenience to Apeldyn caused by the withdrawal of its former outside litigation counsel, McKenna, Long & Aldridge, and its present stated need to engage new counsel, does not change the landscape. The Ninth Circuit's opinion in *Brown Bag* is instructive in this regard. *See Brown Bag*, 960 F.2d 1465 (holding that the moving party's contention that in-house counsel needed access to confidential information to manage the case was insufficient to overcome the risk of inadvertent disclosure, even where outside counsel had withdrawn from the litigation). Notably, the Ninth Circuit rejected Brown Bag's argument that "preventing its in-house counsel from immediate and direct access to the trade secrets in question . . . prevents Brown Bag from exercising its due process rights to select counsel and to prosecute its claims" (*id.* at 1470), holding that "Brown Bag's assertion that the protective order unfairly hindered its opposition to summary judgment is too speculative to establish that the protective order was an

17

abuse of discretion." *Id.* at 1472. As in *Brown Bag*, Apeldyn's stated need for the Defendants'

Attorneys' Eyes Only information is insufficient to overcome the risk of inadvertent disclosure.

## IV. CONCLUSION

For the foregoing reasons, the Special Master recommends that Apeldyn's Motion be

DENIED.

THE SPECIAL MASTER'S REPORT AND RECOMMENDATION WILL BECOME A
FINAL ORDER OF THE COURT UNLESS OBJECTION IS TAKEN IN ACCORDANCE
WITH THE ANTICIPATED ORDER OF THE COURT WHICH SHORTENS THE TIME
WITHIN WHICH AN APPLICATION MAY BE FILED PURSUANT TO FED. R. CIV. P.
53(f)(2).

ENTERED this 13th day of June, 2012.

Vincent J. Poppiti (#100614)
Special Master

WM1A 1033619v3 06/13/12